IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In the Matter of the Extradition of | ) ) ) ) ) ) | Case No. 22 CR 615 <br><br> Hon. Young B. Kim, United States Magistrate Judge |
| Nerijus Tautvydas |  |  |

Now Comes Respondent Nerijus Tautvydas, by and through his attorney, Stephen M. Komie of the law firm Komie and Associates, and responds to the government's motion to detain the Respondent. In support thereof, states as follows:

**Factual Background**

On November 22, 2022, the United States arrested Respondent Nerijus Tautvydas, purportedly on the request of Lithuania for a provisional arrest of Respondent. Lithuania claims Respondent committed various crimes; to wit, unlawful possession of narcotic or psychotropic substances for the purpose of distribution or unlawful possession of a large quantity of narcotic or psychotropic substances, smuggling, and criminal liability for crimes provided for in the relevant treaty.[1, 2]

---

[1] See government's memorandum, Doc. 10 at 1-2.

[2] For a full description of the allegations against Respondent, see Doc. 10 at 2-6.

Lithuania has not yet made a formal extradition request. However, Article 11 of the United States - Lithuania extradition treaty provides for the provisional arrest and detention of a fugitive pending such a formal request. Lithuania has sixty (60) days to make its formal request - or in this case, considering that Respondent has been in custody approximately one month - Lithuania must make its formal request in the next month. Hence, at this moment, Tautvydas is in the first stage of the extradition process.

## Legal Analysis

**I. This provisional arrest case differs significantly from the facts of *In the Matter of the Extradition of Piotr Jozef Schumann,* which was post-formal request arrest case.**

This Court has specifically ordered Respondent to address the court's holding in *In the Matter of the Extradition of Piotr Jozef Schumann,* No.18 CR 283, 2018 WL 4777562 (N.D. Ill. Oct. 3, 2018). In *Schumann,* this court was confronted with an extradition case in the second phase of the extradition process, *i.e.*, a formal request for extradition had been made and the fugitive was before the court. (*Id.* at 1.) As the court explained, the extradition process at that stage "unfolds in two steps." (*Id.* at 2.)

The first step is issuance of an arrest warrant followed by a hearing in which the court decides whether there is sufficient evidence to sustain the charges under the provisions of the treaty. (*Id.*) Subsequent to this hearing, the court determines whether to certify the treaty requirements for extradition have been met and send the case to the Secretary of State. (*Id.*) Thereafter, in this

second step, it is entirely within the discretion of the Secretary of State to decide whether the requested person shall be turned over to the requesting country. (*Id.*)

Subsequent to discussing where the Schumann case fell in the framework of the extradition process, the court analyzed Schumann's request for release pending extradition. The court noted that while Schumann could show that he did not present a danger to the community, it found that Schumann, who had been on the lamb for over a decade, could not demonstrate that he was not a flight risk. (*Id.* at 6.) These two factors, danger to community and flight risk, have been held to be conditions precedent to receiving bail in an extradition case. (*Id.* at 6, citing, *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 687 (N.D.Ill. 2002); *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *4 (N.D.Ill. Dec. 19, 2017). Where the fugitive truly failed, however, was in showing the existence of "special circumstances," distinct from the ordinary circumstances every similarly situated extradition detainee would suffer. (*Id.* at 6.)

This case is different. As an initial matter, the posture of this case is substantially different from *Schumann*. Here, there has been no formal request for extradition from the requesting country. Instead, Tautvydas' arrest is merely a "provisional arrest," which falls in the first stage of the extradition process.

As opposed to Schumann, this case is more similar in posture to *In re*

*Extradition of Molnar*, 182 F. Supp. 2d 684 (N.D.Ill. 2002). In *Molnar*, the fugitive was present before the court after a provisional arrest, but before the requesting country made a formal request for extradition pursuant to the governing treaty. (*Id.* at 687.) *Molnar* noted that there is legal authority to suggest that a provisional arrest should be treated differently than an arrest at a later stage such as after a formal request has been made. (*Id.* at 687-88, citing *U.S. v. Leitner*, 784 F.2d 159, 160 ($2^d$ Cir.1986).) *Molnar* also briefly mentioned "an issue of 'urgency' ", as in, some courts have reviewed whether the requesting country has made a showing of urgency in their request for a provisional request. (*Id.* at 687, citing *U.S. v. Messina*, 566 F.Supp. 740, 742 (E.D.N.Y.1983); *Caltagirone v. Grant*, 629 F.2d 739, 744 n. 10 ($2^d$ Cir.1980).) Ultimately, *Molnar* found that urgency was not an issue in the facts of that case.

Because the arrest was provisional and there was no evidence of urgency, the *Molnar* court chose *"to follow a more liberal view in determining whether Molnar* [was] *to be released under bail."* (*Id.* at 688, citing *Leitner*, 784 F.2d at 160.)

In the analysis, the government has argued that none of Molnar's reasons for pre-extradition release were sufficiently "special." The court agreed. However, because the arrest was in the provisional stage, the court elected to view the reasons for bail with a collective approach as opposed to piecemeal. A similar analogy would contrast the divide and conquer technique with the

concept of the totality of the circumstances. In *Molnar*, the court found the fugitive's collective reasons to warrant bail. (*Id.* at 689, *In the Matter of the Extradition of Kamel Nacif–Borge*, 829 F.Supp. 1210, 1216 (D.Nev.1993); *U.S. v. Taitz*, 130 F.R.D. 442, 446 (S.D. Cal.1990) (holding that the cumulation of several factors may constitute "special circumstances" that justify bail pending extradition proceedings).)

### II. This court should adopt the *Molnar* approach and apply a more liberal construction to the bail request in this case

The factors present in *Molnar* justifying a more liberal approach to the special circumstances are equally present in this case. First, as is obvious, this is first stage, provisional arrest case. Second, just as in *Molnar*, there is absolutely no showing of urgency justifying the provisional arrest in the first instance.[3] Therefore, we would urge the court to apply the more liberal approach to a bail request in this case.

### A. There is zero evidence that Tautvydas is a danger to community

The underlying criminal allegations contained in the government's complaint do not allege any violent acts or threats of violence. There is no evidence of any other criminal acts or history save the allegations in the

---

[3] The text of Article 11 (Provisional Arrest) of the U.S.-Lithuania Extradition provides that a provisional arrest may be requested "[i]n case of urgency . . ." See Protocol on the Application of the Agreement on Extradition Between the United States of America and the European Union to the Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Lithuania, U.S.-Lith., June 15, 2005, S. TREATY DOC. NO. 109-14 (2006) and Annex at Article 11, Section 1.

complaint. The last act alleged took place nearly twenty-two (22) months ago. There is no record of any criminal acts in the United States. And there is no evidence of any criminal conviction, in any country, for Respondent at all. In its memorandum, the government does not make any argument that Tautvydas is a danger to the community, which would suggest that it does not possess any additional evidence that Tautvydas is, indeed, a danger to the local community. On these facts, Respondent suggests that the government cannot establish that Respondent is a danger to the community if released on bail.

**B. Tautvydas is not a flight risk**

The government's argument that Tautvydas is a flight risk is flawed. First, the government presents an argument which presumes that Tautvydas actually knew of pending charges in Lithuania. (Doc. 10 at 23, quoting *Noeller*, 2017 WL 6462358 at 3.) However, there is no evidence in the complaint that Tautvydas knew of pending charges in Lithuania. In fact, according to the complaint, Tautvydas was only charged with a crime in Lithuania as of November 4, 2022. (*Id.* at 2.) Hence Tautvydas is not a fugitive who fled from Lithuania in order to escape any charges; he was already present in the United States when the charges were brought.

The government also quotes a portion of Noeller which claims that "there is no meaningful distinction between a person who left a country when he learned of pending charges and one who already outside that country refuses to return to face these charges." (*Id.* at 23, quoting *Noeller*, 2017 WL 6462358 at 3.)

Without conceding whether this is an accurate comparison, it is inapplicable in this case. Tautvydas was provisionally arrested on November 22, 2022, just two weeks after the charges were allegedly brought in Lithuania. This was the first time Tautvydas learned of any Lithuanian charges. Thus, not only did he not flee Lithuania in the face of pending charges, he also has never been given an opportunity to return to Lithuania voluntarily. Hence we do not know if Tautvydas is, in fact, refusing to return to Lithuania to answer the charges.

The government claims without specificity that the fact that Tautvydas is facing charges in Lithuania provides a strong incentive to flee. But this claim is weak because it is present in every single bail analysis known to man. In other words, the very reason someone is requesting bail is because of pending criminal charges. The logic is circular.

The government's memorandum also contains a nebulous statement that "Tautvydas' risk of flight is especially apparent from the fact that he fled from law enforcement by running from his home as they approached for a morning arrest." (*Id.* at 23.) While this would seem to be a very significant allegation, curiously, the government fails to provide any elaboration whatsoever. The reason may be that, in fact, that the government is exaggerating the arrest.

If the court were to hold a hearing and receive evidence, the testimony would be that Tautvydas was in the process of serving breakfast for his two children and letting the dogs out for their morning break. He was dressed in a bathrobe, in the backyard with the dogs, drinking a cup of coffee. There was a

knock at the door, someone other than Respondent answered the door. Officers came around the side of the house and found the Respondent in the backyard. He placed in custody and moved to an automobile in the front of the home. A plain clothes officer entered the house and went upstairs looking for street clothes and shoes for Respondent. Respondent's wife met the officer and provided clothes and street shoes for Respondent to get dressed in the police car. In sum, Respondent would testify that he did not flee from the officers.

Finally, the government's memorandum completely ignores the significant modern steps a court can take in bail cases. In modern day cases, there are sufficient conditions of release to assure the Respondent's presence at future hearings. The Northern District of Illinois has pre-trial service officers who do an excellent job of monitoring a Respondent pre-trial. Additional tools at the disposal of the court are electronic monitoring, appearing at pre-trial offices, and routine unannounced visits. There has been a long-term track record of the successfully monitoring persons awaiting trial, post-trial awaiting sentencing, and up until their surrender to a penal institution. Additionally, the court has the tool of monetary bail with sureties approved by the court willing to co-sign the Respondent's bond as well as basic measures such as surrender of Respondent's passport. Therefore, this court is uniquely in the position to electronically monitor Respondent's movements as previously unknown and unavailable to the courts.

In sum, we posit that Respondent is not a flight risk and moreover, the

court has sufficient tools in its arsenal to assure Respondent's presence at future hearings.

### C. Special Circumstances exist to release Respondent Tautvydas on reasonable bail pending any further proceedings.

In 2016, Tautvydas' wife, Katerina, was involved in an auto accident which damaged her spine. She has a spinal cord injury classified as an SCI C5, resulting in incomplete paralysis. Given her injuries, Respondent esssentially is Katerina's caretaker. He provides an immense amount of support to Katerina including, but not limited to, assisting her movement, repositioning her, performing daily activities for her, driving her physical therapy and doctor's appointments, as well as virtually any other activity imaginable where some time of mobility is necessary. Respondent has also assumed the duty of taking care of almost all of the shopping and family errands because of Katerina's injury.

Respondent is also the father to two boys, ages 12 and 13. The boys currently attend Hinsdale Middle School. Respondent has the duty to take the children to school every day. He also drives the boys to their sport practices and any other extra curricular activities. See also, Exhibit A, letter of co-signed by several of Respondent's friends attesting to his positive role as a father and community member.

Respondent serves as president and operations manager of ATN-Trans, Inc., a trucking company. See attached Exhibit B, letter of Justinas Aranauskas, ATN company representative, attesting to Respondent's employment. The work

at ATN provides the necessary income for support of the minor children mentioned *supra*.

The special circumstances present here, when taken collectively, justify a finding in favor of Respondent provisionally granting release pending the outcome of an extradition hearing.

## Conclusion

WHEREFORE, for the foregoing reasons, Respondent, Nerijus Tautvydas, by and through his attorney, Stephen M. Komie of the law firm Komie and Associates, respectfully requests this Honorable Court to find special circumstances exist which warrant releasing Respondent on a reasonable bail with terms and conditions that the Court deems necessary to assure his appearance at any future proceedings.

        Respectfully submitted

        Respondent, Nerijus Tautvydas,
        by and through his attorneys,
        KOMIE AND ASSOCIATES


    By:    <u>s/ Stephen M. Komie</u>


Komie and Associates
One N. LaSalle Street, Suite 4200
Chicago, Illinois 60602
(312) 263-2800
stephen_m_komie@komie-and-associates.com

## **PROOF OF SERVICE**

The undersigned, an attorney, deposes and states that a true and correct copy of **Respondent, Nerijus Tautvydas', Response to the government's motion to detain the Respondent** has been served upon the below named party(ies), by filing said document in the CM/ECF system on December 23, 2022.

TO:    Ann Marie E. Ursini, AUSA
United States Attorney's Office
219 South Dearborn, 5th floor
Chicago, Illinois 60604
annmarie.ursini@usdoj.gov

Irene Hickey Sullivan, AUSA
United States Attorney's Office
219 South Dearborn, 5th floor
Chicago, Illinois 60604
irene.sullivan@usdoj.gov

Jonathan Leighton Shih
DOJ-USAO
Northern District of Illinois
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
jonathan.shih@usdoj.gov

    /s/Stephen M. Komie
Stephen M. Komie
Komie and Associates
One N. LaSalle Street, Suite 4200
Chicago, Illinois 60602
312/263-2800