

# LIETUVOS RESPUBLIKOS AMBASADA JUNGTINĖSE AMERIKOS VALSTIJOSE IR JUNGTINĖMS MEKSIKOS VALSTIJOMS EMBASSY OF THE REPUBLIC OF LITHUANIA TO THE UNITED STATES OF AMERICA AND TO THE UNITED MEXICAN STATES

No. SN45-2

The Embassy of the Republic of Lithuania presents its compliments to the Department of State of the United States of America and, referring to the Extradition Treaty between the Republic of Lithuania and the United States of America, has the honor to forward the documents regarding the extradition of the Lithuanian national **Mr. Nerijus TAUTVYDAS, born on 6 June 1984.**

Please find enclosed a cover letter of the request for Extradition from the Ministry of Justice of the Republic of Lithuania with a set of extradition request documents for the abovementioned Lithuanian national.

The Embassy of the Republic of Lithuania avails itself of this opportunity to renew to the Department of State of the United States of America the assurances of its highest consideration.

E N C L O S U R E S. Cover letter and a set of documents.



January 17, 2023

UNITED STATES DEPARTMENT OF STATE
Office of the Legal Adviser
Washington, D.C.



## LIETUVOS RESPUBLIKOS TEISINGUMO MINISTERIJA
## MINISTRY OF JUSTICE OF THE REPUBLIC OF LITHUANIA

Budgetary agency, Gediminas Ave. 30, LT-01104 Vilnius,
tel. + 370 600 38 904, e-mail: rastine@tm.lt, https://tm.lrv.lt.
Data have been accumulated and stored in the Register of Legal Entities, code 188604955

United States Department of Justice    2 January 2023    Our ref. No. (1493/22) 9R- 2

**RE:  EXTRADITION OF LITHUANIAN NATIONAL
NERIJUS TAUTVYDAS**

The Ministry of Justice of the Republic of Lithuania presents its compliments to the United States Department of Justice and kindly asks to examine the enclosed request of the Prosecutor General's Office of the Republic of Lithuania for the extradition of the citizen of the Republic of Lithuania Mr. **Nerijus Tautvydas** for the purpose of prosecution pursuant to the Agreement on Extradition between the Government of the Republic of Lithuania and the Government of the United States of America, which has been approved by the Protocol on the Application of the Agreement on Extradition between the United States of America and the European Union to the Extradition Treaty between the Government of the Republic of Lithuania and the Government of the United States of America.

ENCLOSURES. Set of documents.

Sincerely,

Vice Minister of Justice                                    Jurga Greičienė

Giedrė Sventickaitė, +370 671 86 487, e-mail: giedre.sventickaite@tm.lt

*Translation from Lithuanian*
**Copy of an e-document**
/QR code/



**DEPARTMENT FOR CRIMINAL PROSECUTION
PROSECUTOR GENERAL'S OFFICE**

Office of International Affairs                                  6 December 2022 No. TP-05-00009-22
United States Department of Justice                           In reply to: CRM-95-100-30359

## RE: EXTRADITION OF NERIJUS TAUTVYDAS, BORN ON 06/06/1984

Dear colleagues,

The Prosecutor General's Office of the Republic of Lithuania presents its compliments to you and, as a central authority and in compliance with the Extradition Treaty between the Government of the Republic of Lithuania and the Government of the United States of America signed on 23 October 2001 (hereafter "the Treaty") and the Protocol on the Application of the Agreement on Extradition between the United States of America and the European Union to the Extradition Treaty between the Government of the Republic of Lithuania and the Government of the United States of America of 15 June 2005 (hereafter "the Protocol"), together with the Annex thereto, kindly requests to extradite Nerijus Tautvydas, a citizen of the Republic of Lithuania, from the United States of America.

**Nerijus Tautvydas**, (a photo of the person sought taken in 2016 and uploaded to the Population Register of Lithuania (in 2016, Nerijus Tautvydas applied to the Migration Department for the issue of a citizen's passport of the Republic of Lithuania, his personal identity was checked in the course of this procedure, a photo of the person sought was taken and his image is currently available in the Population Register of Lithuania and in passport No. 24288016 issued to a citizen of the Republic of Lithuania on 2 November 2016) and a dactyloscopic card (on 8 May 2014, Nerijus Tautvytas was recognized as a suspect in the criminal proceedings conducted in the Republic of Lithuania in 2014, was arrested and underwent a dactyloscopy procedure, and these data were included into the register for dactyloscopic data held by the Forensic Science Center of the Republic of Lithuania) – see **Enclosure No. 1**), personal ID number: 38406060244, his declared place of residence in the period from 16 October 2020 to 22 September 2021: Saulės st. 10-21 Elektrėnai, Elektrėnai Municipality, the Republic of Lithuania, *his prior convictions have expired,* is suspected of having committed three criminal offenses provided for in the Criminal Code of the Republic of Lithuania (hereafter "the CC"):

1. an offense provided for in Article 249(3) of the CC;
2. an offense provided for in Article 25(4), Article 7(12), Article 260(3), Article 199(4);
3. an offense provided for in Article 25(4), Article 7(12), Article 260(3) of the CC.

Budget institution, Rinktinės st. 5A, LT-01515 Vilnius, tel. (8 5) 266 2304, fax: (8 5) 266 2317,
e-mail: generaline.prokuratura@prokuraturos.lt
Data accumulated and kept at the Register of Legal Entities, code 288603320

2                                                    /QR code/

The Third Serious and Organized Crime Investigation Board under the Lithuanian Criminal Police Bureau is carrying out a pre-trial investigation in criminal case No. 01-1-09596-21 in which Nerijus Tautvydas is suspected of having committed the said grave and serious offenses, whereas Aida Japertienė, Prosecutor of the Department for Organized Crime and Corruption Investigation of the Prosecutor General's Office of the Republic of Lithuania, is leading the said pre-trial investigation.

**Extract from the Criminal Code of the Republic of Lithuania:**

**Article 249(2) and (3) of the CC. Criminal Association**
1. A person who participates in the activities of a criminal association shall be punished by imprisonment for a term of three up to fifteen years.
2. A person who participates in the activities of a criminal association armed with firearms, explosives or explosive materials shall be punished by imprisonment for a term of six up to twenty years or by life imprisonment.
3. A person who organises the criminal associations provided for in paragraph 1 or 2 of this Article or is the leader thereof shall be punished by imprisonment for a period of ten up to twenty years or by life imprisonment.

**Article 7(12) of the CC. Criminal Liability for the Crimes Provided for in Treaties**
Persons shall be liable under this Code regardless of their citizenship and place of residence, also of the place of commission of a crime and whether the act committed is subject to punishment under laws of the place of commission of the crime where they commit the following crimes subject to liability under treaties:
12) the crimes related to possession of narcotic or psychotropic, toxic or highly active substances (Articles 259-269);

**Article 25(4) of the CC. Forms of Complicity**
4. A criminal association shall be one in which three or more persons linked by permanent mutual relations and division of roles or tasks join together for the commission of a joint criminal act – one or several serious and grave crimes. An anti-state group or organisation and a terrorist group shall be considered equivalent to a criminal association.

**Article 260(3) of the CC. Unlawful Possession of Narcotic or Psychotropic Substances for the Purpose of Distribution Thereof or Unlawful Possession of a Large Quantity of Narcotic or Psychotropic Substances**
3. A person who unlawfully produces, processes, acquires, stores, transports, forwards, sells or otherwise distributes a very large quantity of narcotic or psychotropic substances shall be punished by imprisonment for a term of ten up to fifteen years.

**Article 199(4) of the CC. Smuggling**
4. A person who, without going through the customs control or otherwise avoiding it or without an authorisation, transports across the state border of the Republic of Lithuania firearms, ammunition, explosives, explosive, radioactive materials or other strategic goods, toxic, highly active, narcotic or psychotropic substances or precursors of narcotic or psychotropic substances shall be punished by imprisonment for a term of three up to ten years.

**Procedural history of the case**

In the Republic of Lithuania, criminal proceedings are defined by the Code of Criminal Procedure approved by Law No IX-785 of 14 March 2002 and entered into effect on 1 May 2003. The Code provides for the following stages of criminal prosecution: 1) a pre-trial investigation; 2)

3  /QR code/

proceedings before the courts of first instance; 3) a procedure for appeals; 4) enforcement of decisions and rulings; 5) a cassation procedure.

The criminal case in which the extradition of Nerijus Tautvydas is requested is currently in the first place stage of criminal proceedings. In the Republic of Lithuania, this stage is called a pre-trial investigation. The procedural status of Nerijus Tautvydas at this stage of the criminal proceedings is a suspect.

A suspect shall be a party to a pre-trial investigation. During the trial, the person who had the status of a suspect acquires the procedural status of the accused. A person can acquire the procedural status of a suspect in one of the following ways:

1) when detained on suspicion of committing a criminal offense, or

2) when questioned about the offense he or she is suspected of having committed, or

3) when summoned for an interview in the presence of a notification of suspicion as provided for in Article 187 of the Code of Criminal Procedure, or

**4) where a person has gone into hiding or his or her whereabouts are unknown, the person shall be recognized as a suspect by a prosecutor's decision, by a decision of a pre-trial judge, or by a decision of a pre-trial investigation officer in urgent cases.**

Article 187 of the Code of Criminal Procedure of the Republic of Lithuania (hereafter "the CCP") provides that before the first questioning a notification of suspicion and a prosecutor's decision to recognise him/her as a suspect must be served to and undersigned by a suspect. A criminal act (place, time and other circumstances of the act) and criminal law establishing that criminal act must be indicated as well as the suspect's rights must be enumerated in this notification, the prosecutor's decision or a pre-trial judge's ruling.

It should be noted that when assigning the procedural status of a suspect to a person, the sufficiency of data leading to a reasonable belief that the particular person has committed a criminal offence is mandatory. The sufficiency of the data that a person may have committed a criminal offence is an evaluative criterion, which is assessed on a situation-specific basis. As regards the assessment of the existence of a reasonable suspicion, national and international case-law provides that the facts supporting such a suspicion should not be at the same level as those necessary to support a conviction or indictment (this happens at a later stage in the criminal proceedings).

In the course of pre-trial investigations and the gathering of new material of relevance to the investigation and hearing of a criminal offense, the situation constantly evolves and, in certain cases, the offense committed by a suspect may need to be supplemented or even reclassified under another article, paragraph or subparagraph of the Criminal Code. In such cases, a new notification of suspicion shall be served on the suspect.

In this regard, the equivalent of the charging documents referred to in Article 8(3)(b) of the Extradition Treaty between the Government of the Republic of Lithuania and the Government of the United States of America would be, under the criminal law of the Republic of Lithuania, a notification of suspicion or a prosecutor's decision to recognize a person as a suspect.

**Description of the criminal offenses for which the extradition of Nerijus Tautvydas from the USA is sought**

Nerijus Tautvydas, by the decision of 4 November 2022 issued by Aida Japertienė, Prosecutor of the Department for Organized Crime and Corruption Investigation of the Prosecutor General's Office of the Republic of Lithuania, was recognized as a suspect for three criminal offenses allegedly committed in the period from 2014 to the end of 2022.

Data underlying the suspicions against Nerijus Tautvydas can be found in the decision to recognize him as a suspect that is attached to this request (see **Enclosure No. 2**).

4                                                                  /QR code/

**Offense No. 1**

Nerijus Tautvydas organized the armed criminal association *Džerkiniai* and participated in its activities, as well as unlawfully possessed a large quantity of narcotic substances, and organized the trafficking thereof, specifically:

Nerijus Tautvydas, no later than in 2014, for mercenary reasons, in order to criminally enrich himself and to gain significant influence among the actors of the Lithuanian and foreign criminal world, having agreed in advance with Džeraldas Paulauskas and Valdemaras Raudonis to commit grave, serious and less serious crimes, such as unlawful possession of very large quantities of the narcotic substances, the trafficking thereof, as well as other grave and serious crimes, organised (established) the armed criminal association *Džerkiniai* (hereinafter referred to as "the ACA *Džerkiniai*") that has been led by Džeraldas Paulauskas since 2014, and engaged Jonas Sirvydas, Liutauras Nemeikšis, Mindaugas Švermickas, Oleg Kravchenko, a citizen of the Russian Federation, Ramūnas Lapinskas and other individuals currently being identified, in the activities of the said criminal association, as well as engaged Vaidas Filipavičius, Artūras Liubauskas, Titas Ramanauskas, Darius Palinauskas, Riccardo Marian Rotmann, a citizen of the Federal Republic of Germany, Vilem Kovač, a citizen of the Czech Republic, Aleksandrs Zaicevs. a citizen of the Republic of Latvia, and other individuals who are not members of the said armed criminal association for joint criminal activities, i.e. for commission of individual crimes, and participated together with other accomplices in the activities of the said armed criminal association until the end of 2022.

During the period of 2015-2022 while the ACA *Džerkiniai* existed, Nerijus Tautvydas, together with the leader of the ACA and other members, handled a common fund for financing the activities of the ACA and possessed, without authorization, a large quantity of firearms and ammunition, which he planned to use in the offenses committed by the criminal association.

Nerijus Tautvydas, together with Džeraldas Paulauskas, the ACA leader, and other members, using encrypted means of communication, held periodical meetings, during which they discussed the plans of the criminal association, specific offenses and other issues relating to the activities of the ACA, both in the Republic of Lithuania and abroad.

Nerijus Tautvydas, as one of the organizers and members of the ACA, acting for own benefit and for the benefit of the members of the armed criminal association, seeking for unlawful enrichment from criminal activities, committed the criminal offenses provided in Article 260(3) of the Criminal Code of the Republic of Lithuania (hereafter "the CC"), i.e. organized the unlawful possession of a very large quantity of narcotic substances; Article 199(4), i.e. organized the smuggling of narcotic substances to and from the Republic of Lithuania.

Nerijus Tautvydas is suspected of having committed a criminal offence under Article 249(3) of the CC.

**Offense No. 2**

Nerijus Tautvydas, as one of the organizers and members of *Džerkiniai,* acting together with the Džeraldas Paulauskas, the leader of the said association, and other members – Valdemaras Raudonis, Ramūnas Lapinskas, Mindaugas Švermickas, Oleg Kravchenko, a citizen of the Russian Federation, – and the non-members – Riccardo Marian Rotmann, a citizen of the Federal Republic of Germany, Vilem Kovač, a citizen of the Czech Republic, Aleksandrs Zaicevs, a citizen of the Republic of Latvia, and other persons currently being identified during the pre-trial investigation – seeking for unlawful enrichment, organized the unlawful possession of a very large quantity of a narcotic substance and organized the smuggling of the aforementioned narcotic substance to and from the Republic of Lithuania, in particular: Nerijus Tautvydas, no later than before 9 August 2020, acting together with Džeraldas Paulauskas, the leader of the aforementioned ACA, and other

members – Valdemaras Raudonis, Ramūnas Lapinskas, Mindaugas Švermickas, Oleg Kravchenko, the citizen of the Russian Federation, – and the non-members – Riccardo Mariann Rotmann, a citizen of the Federal Republic of Germany, Vilem Kovač, a citizen of the Czech Republic, Aleksandrs Zaicevs, a citizen of the Republic of Latvia, and other accomplices currently being identified during the pre-trial investigation, involving other non-members of the criminal association, organized an unlawful acquisition of a very large quantity of narcotic substances – at least 3,480 kg of cannabis resin (hashish) – from the Republic of Lebanon, an unlawful storage and transportation, as well as smuggling of the aforementioned narcotic substance.

In implementing the criminal plan, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Mindaugas Švermickas, Ramūnas Lapinskas, Riccardo Marian Rotmann, a non-member of the ACA, and other persons currently being identified during the investigation, from 23 August 2020 to 22 November 2020, organized an unlawful acquisition and storage of a very large quantity of narcotic substances – at least 3,480 kg of cannabis resin (hashish) – in the Republic of Lebanon, and an unlawful transportation from the Republic of Lebanon through the European countries to the Czech Republic.

In accordance with the common agreement between Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Olegas Kravchenko, Ramūnas Lapinskas, Riccardo Marian Rottman and other accomplices currently being identified, after dividing the cargo of at least 3,480 kg of cannabis resin into two parts, one part remained in the Czech Republic, and the other part – at least 1,480.4 kg of cannabis resin (hashish) – was concealed in hiding places made of slabs of marble products; no later than before 30 December 2020 and by order of Džeraldas Paulauskas and criminal accomplices, it was unlawfully transported by smuggling to the Republic of Lithuania. In organizing the transportation of a very large quantity of narcotic substances, Ramūnas Lapinskas and the accomplices involved Artūras Liubauskas in the criminal act, who, no later than before 30 December 2020, with a truck currently being identified during investigation with an attached semi-trailer Schmitz S.PR 24-13.62 (registration No. DP 810) loaded with at least 1,480.4 kg of cannabis resin (hashish) hidden in the hiding places of the slabs of marble products, unlawfully transported this very large quantity of narcotic substances from the Czech Republic through the territories of the European countries to the Polish-Lithuanian border, later transported the aforementioned narcotic substance across the Polish-Lithuanian border without presenting the cargo to customs control and avoiding the control, by hiding the substances in the hiding places made in the slabs of marble products, consequently, transporting the aforementioned very large quantity of the narcotic substance through the territory of the Republic of Lithuania from the state border to the location subject to identification during the pre-trial investigation in Kaunas County, and from there, by order of Ramūnas Lapinskas, Nerijus Tautvydas and Mindaugas Švermickas, the aforementioned very large quantity of the narcotic substance on 31 December 2020 was unlawfully transported through the territory of the Republic of Lithuania to the location subject to identification during the pre-trial investigation which was identified by the ACA members with the common title "*at Tadas*".

After Ramūnas Lapinskas, Džeraldas Paulauskas, Valdemaras Raudonis, Nerijus Tautvydas, and Mindaugas Švermickas provided truck Volvo FM 400 FH 400 (registration No. LRO 403) and attached to it the semi-trailer Schmitz S.PR 24-13.62 (registration No. DP 810) with a very large quantity of a narcotic substance – at least 1,480.4 kg of cannabis resin (hashish) – hidden within in the hiding places of the slabs of marble products, organized the transportation by smuggling of the aforementioned narcotic substance from the Republic of Lithuania, Artūras Liubauskas, from 24 January 2021 until 25 January 2021, following the accomplices' orders, unlawfully transported a very large quantity of a narcotic substance – at least 1,408.4 kg of cannabis resin (hashish) – from the location subject to identification during the investigation commonly known as "*at Tadas*'" to the

Lithuanian-Latvian border, without a permit, transported the aforementioned narcotic substance across the border of the Republic of Lithuania without presenting the cargo to customs control and avoiding the control, by hiding the substances in the hiding places made in the slabs of marble products, unlawfully transported a very large quantity of the narcotic substance from the state border through the territory of the Republic of Latvia to Terehova border checkpoint of the Latvian-Russian border, however, having noticed some damage (cracks) on a few slabs of marble products that had the narcotic substances hidden inside, in attempt to avoid a possible detection of the narcotic substances transported and detention during the customs control, he stopped the vehicle at the close grounds of the aforementioned border checkpoint, where he left the vehicle with the cargo of the narcotic substance and, having notified the accomplices about it, returned to the Republic of Lithuania.

Having discussed the situation, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Ramūnas Lapinskas, in agreement with Aleksandrs Zaicevs, ordered the latter to find the premises suitable for storage of the truck with the semi-trailer and of moving the shipment of narcotics to different hiding places and to find a driver subject to identification during the investigation who, by Aleksandr Zaicevs' order, on 2 February 2021, with the truck Volvo FM 400 FH 400 (registration No. LRO 403) with the semi-trailer Schmitz S.PR 24-13.62 (registration No. DP 810), accompanied by the persons sent by A. Zaicevs and subject to identification during the investigation, through the territory of the Republic of Latvia from the close grounds of Terehova border checkpoint to the premises found by A. Zaicevs and subject to identification during investigation, unlawfully transported a very large quantity of narcotic substances – at least 1,480.4 kg of cannabis resin (hashish) – hidden in the hiding places of marble slabs loaded in the semi-trailer, where he, in association with the accomplices of the present crime, unlawfully stored the aforementioned very large quantity of the narcotic substance until at least 3 March 2021.

Continuing the preparation for the transportation of a very large quantity of narcotic substances to the Russian Federation, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, and Ramūnas Lapinskas prepared a plan for further criminal acts; during the implementation of the aforementioned plan, persons found by Nerijus Tautvydas, Mindaugas Švermickas and Ramūnas Lapinskas and currently being identified during the pre-trial investigation, from 6 February 2021 to 23 February 2021, in the territory of UAB Akmenstata at the address Elektrėnų g. 3B, Pastrėvys, Elektrėnai Municipality, by cutting cavities in the slabs of marble products, produced in them hiding places for the transportation of the narcotic substance. In accordance with the agreement, Aleksandrs Zaicevs, from 6 February 2021 to 23 February 2021, in association with persons subject to investigation during the pre-trial investigation, disassembled the damaged slabs of marble products and removed the very large quantity of the narcotic substance – at least 1,480.4 kg of cannabis resin (hashish) – that had been hidden therein. During the aforementioned period, by order of Ramūnas Lapinskas and Nerijus Tautvydas, the persons currently being identified during the investigation, from the territory of JSC Akmenstata at the address Elektrėnų st. 3B, Pastrėvys, Elektrėnai Municipality to the premises in the Republic of Latvia rented by A. Zaicevs, which had a very large quantity of the narcotic substance stored unlawfully within, transported the truck and the semi-trailer subject to identification during the investigation and loaded with the slabs of marble products with the hiding places within.

Ramūnas Lapinskas, Nerijus Tautvydas and Aleksandrs Zaicevs, having arranged their actions with Džeraldas Paulauskas, Valdemaras Raudonis and Olegas Kravchenko during meetings and with the use of the encrypted communication platform Sky ECC, from 24 February 2021 to 3 March 2022, in the premises in the Republic of Latvia subject to identification during the investigation, repackaged a very large quantity of the narcotic substance: part of the narcotic substance – 974,953 g of cannabis resin (hashish) – was deposited in the hiding places in the slabs

of marble products transported from Lithuania and loaded in the truck Volvo FM 400 FH 400 (registration No. LRO 403) with the semi-trailer Schmitz S.PR 24-13.62 (registration No. DP 810), and the part that could not fit in the hiding places – at least 505 kg of cannabis resin (hashish) – was left in the aforementioned premises. Afterwards, Ramūnas Lapinskas arranged with the driver Artūras Liubauskas the transportation for reimbursement of the narcotic substance from the Republic of Latvia to the Russian Federation. During the period of 3 March 2021-12 March 2021, Artūras Liubauskas, driving the truck Volvo FM 400 FH 400 (registration No. LRO 403) with the semi-trailer Schmit S.PR 24-13.62 (registration No. DP 810), unlawfully transported a very large quantity of the narcotic substance – 974,953 g of cannabis resin (hashish) through the territory of the Republic of Latvia, making a stop at a parking lot currently being established during the investigation and at a secured parking lot near the petrol station Circle K at the address Nomietnu iela 1, Salaspils. After following the accomplices' orders, on 12 March 2021, Artūras Liubauskas, driving the truck Volvo FM 400 FH 400 (registration No. LRO 403) with the semi-trailer Schmitz S.PR 24-13.62 (registration No. DP 810) loaded with a very large quantity of narcotic substances hidden in the slabs of marble products, from the secured parking lot near the aforementioned petrol station Circle K towards the Latvian-Russian border through the territory of the Republic of Latvia, unlawfully transported a very large quantity of narcotic substances – 974,953 g of cannabis resin (hashish), until on 12 March 2021 at 5:30 a.m., at Uriekstes iela 16, Riga, he was detained by the officers of the Republic of Latvia.

Nerijus Tautvydas is suspected of having committed criminal offenses provided for in Article 25(4), Article 7(12), Article 260(3), and Article 199(4) of the CC.

**Offense No. 3**

Nerijus Tautvydas, as one of the organizers and members of the armed criminal association *Džerkiniai*, for mercenary reasons – with the aim of profiting from the crimes committed by the members of the criminal association, encouraging other members of the criminal association to commit crimes and receiving criminal profit from their commission, acting together with Džeraldas Paulauskas, the head of the said association, and the members Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis as well as Titas Ramanauskas, Darius Palinauskas, Vaidas Filipavičius not belonging to the criminal association and other persons currently being identified during the pre-trial investigation, within the period from 24 November 2020 to 9 October 2021, organized the unlawful acquisition of a very large quantity of the narcotic substances – cannabis resin (hashish) in the Kingdom of Spain, the unlawful transportation of the narcotic substances from the Kingdom of Spain through the territory of the European Union states to the Republic of Poland, and from there to the Russian Federation, by hiding the narcotic substances in trucks and other vehicles, as well as the unlawful handling of a very large quantity of the narcotic substances in the Russian Federation.

Jonas Sirvydas and Liutauras Nemeikšis, in implementing a common criminal plan together with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, assigned tasks and roles to themselves and to their accomplices: within the period from 24 November 2020 to 9 October 2021, in the Kingdom of Spain, under the circumstances currently being determined during the pre-trial investigation, with the mediation of the accomplices currently being identified during the pre-trial investigation, acquired a very large quantity of the narcotic substances – at least 479 kg of cannabis resin (hashish) at least three times for the purpose of their handling in the Russian Federation; involved Vaidas Filipavičius, Darius Palinauskas, Titas Ramanauskas, who did not belong to the criminal association, in criminal activities and organized, together with the accomplices, the unlawful transportation of the said narcotic substance to the Republic of Poland and the storage of a very large quantity of the said narcotic substance there; organized, together with the accomplices, the unlawful transportation of a very large quantity of the said narcotic substance to the Russian

/QR code/

Federation and its unlawful handling there, from which 244 kg of cannabis resin (hashish) were seized by the officers in the Republic of Poland.

In the period from 24 November 2020 to 11 December 2020, Jonas Sirvydas and Liutauras Nemeikšis, acting in agreement with Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis and implementing the criminal plan, maintaining contact with each other and together with the accomplices currently being identified during the investigation and suppliers of narcotic substances currently being identified during the investigation, organized the unlawful acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. On 11 December 2020, the accomplices currently being identified during the investigation, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, unlawfully acquired a very large quantity of the narcotic substance – at least 110 kg of cannabis resin (hashish) in the Kingdom of Spain. During the period from 13 December 2020 to 17 December 2020, Jonas Sirvydas and Liutauras Nemeikšis organized the transportation of at least 110 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland, coordinated the transportation of the narcotic substances through the territories of European countries. On 17 December 2020, at a place currently being identified during the pre-trial investigation, Vaidas Filipavičius, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, unlawfully acquired a very large quantity of the narcotic substance – at least 110 kg of cannabis resin (hashish) from a person not identified during the investigation, which he unlawfully transported through the territory of the Republic of Poland to the place currently being determined during the investigation where the said narcotic substances were unlawfully stored until 24 February 2021. On 24 February 2021, within the period from 01:53 a.m. to 02:11 a.m., Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, met within the territory of the petrol station SHELL Polska SP z.o.o. at ul. Nowosłowy Dolne 140, the city of Dmosin, the Republic of Poland where they reloaded a very large quantity of cannabis resin (hashish) from a vehicle currently being identified during the pre-trial investigation driven by Vaidas Filipavičiaus to a vehicle currently being identified during the pre-trial investigation driven Darius Palinauskas and Titas Ramanauskas. Then, no later than on 26 February 2021, Darius Palinauskas and Titas Ramanauskas unlawfully transported a very large quantity of the narcotic substance – at least 110 kg of cannabis resin (hashish) from the Republic of Poland through the Republic of Belarus to the Smolensk region of the Russian Federation, where the said narcotic substances were unlawfully handled, by transferring them to persons not identified during the pre-trial investigation.

No later than on 2 March 2021, Jonas Sirvydas and Liutauras Nemeikšis, acting in agreement with Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis and implementing the criminal plan, while continuing the premeditated crime, maintaining contact with the accomplices currently being identified during the pre-trial investigation and suppliers of narcotic substances currently being identified during the pre-trial investigation, organized the unlawful acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. On 2 March 2021, the accomplices currently being identified during the pre-trial investigation, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, unlawfully acquired a very large quantity of the narcotic substance – least 125 kg of cannabis resin (hashish) in the Kingdom of Spain. No later than on 3 March 2021, Jonas Sirvydas and Liutauras Nemeikšis organized the unlawful transportation of a very large quantity of the narcotic substance – at least 125 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland, coordinated the transportation of the narcotic substances through the territories of European countries. On 9 March 2021, Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, met within the territory of the petrol station SHELL Polska SP z.o.o. at ul. Nowosłowy Dolne 140, the city of Dmosin, the Republic of Poland, where

they reloaded a very large quantity of cannabis resin (hashish) from a vehicle currently being identified during the pre-trial investigation driven by Vaidas Filipavičiaus to a vehicle currently being identified during the pre-trial investigation driven by Darius Palinauskas and Titas Ramanauskas, after which Darius Palinauskas and Titas Ramanauskas unlawfully transported a very large quantity of the narcotic substance – at least 125 kg of cannabis resin (hashish) through the territories of the Republic of Poland, the Republic of Belarus and the Russian Federation to the Smolensk region, where the said narcotic substances were unlawfully handled, by handing them over to persons not identified during the pre-trial investigation.

No later than on 9 October 2021, Jonas Sirvydas and Liutauras Nemeikšis, acting in agreement with Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis and implementing the criminal plan, while continuing the premeditated crime, by maintaining contact together with the accomplices currently being identified during the pre-trial investigation and suppliers of narcotic substances currently being identified during the pre-trial investigation, organized the unlawful acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. No later than on 9 October 2021, the accomplices currently being identified during the pre-trial investigation, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, unlawfully acquired a very large amount of the narcotic substance – at least 244 kg of cannabis resin (hashish) in the Kingdom of Spain.

While continuing this criminal act, no later than on 9 October 2021, under unspecified circumstances, Jonas Sirvydas and Liutauras Nemeikšis organized the unlawful transportation of a very large quantity of the narcotic substance – at least 244 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland, coordinated the transportation of the narcotic substances through the territories of European countries. On 9 October 2021, Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis regarding the transportation of the narcotic substances from the Republic of Poland through the Republic of Belarus to the Russian Federation, met within the territory of the petrol station SHELL Polska SP z.o.o. at ul. Nowosławy Dolne 140, the city of Dmosin, the Republic of Poland where they reloaded a very large quantity of cannabis resin (hashish) from a vehicle currently being identified during the pre-trial investigation driven by Vaidas Filipavičiaus to the vehicle – the truck DAF XF480FT, state registration plate number: KHJ 035, with the semi-trailer Pezzaioli SBA 3, state registration plate number: MP 643, belonging by the ownership right to UAB Transfriga, driven by Darius Palinauskas and Titas Ramanauskas, after which D. Palinauskas and T. Ramanauskas unlawfully transported a very large quantity of the narcotic substance – 244 kg of cannabis resin (hashish) in the said vehicle through the territory of the Republic of Poland to the Russian Federation, however, on 9 October 2021 they were detained by police officers of the Republic of Poland.

Nerijus Tautvydas is suspected of having committed criminal offenses provided for in paragraph Article 25(4), Article 7(12), Article 260(3) of the CC.

**Data underlying the suspicions**

There is sufficient evidence in the present criminal case to confirm that Nerijus Tautvydas is reasonably suspected of having committed the above offenses, which will be described in detail in **Enclosure No. 3** that is attached to this request.

As regards the offense provided for in Article 249(3) of the CC (Offense No. 1):

- material obtained in connection with the execution of European Investigation Orders and requests for legal assistance (a case-file of pre-trial investigation No. 1181500122 being

conducted in the Republic of Latvia, material of pre-trial investigations No. RP II Ds 8.2021 and No. RP II 1Ds being conducted (completed) in Poland; tracking of individuals, data related to their telephone conversations, other data of electronic communications relating to the control of the content of information transmitted by electronic means; conversations of the persons recorded in different premises, vehicles; inspection of premises, territories, vehicles;

- data transmitted/received by the Sky Ecc system, which, in the present criminal case, are described by the record of inspection of data of SKY Ecc dated 18/11/2021;
- searches carried out in different Lithuanian cities on 22 November 2022 (data on the persons of this ACA who were using the Sky Ecc system were obtained);
- data on the establishment of the ACA obtained during a criminal intelligence investigation (the detailed statement dated 24 October 2022 by a police officer included in official report No. 38-2(DS)-5246_RN);
- information on the activities of the ACA which has been collected and accumulated by criminal police officers since 2014;
- detailed explanations of the witness Przemyslaw Jaskowski relating to the activities of the ACA *Džerkiniai*;
- during the search of a garage situated in Dembava, Panevėžys district, Lithuania, belonging to the suspect Ramūnas Lapiskas, one of the members of the ACA, two pistols and 86 9 mm caliber Luger type ammunition were found.

As regards offenses provided for in Article 25(4), Article 7(12), Article 260(3), Article 199(4) of the CC (Offense No. 2):

- official report issued by a criminal police officer (information obtained in the course of a criminal intelligence carried out in Lithuania has been confirmed – on 12 March 2021, when cooperating with the central criminal police of the Republic of Latvia and carrying out joint investigation actions, a person who was unlawfully transporting 974,953 g of cannabis resin (hashish) by a car was detained in the Republic of Latvia;
- data transmitted/received by the Sky Ecc system, which, in the present criminal case, are described by the record of inspection of SKY Ecc data dated 18/11/2021;
- searches carried out in different Lithuanian cities on 22 November 2022 (data on the persons who were using the Sky Ecc system for this offense were obtained);
- a case-file of pre-trial investigation No. 1181500122 carried out in the Republic of Latvia, which was obtained on the basis of the European Investigation Order issued by law enforcement authorities of the Republic of Lithuania;
- witness statements (on production of marble slabs, rental of trucks and trailers, repair of a broken down truck).

As regards the offense provided for in Article 25(4), Article 7(12), Article 260(3) of the CC (Offense No. 3):

- communication data between persons transmitted and received through the encrypted electronic communications transmission system Sky Ecc obtained on the basis of the European Investigation Order (indicated in the record of inspection of SKY Ecc data dated 11/10/2021;

- data obtained on the basis of European Investigation Orders issued by law enforcement authorities of the Republic of Lithuania (material of pre-trial investigations No. RP II Ds 8.2021 and No. RP II 1Ds being conducted (completed) in Poland);
- Detailed explanations of the witness Przemyslaw Jaskowski relating to the activities of the ACA *Džerkiniai*;

Nerijus Tautvydas is suspected of having committed a serious criminal offense and grave criminal offenses punishable by a maximum term of deprivation of liberty for a period of more than one year and the provisions of Article 2 of the Annex to the Protocol shall apply to these offenses.

Offense No. 1 (Article 249(3)) is punishable by life custodial sentence. It should be clarified that, in accordance with Article 51 of the CC ("Life Custodial Sentence"), after a convict has served 20 (twenty) years of life custodial sentence, the question of commuting life custodial sentence to a fixed-term custodial sentence shall be examined and decided by the court on the basis of a recommendation from the authority enforcing the sentence. According to the Regulations for the Examination of Requests for Clemency approved by the Decree of the President of the Republic of Lithuania, requests for clemency filed by persons sentenced to life custodial sentence may be considered not earlier than after serving 10 (ten) years of imprisonment.

The pre-trial investigation has established that the ties of the suspect Nerijus Tautvydas with the Republic of Lithuania are weak, he has no permanent residence and legal source of livelihood in Lithuania. On 12 March 2021, when narcotic substances were seized in the Republic of Latvia, Nerijus Tautvydas had been gone abroad and did not return to the Republic of Lithuania. He went to the United States of America together with his cohabiting partner (the mother of their common children) and his young children. Having regard to the fact that the suspect Nerijus Tautvydas went into hiding from the pre-trial investigation, his search was announced by the prosecutor's decision dated 4 November 2022. A measure of restraint of arrest was imposed on Nerijus Tautvydas by the ruling dated 7 November 2022 issued by a pre-trial judge of the District Court of Vilnius City (see **Enclosure No. 4**).

On 17 October 2022, a letter was received from the U.S. Embassy in Warsaw in which it was stated that a place of residence of Nerijus Tautvydas and his family in the USA is associated with a house at 6827 Dove Avenue, Woodridge, Illinois (property rights belong to Nerijus Žitkevičius) and a house at 727 S County Line Road, Hinsdale, Illinois (property rights belong to Aistė Ežerskė), therefore letter No. TP-05-00009-22 dated 9 November 2022 requesting for the provisional arrest of Nerijus Tautvydas, a citizen of the Republic of Lithuania, for the purpose of his extradition from the United States of America was sent to the US competent law enforcement authorities of the USA. On 22 November 2022, we were informed by the competent authorities of the USA that Nerijus Tautvydas had been arrested in the USA on the basis of the above request.

Having regard to the fact that Nerijus Tautvydas, personal ID number: 38406060244, his last declared place of residence: Saulės st. 10-21, Elektrėnai, Elektrėnai Municipality, is suspected of having committed criminal offenses not only in the territory of the Republic of Lithuania, but also in the territories of other countries (the Republic of Latvia, the Czech Republic, the Republic of Poland, the Kingdom of Spain, etc.) in the period from 2014 to the end of 2022, and in accordance with the Extradition Treaty between the Government of the Republic of Lithuania and the Government of the United States of America approved by the Protocol on the Application of the Agreement on Extradition between the United States of America and the European Union to the Extradition Treaty between the Government of the Republic of Lithuania and the Government of the United States of America, we kindly request you to extradite Nerijus Tautvydas to the law enforcement authorities of the Republic of Lithuania for prosecution for three criminal offenses

12                                                              /QR code/

provided for in Article 249(3) of the CC (offense No. 1), Article 25(4), Article 7(12), Article 260(3) of the CC (offense No. 2) and Article 25(4), Article 7(120, Article 260(3) of the CC (offense No. 3).

The statute of limitations of a judgment of conviction in respect of Nerijus Tautvydas has not expired yet (see **Enclosure No. 5** for relevant extracts from the Criminal Code).

The Prosecutor General's Office of the Republic of Lithuania assures you that Nerijus Tautvydas, without your consent, will not be prosecuted or punished for offenses other than those for which extradition is sought, nor will he be extradited to a third country.

**Surrender of property**

With reference to Article 15 of the Extradition Treaty, please seize and surrender all items, including articles, valuable objects, documents, and other evidence that are connected with the offenses in respect of which allegations are made against Nerijus Tautvydas, including computers and other electronic means of data storage.

For any additional questions regarding this request, please contact the person responsible for drawing up this request, i. e. Ms. Jurga Zieniūtė, Prosecutor, Department for Criminal Prosecution, the Office of the Prosecutor General of the Republic of Lithuania, (tel. No. +370 5 266 2448, e-mail: jurga.zieniute@prokuraturos.lt and ruta.kavaliauskiene@prokuraturos.lt)

We hope that our request will be granted. We sincerely thank you in advance for your co-operation. We will provide you with analogous or other legal assistance.

ENCLOSURES:
Enclosure No. 1 – A person's photo and fingerprints, 3 pages.
Enclosure No. 2 – Decision on recognition as a suspect dated 4 November 2022, 17 pages.
Enclosure No. 3 – Summary of data underlying the suspicions against N. Tautvydas, 55 pages.
Enclosure No. 4 – A ruling dated 7 November 2022 to impose a measure of restraint of arrest against Nerijus Tautvydas issued by a pre-trial judge of the District Court of Vilnius City, 20 pages.
Enclosure No. 5 – Extracts from the Criminal Code in connection with the statute of limitations, 1 page.

Deputy Chief Prosecutor                                          Saulius Verseckas

Jurga Zieniūtė, tel. No. 852662448, e-mail: jurga.zieniute@prokuraturos.lt

*Translation from the Lithuanian language by Milda Vildžienė, translator at Prosecutor General's Office, who was been warned about criminal liability for making false or deliberately misleading translation under Article 235 of the Criminal Code of the Republic of Lithuania.*




## GENERALINĖS PROKURATŪROS BAUDŽIAMOJO PERSEKIOJIMO DEPARTAMENTAS

Jungtinių Amerikos Valstijų Teisingumo
departamento
Tarptautinių ryšių skyriui

2022-12-23 Nr. TP-05-00009-22
Į CRM-95-100-30359

**DĖL NERIJAUS TAUTVYDO, GIM. 1984-06-06, EKSTRADICIJOS**

Gerbiami kolegos,

Lietuvos Respublikos generalinė prokuratūra reiškia Jums pagarbą, ir būdama centrine įstaiga bei vadovaudamasi 2001 m. spalio 23 d. Lietuvos Respublikos Vyriausybės ir Jungtinių Amerikos Valstijų Vyriausybės pasirašyta ekstradicijos sutartimi (toliau - Sutartis) ir 2005 m. birželio 15 d. protokolu dėl susitarimo tarp Europos Sąjungos ir Jungtinių Amerikos Valstijų dėl ekstradicijos taikymo Lietuvos Respublikos Vyriausybės ir Jungtinių Amerikos Valstijų Valstybės ekstradicijos sutarčiai (toliau - „Protokolas") su jo priedu, prašo išduoti Lietuvos Respublikos pilietį Nerijų Tautvydą iš Jungtinių Amerikos Valstijų.

**Nerijus Tautvydas,** (asmens fotografija, daryta 2016 m. ir patalpinta Lietuvos Gyventojų registre (2016 metais Nerijus Tautvydas kreipėsi į Migracijos departamentą dėl Lietuvos Respublikos piliečio paso išdavimo, vykdant šią procedūrą buvo patikrinta jo asmenybė, asmuo buvo nufotografuotas ir jo atvaizdas yra Lietuvos Respublikos gyventojų registre bei 2016-11-02 išduotame Lietuvos Respublikos piliečio pase Nr. 24288016) bei daktiloskopinė kortelė (Nerijus Tautvydas Lietuvos Respublikoje 2014 m. tirtoje baudžiamojoje byloje 2014-05-08 buvo pripažintas įtariamuoju, sulaikytas bei daktiloskopuotas ir šie duomenys buvo patalpinti Lietuvos Respublikos Kriminalistinių tyrimų centro daktiloskopinių duomenų registre) – **Priedas Nr. 1**), a. k. 38406060244, gyvenamąją vietą nuo 2020-10-16 iki 2021-09-22 buvo deklaravęs Saulės 10-21, Elektrėnai, Elektrėnų sav., Lietuvos Respublikoje, *teistumai išnykę*, įtariamas padaręs tris nusikalstamas veikas, numatytas Lietuvos Respublikos baudžiamojo kodekso (toliau - BK):

1. Veika, numatyta BK 249 straipsnio 3 dalyje;
2. Veika, numatyta 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje, 199 straipsnio 4 dalyje;
3. Veika, numatyta BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje.

Ikiteisminį tyrimą baudžiamojoje byloje Nr. 01-1-09596-21, kurioje Nerijus Tautvydas įtariamas padaręs šiuos labai sunkius ir sunkų nusikaltimus, atlieka Lietuvos kriminalinės policijos biuro Sunkaus ir organizuoto nusikalstamumo tyrimo 3 - oji valdyba, o ikiteisminiam tyrimui vadovauja - Lietuvos Respublikos generalinės prokuratūros Organizuotų nusikaltimų ir korupcijos tyrimo departamento prokurorė Aida Japertienė.

**Išrašas iš Lietuvos Respublikos baudžiamojo kodekso:**

---

Biudžetinė įstaiga, Rinktinės g. 5A, LT-01515 Vilnius, tel. (8 5) 266 2304, faks. (8 5) 266 2317, el. p. generaline.prokuratura@prokuraturos.lt
Duomenys kaupiami ir saugomi Juridinių asmenų registre, kodas 288603320

2



**BK 249 straipsnio 2 ir 3 dalys. Nusikalstamas susivienijimas**

1. Tas, kas dalyvavo nusikalstamo susivienijimo veikloje, baudžiamas laisvės atėmimu nuo trejų iki penkiolikos metų.

2. Tas, kas dalyvavo šaunamaisiais ginklais, sprogmenimis ar sprogstamosiomis medžiagomis ginkluoto nusikalstamo susivienijimo veikloje, baudžiamas laisvės atėmimu nuo šešerių iki dvidešimties metų arba laisvės atėmimu iki gyvos galvos.

3. Tas, kas organizavo šio straipsnio 1 ar 2 dalyje numatytus nusikalstamus susivienijimus arba jiems vadovavo, baudžiamas laisvės atėmimu nuo dešimties iki dvidešimties metų arba laisvės atėmimu iki gyvos galvos.

**BK 7 straipsnio 12 punktas**. **Baudžiamoji atsakomybė už tarptautinėse sutartyse numatytus nusikaltimus**

Asmenys atsako pagal šį kodeksą, nesvarbu, kokia jų pilietybė ir gyvenamoji vieta, taip pat nusikaltimo padarymo vieta bei tai, ar už padarytą veiką baudžiama pagal nusikaltimo padarymo vietos įstatymus, kai padaro nusikaltimus, atsakomybė už kuriuos numatyta tarptautinių sutarčių pagrindu:

12) nusikaltimus, susijusius su disponavimu narkotinėmis ar psichotropinėmis, nuodingosiomis ar stipriai veikiančiomis medžiagomis (259–269 straipsniai);

**BK 25 straipsnio 4 dalis**. **Bendrininkavimo formos**

4. Nusikalstamas susivienijimas yra tada, kai bendrai nusikalstamai veiklai – vienam ar keliems apysunkiams, sunkiems ar labai sunkiems nusikaltimams daryti – susivienija trys ar daugiau asmenų, kuriuos sieja pastovūs tarpusavio ryšiai bei vaidmenų ar užduočių pasiskirstymas. Nusikalstamam susivienijimui prilyginama antikonstitucinė grupė ar organizacija bei teroristinė grupė.

**BK 260 straipsnio 3 dalis. Neteisėtas disponavimas narkotinėmis ar psichotropinėmis medžiagomis turint tikslą jas platinti arba neteisėtas disponavimas labai dideliu narkotinių ar psichotropinių medžiagų kiekiu**

3. Tas, kas neteisėtai gamino, perdirbo, įgijo, laikė, gabeno, siuntė, pardavė ar kitaip platino labai didelį kiekį narkotinių ar psichotropinių medžiagų, baudžiamas laisvės atėmimu nuo dešimties iki penkiolikos metų.

**BK 199 straipsnio 4 dalis. Kontrabanda**

4. Tas, kas nepateikdamas muitinės kontrolei ar kitaip jos išvengdamas arba neturėdamas leidimo per Lietuvos Respublikos valstybės sieną gabeno šaunamuosius ginklus, šaudmenis, sprogmenis, sprogstamąsias, radioaktyviąsias medžiagas ar kitas strategines prekes, nuodingąsias, stipriai veikiančias, narkotines, psichotropines medžiagas arba narkotinių ar psichotropinių medžiagų pirmtakus (prekursorius), baudžiamas laisvės atėmimu nuo trejų iki dešimties metų.

**Procesinė bylos istorija.**

Lietuvos Respublikoje baudžiamąjį procesą apibrėžia Baudžiamojo proceso kodeksas, patvirtintas 2002 m. kovo 14 d. įstatymu Nr. IX-785 ir įsigaliojo 2003 m. gegužės 1 d. Šiame kodekse numatyti šie baudžiamojo persekiojimo etapai: 1) ikiteisminis tyrimas; 2) bylos nagrinėjimo tvarka pirmosios instancijos teismuose; 3) apskundimo tvarka; 4) nutarčių ir sprendimų vykdymas; 5) kasacijos tvarka.

Baudžiamoji byla, kurioje prašoma išduoti Nerijų Tautvydą, šiuo metu yra pirmojoje baudžiamojo proceso stadijoje. Lietuvos Respublikoje ši stadija vadinama ikiteisminiu tyrimu. Nerijaus Tautvydo procesinis statusas šiame baudžiamojo proceso etape – įtariamasis.

3



Įtariamasis yra ikiteisminio tyrimo dalyvis. Teisminio nagrinėjimo metu įtariamojo statusą turėjęs asmuo įgyja procesinį kaltinamojo statusą. Procesinį įtariamojo statusą asmuo gali įgyti vienu iš šių būdų:

1) kai yra sulaikytas įtariant padaręs nusikalstamą veiką, arba

2) kai yra apklausiamas apie veiką, kurios padarymu jis įtariamas, arba

3) kai yra šaukiamas į apklausą esant jau surašytam BPK 187 straipsnyje numatytam pranešimui apie įtarimą, arba

**4) kai slapstosi ar jo buvimo vieta nežinoma, įtariamuoju pripažįstamas prokuroro nutarimu ar ikiteisminio tyrimo teisėjo nutartimi, o neatidėliotinais atvejais – ikiteisminio tyrimo pareigūno nutarimu.**

Lietuvos Respublikos baudžiamojo proceso kodekso (toliau - BPK) 187 straipsnyje numatyta, kad prieš pirmąją apklausą įtariamajam turi būti pasirašytinai įteiktas pranešimas apie įtarimą ar prokuroro nutarimas pripažinti įtariamuoju. Pranešime apie įtarimą, prokuroro nutarime ar ikiteisminio tyrimo teisėjo nutartyje pripažinti asmenį įtariamuoju turi būti pateikiami šie duomenys: nusikalstama veika (padarymo vieta, laikas, kitos aplinkybės) ir baudžiamasis įstatymas, numatantis tą nusikalstamą veiką, be to, išvardijamos ir įtariamojo teisės.

Pažymėtina, kad asmeniui nustatant procesinį įtariamojo statusą būtinas duomenų, leidžiančių pagrįstai manyti, kad tas konkretus asmuo padarė nusikalstamą veiką, pakankamumas. Duomenų, kad asmuo galbūt įvykdė nusikalstamą veiką, pakankamumas yra vertinamasis kriterijus, kuris kiekvienoje situacijoje vertinamas individualiai. Nacionalinių ir tarptautinių teismų praktikoje, susijusioje su pagrįsto įtarimo buvimo vertinimu, laikoma, kad tokį įtarimą pagrindžiantys faktai neturėtų būti tokio paties lygmens, koks būtinas apkaltinamajam nuosprendžiui pagrįsti ar kaltinimui pareikšti (tai įvyksta esant vėlesnei baudžiamojo proceso stadijai).

Vykstant ikiteisminiam tyrimui ir renkant naujus duomenis, turinčius reikšmės nusikalstamai veikai tirti ir nagrinėti, situacija nuolat kinta ir tam tikrais atvejais įtariamojo veiką gali tekti papildyti ar net perkvalifikuoti pagal kitą Baudžiamojo kodekso straipsnį, dalį ar punktą. Tokiais atvejais įtariamajam įteikiamas naujas pranešimas apie įtarimą.

Taigi Lietuvos Respublikos Vyriausybės ir Jungtinių Amerikos Valstijų Vyriausybės ekstradicijos sutarties 8 str. 3 dalies b) punkte nurodytų dokumentų, kuriuo pateikti kaltinimai, atitikmuo pagal Lietuvos Respublikos baudžiamuosius įstatymus būtų pranešimas apie įtarimą ar prokuroro nutarimas pripažinti įtariamuoju.

**Nusikalstamų veikų, dėl kurių siekiama Nerijaus Tautvydo esktradicijos iš JAV, aprašymas.**

Nerijus Tautvydas 2022-11-04 d. Lietuvos Respublikos generalinės prokuratūros Organizuotų nusikaltimų ir korupcijos tyrimo departamento prokurorė Aidos Japertienės nutarimu yra pripažintas įtariamuoju dėl trijų nusikalstamų veikų, kurias jis galimai padarė laikotarpiu nuo 2014 metų iki 2022 metų pabaigos.

Duomenys, kuriais remiantis grindžiami įtarimai Nerijui Tautvydui pateikiami prie šio prašymo pridedame nutarime pripažinti jį įtariamuoju (**Priedas Nr. 2**)

**Veika Nr. 1.**

Nerijus Tautvydas organizavo „Džerkinių" ginkluotą nusikalstamą susivienijimą ir dalyvavo jo veikloje, neteisėtai disponavo labai dideliu narkotinių medžiagų kiekiu, organizavo narkotinės medžiagos kontrabandą, o būtent:

Nerijus Tautvydas ne vėliau kaip 2014 metais dėl savanaudiškų paskatų, siekdamas nusikalstamai praturtėti ir įgyti didelę įtaką Lietuvos ir užsienio valstybių nusikalstamo pasaulio atstovų tarpe, iš anksto susitaręs su Džeraldu Paulausku ir Valdemaru Raudoniu daryti labai

4



sunkius, sunkius ir apysunkius nusikaltimus - neteisėtai disponuoti labai dideliais narkotinių medžiagų kiekiais, užsiimti jų kontrabanda, organizavo (įkūrė) „Džerkinių" ginkluotą nusikalstamą susivienijimą (toliau - „Džerkinių" GNS), kuriam nuo 2014 m. iki 2022 metų pabaigos vadovavo Džeraldas Paulauskas, įtraukė į šio nusikalstamo susivienijimo veiklą Joną Sirvydą, Liutaurą Nemeikšį, Mindaugą Švermicką, Rusijos Federacijos pilietį Oleg Kravchenko, Ramūną Lapinską ir kitus nustatinėjamus asmenis, pasitelkė bendrai nusikalstamai veikai – atskiriems nusikaltimams daryti ginkluotam nusikalstamam susivienijimui nepriklausančius Vaidą Filipavičių, Artūrą Liubauską, Titą Ramanauską, Darių Palinauską, Vokietijos Federacinės Respublikos pilietį Riccardo Marian Rotmann, Čekijos Respublikos pilietį Vilem Kovač, Latvijos Respublikos pilietį Aleksandrs Zaicevs, kitus ikiteisminio tyrimo nustatinėjamus asmenis, iki 2022 metų pabaigos kartu su kitais bendrininkais dalyvavo šio nusikalstamo susivienijimo veikloje.

2015 metų - 2022 metų laikotarpiu, kol egzistavo „Džerkinių" GNS, Nerijus Tautvydas kartu su GNS vadovu ir kitais dalyviais turėjo bendrą kasą, skirtą GNS veiklai finansuoti, neturėdamas leidimo įgijo, gabeno ir laikė didelį kiekį šaunamųjų ginklų, šaudmenų, kuriuos planavo panaudoti nusikalstamo susivienijimo daromuose nusikaltimuose.

Nerijus Tautvydas kartu su „Džerkinių" GNS vadovu Džeraldu Paulausku ir kitais dalyviais, tiek Lietuvos Respublikoje, tiek ir už jos ribų, taip pat naudojantis šifruoto ryšio priemonėmis, periodiškai rengė pasitarimus, kurių metu buvo aptarinėjami ginkluoto nusikalstamo susivienijimo planai ir konkretūs nusikaltimai bei kiti klausimai, susiję su GNS veikla.

Nerijus Tautvydas, būdamas vienu iš GNS organizatorių ir dalyvių, veikdamas savo ir ginkluoto nusikalstamo susivienijimo dalyvių naudai, siekdamas nusikalstamai praturtėti iš nusikalstamos veiklos, padarė nusikaltimus, numatytus BK: 260 str. 3 d., t. y. organizavo neteisėtą disponavimą labai dideliu narkotinės medžiagos kiekiu; 199 str. 4 d., t. y. organizavo narkotinės medžiagos kontrabandą į Lietuvos Respubliką bei iš Lietuvos Respublikos.

Nerijus Tautvydas įtariamas padaręs nusikalstamą veiką, numatytą 249 straipsnio 3 dalyje.

**Veika Nr. 2.**

Nerijus Tautvydas, būdamas vienu iš „Džerkinių" nusikalstamo susivienijimo organizatorių ir dalyvių, veikdamas bendrai su šio susivienijimo vadovu Džeraldu Paulausku bei dalyviais Valdemaru Raudoniu, Ramūnu Lapinsku, Mindaugu Švermicku, Rusijos Federacijos piliečiu Oleg Kravcenko, ginkluotam nusikalstamam susivienijimui nepriklausančiais Vokietijos Federacinės Respublikos piliečiu Riccardo Marian Rotmann, Čekijos Respublikos piliečiu Vilem Kovač, Latvijos Respublikos piliečiu Aleksandrs Zaicevs ir kitais tyrimo nustatinėjamais asmenimis, dėl savanaudiškų paskatų – siekdamas nusikalstamai praturtėti, organizavo neteisėtą disponavimą labai dideliu narkotinės medžiagos kiekiu, šios medžiagos kontrabandą į Lietuvos Respubliką ir iš jos, o būtent:        Nerijus Tautvydas ne vėliau kaip iki 2020 metų rugpjūčio 9 d., veikdamas bendrai su šio NS vadovu Džeraldu Paulausku, dalyviais Valdemaru Raudoniu, Ramūnu Lapinsku, Mindaugu Švermicku, Rusijos Federacijos piliečiu Olegu Kravchenko, ginkluotam nusikalstamam susivienijimui nepriklausančiais Vokietijos Federacinės Respublikos piliečiu Riccardo Marian Rotmann, Čekijos Respublikos piliečiu Vilem Kovač, Latvijos Respublikos piliečiu Aleksandrs Zaicevs bei kitais tyrimo metu nustatinėjamais bendrininkais, pasitelkdamas kitus ginkluotam nusikalstamam susivienijimui nepriklausančius asmenis, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 3 480 kg kanapių dervos (hašišo) įgijimą Libano Respublikoje, neteisėtą šios narkotinės medžiagos laikymą ir gabenimą, taip pat kontrabandą.

Realizuodami nusikalstamos veikos planą, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Mindaugas Švermickas, Ramūnas Lapinskas, GNS nepriklausantis Riccardo Marian Rotmann bei kiti ikiteisminio tyrimo nustatinėjami asmenys, laikotarpiu nuo 2020-08-23 iki 2020-11-22 organizavo labai didelio kiekio narkotinės medžiagos –

5



ne mažiau kaip 3 480 kg kanapių dervos (hašišo) neteisėtą įgijimą ir laikymą Libano Respublikoje ir neteisėtą gabenimą iš Libano Respublikos per Europos valstybes į Čekijos Respubliką.

Bendru Dželaldo Paulausko, Nerijaus Tautvydo, Valdemaro Raudonio, Olego Kravchenko, Ramūno Lapinsko, Riccardo Marian Rottman ir kitų nustatinėjamų bendrininkų susitarimu padalinus ne mažesnį kaip 3 480 kg kanapių dervos krovinį į dvi dalis, viena dalis liko Čekijos Respublikoje, o kita – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), paslėpta marmuro gaminių plokštėse padarytose slėptuvėse, ne vėliau kaip 2020-12-30 Dželaldo Paulausko ir nusikaltimo bendrininkų nurodymu neteisėtai pergabenta kontrabanda į Lietuvos Respubliką. Organizuojant labai didelio narkotinės medžiagos kiekio pergabenimą, Ramūnas Lapinskas ir bendrininkai įtraukė į nusikalstamą veiklą Artūrą Liubauską, kuris ne vėliau kaip iki 2020-12-30 tyrimo nustatinėjamu vilkiku su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, pakrauta ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), paslėptos marmuro gaminių plokštėse padarytose slėptuvėse, neteisėtai gabeno šį labai didelį narkotinės medžiagos kiekį iš Čekijos Respublikos per Europos valstybių teritorijas iki Lenkijos Respublikos - Lietuvos Respublikos valstybių sienos, po ko paminėtą narkotinę medžiagą gabeno per Lenkijos Respublikos – Lietuvos Respublikos valstybės sieną nepateikiant krovinio muitinės kontrolei irjos išvengiant – slepiant marmuro gaminių plokštėse padarytose slėptuvėse, po ko neteisėtai gabeno šį labai didelį kiekį narkotinės medžiagos nuo valstybės sienos per Lietuvos Respublikos teritoriją iki ikiteisminio tyrimo nustatinėjamos vietos Kauno apskrityje, o iš ten Ramūno Lapinsko, Nerijaus Tautvydo ir Mindaugo Švermicko nurodymu minėtas labai didelis kiekis narkotinės medžiagos 2020-12-31 neteisėtai pergabentas per Lietuvos Respublikos teritoriją į ikiteisminio tyrimo nustatinėjamą vietą, NS dalyvių įvardintą sutartiniu pavadinimu „pas Tadą".

Ramūnui Lapinskui, Dželaldui Paulauskui, Nerijui Tautvydui ir Mindaugui Švermickui parūpinus vilkiką „Volvo FM 400 FH 400", valst.Nr. LRO 403, ir prie jo prikabinus puspriekabę „Schmitz S.PR 24-13.62", valst.nr. DP 810, su joje marmuro gaminių plokštėse padarytose slėptuvėse paslėptu labai dideliu kiekiu narkotinės medžiagos – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), organizavus paminėtos narkotinės medžiagos pergabenimą kontrabanda būdu iš Lietuvos Respublikos, vykdydamas bendrininkų nurodymus Artūras Liubauskas laikotarpiu 2021-01-24 – 2021-01-25 neteisėtai gabeno labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 1 480,4 kg kanapių dervos (hašišo) iš tyrimo nustatinėjamos vietos sutartiniu pavadinimu „Pas Tadą" iki Lietuvos Respublikos - Latvijos Respublikos valstybės sienos, neturint leidimo minėtą narkotinę medžiagą gabeno per Lietuvos Respublikos valstybės sieną, nepateikiant krovinio muitinės kontrolei ir jos išvengiant – slepiant marmuro gaminių plokštėse padarytose slėptuvėse, neteisėtai gabeno labai didelį kiekį narkotinės medžiagos nuo valstybės sienos per Latvijos Respublikos teritoriją iki Latvijos Respublikos – Rusijos Federacijos pasienio kontrolės punkto „Terechovo", tačiau pastebėjus kai kurių marmuro gaminių plokščių, kuriose buvo paslėptos narkotinės medžiagos, pažeidimus (skilimus), siekdamas išvengti galimo gabenamų narkotinių medžiagų radimo ir sulaikymo muitinės patikros metu, sustojo minėto pasienio punkto prieigose, kur paliko transporto priemonę su narkotinės medžiagos kroviniu, apie ką informavęs bendrininkus grįžo į Lietuvos Respubliką.

Aptarę susiklosčiusią situaciją, Dželaldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Ramūnas Lapinskas, susitarę su Aleksandrs Zaicevs, nurodė pastarajam surasti patalpas, skirtas vilkiko su puspriekabe laikymui, narkotikų krovinio perkrovimui į kitas slėptuves bei ikiteisminio tyrimo nustatinėjamą vairuotoją, kuris Aleksandrs Zaicevs nurodymu 2021-02-02 vilkiku „Volvo FM 400 FH 400", valst.nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst.nr. DP 810, lydimas A. Zaicevs atsiųstų tyrimo nustatinėjamų asmenų, per Latvijos Respublikos teritoriją nuo pasienio punkto „Terechovo" prieigų iki ikiteisminio tyrimo nustatinėjamų, A. Zaicevs surastų, patalpų neteisėtai gabeno puspriekabėje esančių marmuro

6



plokščių slėptuvėse paslėptą labai didelį kiekį narkotinių medžiagų – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), kur paminėtą labai didelį kiekį narkotinės medžiagos su šio nusikaltimo bendrininkais neteisėtai laikė ne trumpiau kaip iki 2021-03-03.

Tęsdami pasirengimą labai didelio narkotinių medžiagų kiekio gabenimui į Rusijos Federaciją, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Ramūnas Lapinskas, parengė tolimesnių nusikalstamų veiksmų planą, kurį vykdant Nerijaus Tautvydo, Mindaugo Švermicko ir Ramūno Lapinsko surasti ikiteisminio tyrimo metu nustatinėjami asmenys, laikotarpiu nuo 2021-02-06 iki 2021-02-23 UAB „Akmenstata" teritorijoje, esančioje Elektrėnų g. 3B, Pastrėvys, Elektrėnų sav., išpjaudami ertmes marmuro gaminių plokštėse, pagamino jose slėptuves narkotinei medžiagai gabenti. Veikdamas pagal susitarimą, Aleksandrs Zaicevs laikotarpiu nuo 2021-02-02 iki 2021-02-23 bendrai su ikiteisminio tyrimo nustatinėjamais asmenimis išardė pažeistas marmuro gaminių plokštes ir iš jų išėmė ten paslėptą labai didelį narkotinės medžiagos kiekį - ne mažiau kaip 1 480,4 kg kanapių dervos (hašišo). Tuo pat laikotarpiu Ramūno Lapinsko bei Nerijaus Tautvydo nurodymu, tyrimo nustatinėjami asmenys iš UAB „Akmenstata" teritorijos, esančios Elektrėnų g. 3B, Pastrėvys, Elektrėnų sav., į Latvijos Respublikoje esančias A. Zaicevs išnuomotas patalpas, kuriose buvo neteisėtai laikomas labai didelis kiekis narkotinės medžiagos, nugabeno tyrimo nustatinėjamus vilkiką ir puspriekabę,pakrautą marmuro gaminių plokštėmis su slėptuvėmis jose.

Su Džeraldu Paulausku, Valdemaru Raudoniu, Olegu Kravchenko šifruotos komunikacijos platformos „Sky ecc" pagalba bei susitikimų metu suderinę savo veiksmus, laikotarpiu nuo 2021-02-24 iki 2021-03-03 Latvijos Respublikoje, tyrimo nustatinėjamoje vietoje esančiose patalpose, Ramūnas Lapinskas, Nerijus Tautvydas ir Aleksandrs Zaicevs perpakavo labai didelį kiekį narkotinės medžiagos, po ko dalį narkotinės medžiagos – 974 953 g kanapių dervos (hašišo), paslėpė į iš Lietuvos atgabentose marmuro gaminių plokštėse esančias slėptuves bei pakrovė į vilkiką „Volvo FM 400 FH 400", valst. Nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, o į slėptuves netilpusi narkotinės medžiagos dalis – ne mažiau kaip 505 kg kanapių dervos (hašišo), buvo palikta minėtose patalpose. Po to Ramūnas Lapinskas susitarė su vairuotoju Artūru Liubausku dėl narkotinės medžiagos gabenimo už atlygį iš Latvijos Respublikos į Rusijos Federaciją. Laikotarpiu nuo 2021-03-03 iki 2021-03-12 Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst .Nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, neteisėtai gabeno joje esantį labai didelį kiekį narkotinės medžiagos – 974 953 g kanapių dervos (hašišo) per Latvijos Respublikos teritoriją, sustodamas ikiteisminio tyrimo nustatinėjamoje automobilių stovėjimo aikštelėje, bei saugomoje aikštelėje, esančioje prie degalinės „Cirkle K" Salaspilyje, Nometnu iela 1. Po ko, vykdydamas bendrininkų nurodymus, 2021-03-12 Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst. Nr. LRO 403, su puspriekabėje „Schmitz S.PR 24-13.62", valst. Nr. DP 810, marmuro gaminių plokščių slėptuvėse paslėptu labai dideliu narkotinės medžiagos kiekiu, iš saugomos aikštelės, esančios prie minėtos degalinės „Cirkle K", link Latvijos Respublikos – Rusijos Federacijos valstybės sienos per Latvijos Respublikos teritoriją neteisėtai gabeno labai didelį narkotinių medžiagų kiekį - 974 953 g kanapių dervos (hašišo), kol 2021-03-12 5.30 val. Rygos mieste, Uriekstes iela 16, buvo sulaikytas Latvijos policijos pareigūnų.

Nerijus Tautvydas įtariamas padaręs nusikalstamas veikas, numatytas 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje, 199 straipsnio 4 dalyje.

**Veika Nr. 3.**

Taip pat Nerius Tautvydas, būdamas vienu iš „Džerkinių" ginkluoto nusikalstamo susivienijimo organizatorių ir dalyvių, dėl savanaudiškų paskatų – turėdamas tikslą pasipelnyti iš nusikalstamo susivienijimo dalyvių daromų nusikaltimų, skatindamas kitus nusikalstamo susivienijimo dalyvius daryti nusikaltimus ir gaudamas iš jų padarymo nusikalstamą pelną, veikdamas bendrai su šio susivienijimo vadovu Džeraldu Paulausku bei dalyviais Valdemaru



Raudoniu, Jonu Sirvydu ir Liutauru Nemeikšiu, nusikalstamam susivienijimui nepriklausančiais Titu Ramanausku, Dariumi Palinausku, Vaidu Filipavičiumi bei kitais ikiteisminio tyrimo metu nustatinėjamais asmenimis, laikotarpiu nuo 2020-11-24 iki 2021-10-09 organizavo neteisėtą labai didelio kiekio narkotinių medžiagų – kanapių dervos (hašišo) įgijimą Ispanijos Karalystėje, neteisėtą narkotinių medžiagų gabenimą iš Ispanijos Karalystės per Europos Sąjungos valstybių teritoriją į Lenkijos Respubliką, o iš ten į Rusijos Federaciją, slepiant narkotines medžiagas vilkikuose ir kitose transporto priemonėse, neteisėtą labai didelį kiekio narkotinių medžiagų realizavimą Rusijos Federacijoje.

Realizuodami bendrą su Dželaldu Paulausku, Nerijumi Tautvydu ir Valdemaru Raudoniu nusikalstamą sumanymą, Jonas Sirvydas ir Liutauras Nemeikšis sau ir bendrininkams paskyrė užduotis ir vaidmenis: 2020-11-24 – 2021-10-09 laikotarpiu Ispanijos Karalystėje ikiteisminio tyrimo nustatinėjamomis aplinkybėmis, tarpininkaujant ikiteisminio tyrimo nustatinėjamiems bendrininkams, mažiausiai per tris kartus, tikslu realizuoti Rusijos Federacijoje, įgijo labai didelį narkotinių medžiagų kiekį – ne mažiau kaip 479 kg kanapių dervos (hašišo); įtraukė į nusikalstamą veiklą nusikalstamam susivienijimui nepriklausančius Vaidą Filipavičių, Darių Palinauską, Titą Ramanauską bei organizavo su bendrininkais paminėtos narkotinės medžiagos neteisėtą gabenimą į Lenkijos Respubliką ir ten šio labai didelio narkotinės medžiagos kiekio gabenimą į Rusijos Federaciją ir neteisėtą realizavimą ten, iš ko 244 kg kanapių dervos (hašišo) buvo sulaikyti Lenkijos Respublikoje pareigūnų.

Veikdami pagal susitarimą su Dželaldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, laikotarpiu nuo 2020-11-24 iki 2020-12-11 Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami tarpusavyje ir su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. Ikiteisminio tyrimo metu nustatinėjami bendrininkai, 2020-12-11 vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo). Laikotarpiu nuo 2020-12-13 iki 2020-12-17 Jonas Sirvydas ir Liutauras Nemeikšis organizavo ne mažiau kaip 110 kg kanapių dervos (hašišo) gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimo eigą per Europos valstybių teritorijas. Vykdydamas Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Vaidas Filipavičius 2020-12-17 ikiteisminio tyrimo nustatinėjamoje vietoje neteisėtai įgijo iš tyrimo metu nenustatyto asmens labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo), kurią neteisėtai gabeno per Lenkijos Respublikos teritoriją iki tyrimo metu nustatinėjamos vietos, kur iki 2021-02-24 minėtos narkotinės medžiagos buvo neteisėtai laikomos. Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus 2021-02-24 laikotarpiu nuo 1.53 val. iki 2.11 val. susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko vairuojamą ikiteisminio tyrimo nustatinėjamą transporto priemonę. Tuomet ne vėliau kaip 2021-02-26 Darius Palinauskas ir Titas Ramanauskas labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo), neteisėtai gabeno iš Lenkijos Respublikos per Baltarusijos Respubliką į Rusijos Federacijos Smolensko sritį, kur neteisėtai realizavo, perduodami ikiteisminio tyrimo nenustatytiems asmenims.

Veikdami pagal susitarimą su Dželaldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu irrealizuodami nusikalstamą sumanymą, tęsdami suplanuotą nusikaltimą, ne vėliau kaip 2021-03-02 Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą

8



labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. 2021-03-02 ikiteisminio tyrimo metu nustatinėjami bendrininkai, vykdami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo). Ne vėliau kaip 2021-03-03, Jonas Sirvydas ir Liutauras Nemeikšis organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo) neteisėtą gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimą per Europos valstybių teritorijas. Vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas 2021-03-09 susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį narkotinės medžiagos – kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko ikiteisminio tyrimo nustatinėjamą transporto priemonę, po ko Darius Palinauskas ir Titas Ramanauskas labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo), neteisėtai gabeno per Lenkijos Respublikos, Baltarusijos Respublikos ir Rusijos Federacijos teritorijas į Smolensko sritį, kur neteisėtai realizavo, perduodami ikiteisminio tyrimo nenustatytiems asmenims.

Veikdami pagal susitarimą su Džeraldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, tęsdami suplanuotą nusikaltimą, ne vėliau kaip 2021-10-09 Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. Ne vėliau kaip 2021-10-09 ikiteisminio tyrimo nustatinėjami bendrininkai, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 244 kg kanapių dervos (hašišo).

Tęsdami nusikalstamą veiką, nevėliau kaip 2021-10-09 tiksliai nenustatytomis aplinkybėmis, Jonas Sirvydas ir Liutauras Nemeikšis organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 244 kg kanapių dervos (hašišo) neteisėtą gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimo eigą per Europos valstybių teritorijas. Vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus dėl narkotinės medžiagos gabenimo iš Lenkijos Respublikos per Baltarusijos Respubliką į Rusijos Federaciją, Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, 2021-10-09 susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį narkotinės medžiagos – kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko vairuojamą transporto priemonę - vilkiką "DAF XF480FT", valst. Nr. KHJ 035, su puspriekabe "Pezzaioli SBA 3", valst. Nr. MP 643, nuosavybės teise priklausančias UAB „Transfriga", po ko D. Palinauskas ir T. Ramanauskas labai didelį kiekį narkotinės medžiagos – 244 kg kanapių dervos (hašišo) paminėta transporto priemone neteisėtai gabeno per Lenkijos Respublikos teritoriją į Rusijos Federaciją, tačiau 2021-10-09 buvo sulaikyti Lenkijos Respublikos policijos pareigūnų. Nerijus Tautvydas įtariamas padaręs nusikalstamas veikas, numatytas BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje.

**Duomenys, pagrindžiantys įtarimus.**

9



Baudžiamojoje byloje yra pakankamai duomenų, patvirtinančių, kad Nerijus Tautvydas pagrįstai įtariamas padaręs nurodytas nusikalstamas veikas, kurie bus detaliai aprašyti **Priede Nr. 3**, pridedamame prie šio prašymo:

Dėl veikos, numatytos BK 249 straipsnio 3 dalyje (Veika Nr. 1):

- Europos tyrimo orderių ir teisinės pagalbos prašymų vykdymo metu gauti duomenys (Latvijos Respublikoje atliekamo ikiteisminio tyrimo Nr. 1181500122 medžiaga, Lenkijoje atliekamų (atliktų) ikiteisminių tyrimų Nr. RP II Ds 8.2021 ir RP II 1Ds duomenys; asmenų vykdytas sekimas, jų telefoninių pokalbių, kitos elektroninėmis ryšio priemonėmis perduodamos informacijos turinio kontrolės duomenys; fiksuoti asmenų pokalbiai įvairiuose patalpose, transporto priemonėse; patalpų, teritorijų, transporto priemonių apžiūra;

- „Sky Ecc" sistema siųsti/gauti duomenys, kurie šioje baudžiamojoje byloje aprašyti 2021-11-18 SKY Ecc duomenų apžiūros protokole;

- 2022-11-22 Lietuvos įvairiuose miestuose atliktos kratos (gauti duomenys apie „Sky Ecc" sistemą naudojusius šio GNS asmenis);

- Kriminalinės žvalgybos tyrimo metu gauti duomenys apie GNS sukūrimą (policijos pareigūno išsami ataskaita 2022-10-24 tarnybiniame pranešime Nr.38-2(DS)-5246_RN);

- Kriminalinės policijos pareigūnų nuo 2014 m. rinkta ir kaupta informacija apie šio GNS veiklą (ataskaitos tarnybiniuose pranešimuose);

- liudytojo Przemyslaw Jaskowski išsamūs paaiškinimai apie „Džerkinių" GNS veiklą;

- kratos, atliktos 2022-11-22 vieno iš GNS narių įtariamojo Ramūno Lapisko garaže, esančiame Dembavoje, Panevėžio rajone, Lietuvoje, aptikti du pistoletai ir 86 9 mm kalibro Luger tipo šaudmenys.

Dėl veikų, numatytų BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje, 199 straipsnio 4 dalyje (Veika Nr. 2):

- kriminalinės žvalgybos pareigūno tarnybinis pranešimas (Lietuvoje vykdytos kriminalinės žvalgybos metu gauta informacija pasitvirtino - 2021-03-12 bendradarbiaujant su Latvijos Respublikos centrine kriminaline policija ir atliekant bendrus tyrimo veiksmus, Latvijos Respublikoje sulaikytas asmuo, automobiliu neteisėtai gabenęs 974 953 g kanapių dervos (hašišo));

- „Sky Ecc" sistema siųsti/gauti duomenys, kurie šioje baudžiamojoje byloje išdėstyti 2021-11-18 SKY Ecc duomenų apžiūros protokole;

- 2022-11-22 Lietuvos Respublikos įvairiuose mestuose atliktos kratos (gauti duomenys apie „Sky Ecc" sistemą šiai nusikalstamai veikai naudojusius asmenis);

10



- pagal Lietuvos Respublikos teisėsaugos institucijų Europos tyrimo orderį gauta Latvijos Respublikoje atliekamo ikiteisminio tyrimo Nr. 1181500122 medžiaga;

- liudytojų parodymai (apie marmuro plokščių gamybą, vilkikų ir priekabų nuomą, sugedusio vilkiko remontą).

Dėl veikos, numatytos BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje (Veika Nr. 3):

- pagal Europos tyrimo orderį gauti koduota elektroninių ryšių perdavimo sistema „Sky Ecc" perduoti ir gauti asmenų bendravimo duomenys (išdėstyti 2022-10-11 SKY Ecc duomenų apžiūros protokole);

- pagal Lietuvos Respublikos teisėsaugos institucijų Europos tyrimo orderius gauti duomenys (Lenkijoje atliekamų (atliktų) ikiteisminių tyrimų Nr. RP II Ds 8.2021 ir RP II 1Ds duomenys);

- liudytojo Przemyslaw Jaskowski išsamūs paaiškinimai apie „Džerkinių" GNS veiklą.

Nerijus Tautvydas įtariamas padaręs sunkią ir labai sunkias nusikalstamas veikas, kurių sankcijose numatyta griežčiausia laisvės atėmimo bausmė didesnė negu vieneri metai ir šioms veikoms taikomos Priedo prie Protokolo 2 straipsnio nuostatos.

Veikos Nr. 1 (BK 249 straipsnio 3 dalis) sankcijoje numatyta laisvės atėmimo bausmė iki gyvos galvos. Paaiškintina, kad BK 51 straipsniu (Laisvės atėmimas iki gyvos galvos) nustatyta, kad nuteistajam atlikus 20 (dvidešimt) metų laisvės atėmimo iki gyvos galvos bausmės, klausimą dėl jam paskirtos laisvės atėmimo iki gyvos galvos bausmės pakeitimo terminuoto laisvės atėmimo bausme nagrinėja ir išsprendžia teismas pagal bausmę vykdančios institucijos teikimą. Pagal Malonės prašymų nagrinėjimo nuostatus, patvirtintus Lietuvos Respublikos Prezidento dekretu, asmenų, nuteistų laisvės atėmimu iki gyvos galvos, malonės prašymai gali būti svarstomi ne anksčiau, kaip atlikus 10 (dešimt) metų laisvės atėmimo bausmės.

Ikiteisminio tyrimo metu nustatyta, jog įtariamojo Nerijaus Tautvydo ryšiai su Lietuvos Respublika yra silpni, nuolatinės gyvenamosios vietos ir legalaus pragyvenimo šaltinio Lietuvoje jis neturi. Narkotinių medžiagų sulaikymo 2021-03-12 d. Latvijos Respublikoje metu Nerijus Tautvydas buvo išvykęs į užsienį ir į Lietuvos Respubliką nebegrįžo. Jis kartu su sugyventine ir bendrų vaikų motina bei mažamečiais vaikais išvyko į Jungtines Amerikos Valstijas. Atsižvelgiant į tai, kad įtariamasis Nerijus Tautvydas pasislėpė nuo ikiteisminio tyrimo, 2022 m. lapkričio 4 d. prokuroro nutarimu buvo paskelbta jo paieška. Vilniaus miesto apylinkės teismo ikiteisminio tyrimo teisėjos 2022-11-07 nutartimi Nerijui Tautvydui yra skirta kardomoji priemonė - suėmimas **(Priedas Nr. 4).**

2022-10-17 d. iš JAV ambasados Varšuvoje buvo gautas raštas, kuriuo informuojama, kad su Nerijaus Tautvydo ir jo šeimos narių gyvenamąja vieta JAV yra siejamas namas, adresu 6827 Dove Avenue, Woodrigde, Illinois valstijoje, nuosavybės teise priklausantis Nerijui Žitkevičiui ir namas, adresu 727 S County Line Road, Hinsdale, Illinois valstijoje, nuosavybės teise priklausantis Aistei Ežerskei, todėl 2022-11-09 d. raštu Nr. TP-05-00009-22 buvo kreiptasi į kompetentingas JAV institucijas prašant laikinai suimti Lietuvos Respublikos pilietį Nerijų Tautvydą siekinat jo ekstradicijos iš Jungtinių Amerikos Valstijų. 2022-11-22 d. JAV kompetentingos institucijos informavo, kad Nerijus Tautvydas buvo suimtas JAV pagal aukščiau nurodytą prašymą.

11



Atsižvelgiant į tai, kad Lietuvos Respublikos pilietis Nerijus Tautvydas, a. k. 38406060244, paskutinę gyvenamąją vietą deklaravęs adresu Saulės g. 10-21, Elektrėnai, Elektrėnų sav., įtariamas padaręs nusikalstamas veikas laikotarpiu nuo 2014 metų iki 2022 metų pabaigos ne tik Lietuvos Respublikos teritorijoje, bet ir kitų šalių (Latvijos Respublikos, Čekijos Respublikos, Lenkijos Respublikos, Ispanijos Karalystės ir kt.) teritorijose, vadovaudamiesi Lietuvos Respublikos Vyriausybės ir Jungtinių Amerikos Valstijų Vyriausybės ekstradicijos sutartimi, patvirtinta Protokolu dėl Europos Sąjungos ir Jungtinių Amerikos Valstijų susitarimo dėl ekstradicijos taikymo Lietuvos Respublikos Vyriausybės ir Jungtinių Amerikos Valstijų Valstybės ekstradicijos sutarčiai, prašome išduoti Nerijų Tautvydą Lietuvos Respublikos teisėsaugos institucijoms baudžiamajam persekiojimui už tris nusikalstamas veikas, numatytas Lietuvos Respublikos baudžiamojo kodekso 249 straipsnio 3 dalyje (Veika Nr. 1), BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje, 199 straipsnio 4 dalyje (Veika Nr. 2) ir BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje (Veika Nr. 3).

Apkaltinamojo nuosprendžio priėmimo senaties terminai šiam asmeniui nepasibaigę (susiję Baudžiamojo kodekso išrašai pateikiami **Priede Nr. 5**).

Lietuvos Respublikos generalinė prokuratūra garantuoja, kad be Jūsų sutikimo Nerijus Tautvydas nebus traukiamas baudžiamojon atsakomybėn ar baudžiamas už kitas nei prašoma išduoti nusikalstamas veikas, taip pat nebus išduotas trečiajai valstybei.

**Turto perdavimas.**

Pagal Ekstradicijos sutarties 15 straipsnį, prašome areštuoti ir perduoti visus daiktus, priemones, vertingus objektus, dokumentus ir kitus įkalčius, susijusius su nusikaltimais, dėl kurių pateikti įtarimai Nerijui Tautvydui, įskaitant kompiuterius ir kitas elektronines duomenų saugojimo priemones.

Iškilus bet kokiems papildomiems su šiuo prašymu susijusiems klausimams, prašome susisiekti su už šio prašymo parengimą atsakinga Lietuvos Respublikos generalinės prokuratūros Baudžiamojo persekiojimo departamento prokurore Jurga Zieniūte (tel.: +370 5 266 2448 el. p.: jurga.zieniute@prokuraturos.lt ir ruta.kavaliauskiene@prokuraturos.lt).

Tikimės, kad šis mūsų prašymas bus patenkintas. Iš anksto nuoširdžiai dėkojame už bendradarbiavimą. Suteiksime Jums analogišką ar kitokią teisinę pagalbą.

PRIDEDAMA:
Priedas Nr. 1 – asmens fotografija ir pirštų atspaudai, 3 psl.
Priedas Nr. 2 - 2022-11-04 d. nutarimas pripažinti įtariamuoju, 17 psl.
Priedas Nr. 3 - Duomenų, kuriais grindžiami įtarimai N. Tautvydui santrauka, 55 psl.
Priedas Nr. 4 – Vilniaus miesto apylinkės teismo ikiteisminio tyrimo teisėjos 2022-11-07 d. nutartis skirti Nerijui Tautvydui kardomąją priemonę - suėmimą, 20 psl.
Priedas Nr. 5 - Baudžiamojo kodekso dėl senaties išrašai, 3 psl.

Generalinės prokurorės pavaduotojas                     Saulius Verseckas

12



Jurga Zieniūtė, tel. 852662448, el. p. jurga.zieniute@prokuraturos.lt

**PRIEDAS NR.** 1

Dokumento skaitmeninė kopija



# DAKTILOSKOPINĖ KORTELĖ

Saug. vieta PV1807



| | | | |
|---|---|---|---|
| 1. | VARDAS | NERIJUS | |
| 2. | PAVARDĖ | TAUTVYDAS | 9. |
| 3.* | TĖVO VARDAS | 38406060244 | |
| 4 | Asmens kodas | | |
| 5. | Dokumento, pagal kurį nustatyta asmens tapatybė, pavadinimas ir numeris/ kitos priemonės | | 10. |
| 6.* | Gimimo vieta V | 1984.06.06 | 11. |
| 7.* | Lytis | 8.* Gimimo data | |

\* Pildoma, tik jeigu nežinomas asmens kodas

---

## ATSPAUDAI

| 1. D. nykštys | 2. D. smilius | 3. D. didysis | 4. D. bevardis | 5. D. mažylis |
|---|---|---|---|---|

| 6. K. nykštys | 7. K. smilius | 8. K. didysis | 9. K. bevardis | 10. K. mažylis |
|---|---|---|---|---|

---

## KONTROLINIAI ATSPAUDAI

| Kairės rankos keturi pirštai | NYKŠČIAI | | Dešinės rankos keturi pirštai |
|---|---|---|---|
| | kairysis | dešinysis | |

**Translation from the Lithuanian language**

LT900T0000035318
Main No. LTT00091409

| | | | | |
|---|---|---|---|---|
| **DACTYLOSCOPIC CARD** | | | Storage Place 14/1807 | |
| 1. | Name | NERIJUS | 9. | |
| 2. | Surname | TAUTVYDAS | | |
| 3* | Patronymic | | | |
| 4. | Personal ID number | 38406060244 | 10 | |
| 5. | Name and number of document on the basis of which identity was established / other means | | | |
| 6* | Place of birth | | | |
| 7* | Sex  M | 8.* Date of birth | 06/06/1984 | 11 |
| * To be filled in only when personal ID number is not known | | | | |

### FINGERPRINTS

| 1. R. Thumb | 2. R. Forefinger | 3. R. Middle finger | 4. R. Ring finger | 5. R. Little finger |
|---|---|---|---|---|
| [fingerprint] | [fingerprint] | [fingerprint] | [fingerprint] | [fingerprint] |
| 6. L. Thumb | 7. L. Forefinger | 8. L. Middle finger | 9. L. Ring finger | 10. L. Little finger |
| [fingerprint] | [fingerprint] | [fingerprint] | [fingerprint] | [fingerprint] |

### CONTROL FINGERPRINTS

| Four fingers of the left hand | BOTH THUMBS | | Four fingers of the right hand |
|---|---|---|---|
| | Left | Right | |
| [fingerprints] | [fingerprints] | [fingerprints] | [fingerprints] |

Translated from the Lithuanian language by Viktorija Valantavičiūtė, a translator of the Prosecutor General's Office of the Republic of Lithuania, who has been warned about criminal liability for making a false translation or a translation known to be incorrect as provided for in Article 235 of the Criminal Code of the Republic of Lithuania.

**PRIEDAS NR. 2**

Elektroninio dokumento nuorašas





## GENERALINĖS PROKURATŪROS
## ORGANIZUOTŲ NUSIKALTIMŲ IR KORUPCIJOS TYRIMO
## DEPARTAMENTAS

### NUTARIMAS
### PRIPAŽINTI ĮTARIAMUOJU

| Data | 2022-11-04 |
| --- | --- |
| Surašymo vieta | Vilnius |
| Ikiteisminio tyrimo Nr. | 01-1-09596-21 |

| Nutarimą priėmė | Prokurorė Aida Japertienė |
| --- | --- |
| n u s t a t ė: | |
| Tiriama nusikalstama veika, jos kvalifikavimas | Lietuvos kriminalinės policijos biuro Sunkaus ir organizuoto nusikalstamumo tyrimo 3-joje valdyboje atliekamas ikiteisminis tyrimas Nr. 01-1-09596-21 pagal Lietuvos Respublikos baudžiamojo kodekso (toliau - BK) 249 str. 2, 3 d., 7 str. 12 p., 25 str. 4 d., 199 str. 4 d., 260 str. 3 d., 189(1) str., dėl neteisėto disponavimo labai dideliu narkotinių ar psichotropinių medžiagų kiekiu ir šių medžiagų kontrabandos, dalyvavimo nusikalstamo susivienijimo veikloje, neteisėto praturtėjimo. |
| Įtariamuoju pripažintas asmuo | Nerijus Tautvydas, gimęs 1984-06-06, asmens kodas 38406060244, deklaruota gyvenamoji vieta adresu Saulės g. 10-21, Elektrėnai, Elektrėnų sav. |

Ikiteisminio tyrimo metu surinkta pakankamai faktinių duomenų, leidžiančių pagrįsti įtarti, kad

Nerijus Tautvydas organizavo „Džerkinių" ginkluotą nusikalstamą susivienijimą ir dalyvavo jo veikloje, neteisėtai disponavo labai dideliu narkotinių medžiagų kiekiu, organizavo narkotinės medžiagos kontrabandą, o būtent:

Nerijus Tautvydas ne vėliau kaip 2014 metais dėl savanaudiškų paskatų, siekdamas nusikalstamai praturtėti ir įgyti didelę įtaką Lietuvos ir užsienio valstybių nusikalstamo pasaulio atstovų tarpe, iš anksto susitaręs su Džeraldu Paulausku ir Valdemaru Raudoniu daryti labai sunkius, sunkius ir apysunkius nusikaltimus - neteisėtai disponuoti labai dideliais narkotinių medžiagų kiekiais, užsiimti jų kontrabanda, organizavo (įkūrė) „Džerkinių" ginkluotą nusikalstamą susivienijimą (toliau - „Džerkinių" GNS), kuriam nuo 2014 m. iki 2022 metų pabaigos vadovavo Džeraldas Paulauskas, įtraukė į šio nusikalstamo susivienijimo veiklą Joną Sirvydą, Liutaurą Nemeikšį, Mindaugą Švermicką, Rusijos Federacijos pilietį Oleg Kravchenko, Ramūną Lapinską ir kitus nustatinėjamus asmenis, pasitelkė bendrai nusikalstamai veikai – atskiriems nusikaltimams daryti ginkluotam nusikalstamam susivienijimui nepriklausančius Vaidą Filipavičių, Artūrą Liubauską, Titą Ramanauską, Darių Palinauską, Vokietijos Federacinės Respublikos pilietį Riccardo Marian Rotmann, Čekijos Respublikos pilietį Vilem Kovač, Latvijos Respublikos pilietį Aleksandrs Zaicevs, kitus ikiteisminio tyrimo nustatinėjamus asmenis, iki 2022 metų pabaigos kartu su kitais bendrininkais dalyvavo šio ginkluoto nusikalstamo susivienijimo veikloje.

2015 metų - 2022 metų laikotarpiu, kol egzistavo „Džerkinių" GNS, Nerijus Tautvydas kartu su GNS vadovu ir kitais dalyviais turėjo bendrą kasą, skirtą GNS veiklai finansuoti, neturėdamas leidimo įgijo, gabeno ir laikė didelį kiekį šaunamųjų ginklų, šaudmenų, kuriuos planavo panaudoti nusikalstamo susivienijimo daromuose nusikaltimuose.

Nerijus Tautvydas kartu su „Džerkinių" GNS vadovu Džeraldu Paulausku ir kitais dalyviais,

2



tiek Lietuvos Respublikoje, tiek ir už jos ribų, taip pat naudojantis šifruoto ryšio priemonėmis, periodiškai rengė pasitarimus, kurių metu buvo aptarinėjami ginkluoto nusikalstamo susivienijimo planai ir konkretūs nusikaltimai bei kiti klausimai, susiję su GNS veikla.

Nerijus Tautvydas, būdamas vienu iš GNS organizatorių ir dalyvių, veikdamas savo ir ginkluoto nusikalstamo susivienijimo dalyvių naudai, siekdamas nusikalstamai praturtėti iš nusikalstamos veiklos, padarė nusikaltimus, numatytus BK: 260 str. 3 d., t. y. organizavo neteisėtą disponavimą labai dideliu narkotinės medžiagos kiekiu; 199 str. 4 d., t. y. organizavo narkotinės medžiagos kontrabandą į Lietuvos Respubliką bei iš Lietuvos Respublikos.

Nerijus Tautvydas įtariamas padaręs nusikalstamą veiką, numatytą BK 249 str. 3 d.

Taip pat Nerijus Tautvydas, būdamas vienu iš „Džerkinių" nusikalstamo susivienijimo organizatorių ir dalyvių, veikdamas bendrai su šio susivienijimo vadovu Džeraldu Paulausku bei dalyviais Valdemaru Raudoniu, Ramūnu Lapinsku, Mindaugu Švermicku, Rusijos Federacijos piliečiu Oleg Kravcenko, ginkluotam nusikalstamam susivienijimui nepriklausančiais Vokietijos Federacinės Respublikos piliečiu Riccardo Marian Rotmann, Čekijos Respublikos piliečiu Vilem Kovač, Latvijos Respublikos piliečiu Aleksandrs Zaicevs ir kitais tyrimo nustatinėjamais asmenimis, dėl savanaudiškų paskatų – siekdamas nusikalstamai praturtėti, organizavo neteisėtą disponavimą labai dideliu narkotinės medžiagos kiekiu, šios medžiagos kontrabandą į Lietuvos Respubliką ir iš jos, o būtent:

Nerijus Tautvydas ne vėliau kaip iki 2020 metų rugpjūčio 9 d., veikdamas bendrai su šio NS vadovu Džeraldu Paulausku, dalyviais Valdemaru Raudoniu, Ramūnu Lapinsku, Mindaugu Švermicku, Rusijos Federacijos piliečiu Olegu Kravchenko, ginkluotam nusikalstamam susivienijimui nepriklausančiais Vokietijos Federacinės Respublikos piliečiu Riccardo Marian Rotmann, Čekijos Respublikos piliečiu Vilem Kovač, Latvijos Respublikos piliečiu Aleksandrs Zaicevs bei kitais tyrimo metu nustatinėjamais bendrininkais, pasitelkdamas kitus ginkluotam nusikalstamam susivienijimui nepriklausančius asmenis, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 3 480 kg kanapių dervos (hašišo) įgijimą Libano Respublikoje, neteisėtą šios narkotinės medžiagos laikymą ir gabenimą, taip pat kontrabandą.

Realizuodami nusikalstamos veikos planą, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Mindaugas Švermickas, Ramūnas Lapinskas, GNS nepriklausantis Riccardo Marian Rotmann bei kiti ikiteisminio tyrimo nustatinėjami asmenys, laikotarpiu nuo 2020-08-23 iki 2020-11-22 organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 3 480 kg kanapių dervos (hašišo) neteisėtą įgijimą ir laikymą Libano Respublikoje ir neteisėtą gabenimą iš Libano Respublikos per Europos valstybes į Čekijos Respubliką.

Bendru Džeraldo Paulausko, Nerijaus Tautvydo, Valdemaro Raudonio, Olego Kravchenko, Ramūno Lapinsko, Riccardo Marian Rottman ir kitų nustatinėjamų bendrininkų susitarimu padalinus ne mažesnį kaip 3 480 kg kanapių dervos krovinį į dvi dalis, viena dalis iki Čekijos Respublikoje, o kita – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), paslėpta marmuro gaminių plokštėse padarytose slėptuvėse, ne vėliau kaip 2020-12-30 Džeraldo Paulausko ir nusikaltimo bendrininkų nurodymu neteisėtai pergabenta kontrabanda į Lietuvos Respubliką. Organizuojant labai didelio narkotinės medžiagos kiekio pergabenimą, Ramūnas Lapinskas ir bendrininkai įtraukė į nusikalstamą veiklą Artūrą Liubauską, kuris ne vėliau kaip iki 2020-12-30 tyrimo nustatinėjamu vilkiku su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, pakrauta ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), paslėptos marmuro gaminių plokštėse padarytose slėptuvėse, neteisėtai gabeno šį labai didelį narkotinės medžiagos kiekį iš Čekijos Respublikos per Europos valstybių teritorijas iki Lenkijos Respublikos - Lietuvos Respublikos valstybės sienos, po ko paminėtą narkotinę medžiagą gabeno per Lenkijos Respublikos – Lietuvos Respublikos valstybės sieną nepateikiant krovinio muitinės kontrolei ir



jos išvengiant – slepiant marmuro gaminių plokštėse padarytose slėptuvėse, po ko neteisėtai gabeno šį labai didelį kiekį narkotinės medžiagos nuo valstybės sienos per Lietuvos Respublikos teritoriją iki ikiteisminio tyrimo nustatinėjamos vietos Kauno apskrityje, o iš ten Ramūno Lapinsko, Nerijaus Tautvydo ir Mindaugo Švermicko nurodymu minėtas labai didelis kiekis narkotinės medžiagos 2020-12-31 neteisėtai pergabentas per Lietuvos Respublikos teritoriją į ikiteisminio tyrimo nustatinėjamą vietą, NS dalyvių įvardintą sutartiniu pavadinimu „pas Tadą".

Ramūnui Lapinskui, Džeraldui Paulauskui, Valdemarui Raudoniui, Nerijui Tautvydui ir Mindaugui Švermickui parūpinus vilkiką „Volvo FM 400 FH 400", valst.Nr. LRO 403, ir prie jo prikabinus puspriekabę „Schmitz S.PR 24-13.62", valst.nr. DP 810, su joje marmuro gaminių plokštėse padarytose slėptuvėse paslėptu labai dideliu kiekiu narkotinės medžiagos – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), organizavus paminėtos narkotinės medžiagos pergabenimą kontrabanda būdu iš Lietuvos Respublikos, vykdydamas bendrininkų nurodymus Artūras Liubauskas laikotarpiu 2021-01-24 – 2021-01-25 neteisėtai gabeno labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 1 480,4 kg kanapių dervos (hašišo) iš tyrimo nustatinėjamos vietos sutartiniu pavadinimu „Pas Tadą" iki Lietuvos Respublikos - Latvijos Respublikos valstybės sienos, neturint leidimo minėtą narkotinę medžiagą gabeno per Lietuvos Respublikos valstybės sieną, nepateikiant krovinio muitinės kontrolei ir jos išvengiant – slepiant marmuro gaminių plokštėse padarytose slėptuvėse, neteisėtai gabeno labai didelį kiekį narkotinės medžiagos nuo valstybės sienos per Latvijos Respublikos teritoriją iki Latvijos Respublikos – Rusijos Federacijos pasienio kontrolės punkto „Terechovo", tačiau pastebėjus kai kurių marmuro gaminių plokščių, kuriose buvo paslėptos narkotinės medžiagos, pažeidimus (skilimus), siekdamas išvengti galimo gabenamų narkotinių medžiagų radimo ir sulaikymo muitinės patikros metu, sustojo minėto pasienio punkto prieigose, kur paliko transporto priemonę su narkotinės medžiagos kroviniu, apie ką informavęs bendrininkus grįžo į Lietuvos Respubliką.

Aptarę susiklosčiusią situaciją, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Ramūnas Lapinskas, susitarę su Aleksandrs Zaicevs, nurodė pastarajam surasti patalpas, skirtas vilkiko su puspriekabe laikymui, narkotikų krovinio perkrovimui į kitas slėptuves bei ikiteisminio tyrimo nustatinėjamą vairuotoją, kuris Aleksandrs Zaicevs nurodymu 2021-02-02 vilkiku „Volvo FM 400 FH 400", valst.nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst.nr. DP 810, lydimas A. Zaicevs atsiųstų tyrimo nustatinėjamų asmenų, per Latvijos Respublikos teritoriją nuo pasienio punkto „Terechovo" prieigų iki ikiteisminio tyrimo nustatinėjamų, A. Zaicevs surastų, patalpų neteisėtai gabeno puspriekabėje esančių marmuro plokščių slėptuvėse paslėptą labai didelį kiekį narkotinių medžiagų – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), kur paminėtą labai didelį kiekį narkotinės medžiagos su šio nusikaltimo bendrininkais neteisėtai laikė ne trumpiau kaip iki 2021-03-03.

Tęsdami pasirengimą labai didelio narkotinių medžiagų kiekio gabenimui į Rusijos Federaciją, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Ramūnas Lapinskas, parengė tolimesnių nusikalstamų veiksmų planą, kurį vykdant Nerijaus Tautvydo, Mindaugo Švermicko ir Ramūno Lapinsko surasti ikiteisminio tyrimo metu nustatinėjami asmenys, laikotarpiu nuo 2021-02-06 iki 2021-02-23 UAB „Akmenstata" teritorijoje, esančioje Elektrėnų g. 3B, Pastrėvys, Elektrėnų sav., išpjaudami ertmes marmuro gaminių plokštėse, pagamino jose slėptuves narkotinei medžiagai gabenti. Veikdamas pagal susitarimą, Aleksandrs Zaicevs laikotarpiu nuo 2021-02-02 iki 2021-02-23 bendrai su ikiteisminio tyrimo nustatinėjamais asmenimis išardė pažeistas marmuro gaminių plokštes ir iš jų išėmė ten paslėptą labai didelį narkotinės medžiagos kiekį - ne mažiau kaip 1 480,4 kg kanapių dervos (hašišo). Tuo pat laikotarpiu Ramūno Lapinsko bei Nerijaus Tautvydo nurodymu, tyrimo nustatinėjami asmenys iš UAB „Akmenstata" teritorijos, esančios Elektrėnų g. 3B, Pastrėvys, Elektrėnų sav., į Latvijos Respublikoje esančias A. Zaicevs išnuomotas patalpas, kuriose buvo neteisėtai laikomas labai didelis kiekis narkotinės medžiagos, nugabeno tyrimo nustatinėjamus vilkiką ir puspriekabę,

4



pakrautą marmuro gaminių plokštėmis su slėptuvėmis jose.

Su Džeraldu Paulausku, Valdemaru Raudoniu, Olegu Kravchenko šifruotos komunikacijos platformos „Sky ecc" pagalba bei susitikimų metu suderinę savo veiksmus, laikotarpiu nuo 2021-02-24 iki 2021-03-03 Latvijos Respublikoje, tyrimo nustatinėjamoje vietoje esančiuose patalpose, Ramūnas Lapinskas, Nerijus Tautvydas ir Aleksandrs Zaicevs perpakavo labai didelį kiekį narkotinės medžiagos, po ko dalį narkotinės medžiagos – 974 953 g kanapių dervos (hašišo), paslėpė į iš Lietuvos atgabentose marmuro gaminių plokštėse esančias slėptuves bei pakrovė į vilkiką „Volvo FM 400 FH 400", valst. Nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, o į slėptuves netilpusi narkotinės medžiagos dalis – ne mažiau kaip 505 kg kanapių dervos (hašišo), buvo palikta minėtose patalpose. Po to Ramūnas Lapinskas susitarė su vairuotoju Artūru Liubausku dėl narkotinės medžiagos gabenimo už atlygį iš Latvijos Respublikos į Rusijos Federaciją. Laikotarpiu nuo 2021-03-03 iki 2021-03-12 Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst .Nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, neteisėtai gabeno joje esantį labai didelį kiekį narkotinės medžiagos – 974 953 g kanapių dervos (hašišo) per Latvijos Respublikos teritoriją, sustodamas ikiteisminio tyrimo nustatinėjamoje automobilių stovėjimo aikštelėje, bei saugomoje aikštelėje, esančioje prie degalinės „Cirkle K" Salaspilyje, Nomietnu iela 1. Po ko, vykdydamas bendrininkų nurodymus, 2021-03-12 Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst. Nr. LRO 403, su puspriekabėje „Schmitz S.PR 24-13.62", valst. Nr. DP 810, marmuro gaminių plokščių slėptuvėse paslėptu labai dideliu narkotinės medžiagos kiekiu, iš saugomos aikštelės, esančios prie minėtos degalinės „Cirkle K", link Latvijos Respublikos – Rusijos Federacijos valstybės sienos per Latvijos Respublikos teritoriją neteisėtai gabeno labai didelį narkotinių medžiagų kiekį - 974 953 g kanapių dervos (hašišo), kol 2021-03-12 5.30 val. Rygos mieste, Uriekstes iela 16, buvo sulaikytas Latvijos policijos pareigūnų.

Nerijus Tautvydas įtariamas padaręs nusikalstamas veikas, numatytas BK 25 str. 4 d., 7 str. 12 p., 260 str. 3 d., 199 str. 4 d.

Taip pat Nerius Tautvydas, būdamas vienu iš „Džerkinių" ginkluoto nusikalstamo susivienijimo organizatorių ir dalyvių, dėl savanaudiškų paskatų – turėdamas tikslą pasipelnyti iš nusikalstamo susivienijimo dalyvių daromų nusikaltimų, skatindamas kitus nusikalstamo susivienijimo dalyvius daryti nusikaltimus ir gaudamas iš jų padarymo nusikalstamą pelną, veikdamas bendrai su šio susivienijimo vadovu Džeraldu Paulausku bei dalyviais Valdemaru Raudoniu, Jonu Sirvydu ir Liutauru Nemeikšiu, nusikalstamam susivienijimui nepriklausančiais Titu Ramanausku, Dariumi Palinausku, Vaidu Filipavičiumi bei kitais ikiteisminio tyrimo metu nustatinėjamais asmenimis, laikotarpiu nuo 2020-11-24 iki 2021-10-09 organizavo neteisėtą labai didelio kiekio narkotinių medžiagų – kanapių dervos (hašišo) įgijimą Ispanijos Karalystėje, neteisėtą narkotinių medžiagų gabenimą iš Ispanijos Karalystės per Europos Sąjungos valstybių teritoriją į Lenkijos Respubliką, o iš ten į Rusijos Federaciją, slepiant narkotines medžiagas vilkikuose ir kitose transporto priemonėse, neteisėtą labai dideli kiekio narkotinių medžiagų realizavimą Rusijos Federacijoje.

Realizuodami bendrą su Džeraldu Paulausku, Nerijumi Tautvydu ir Valdemaru Raudoniu nusikalstamą sumanymą, Jonas Sirvydas ir Liutauras Nemeikšis sau ir bendrininkams paskyrė užduotis ir vaidmenis: 2020-11-24 – 2021-10-09 laikotarpiu Ispanijos Karalystėje ikiteisminio tyrimo nustatinėjamomis aplinkybėmis, tarpininkaujant ikiteisminio tyrimo nustatinėjamiems bendrininkams, mažiausiai per tris kartus, tikslu realizuoti Rusijos Federacijoje, įgijo labai didelį narkotinių medžiagų kiekį – ne mažiau kaip 479 kg kanapių dervos (hašišo); įtraukė į nusikalstamą veiklą nusikalstamam susivienijimui nepriklausančius Vaidą Filipavičių, Darių Palinauską, Titą Ramanauską bei organizavo su bendrininkais paminėtos narkotinės medžiagos neteisėtą gabenimą į Lenkijos Respubliką ir ten šio labai didelio narkotinės medžiagos kiekio



laikymą; organizavo su bendrininkais minėto labai didelio kiekio narkotinės medžiagos neteisėtą gabenimą į Rusijos Federaciją ir neteisėtą realizavimą ten, iš ko 244 kg kanapių dervos (hašišo) buvo sulaikyti Lenkijos Respublikoje pareigūnų.

Veikdami pagal susitarimą su Džeraldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, laikotarpiu nuo 2020-11-24 iki 2020-12-11 Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami tarpusavyje ir su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. Ikiteisminio tyrimo metu nustatinėjami bendrininkai, 2020-12-11 vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo). Laikotarpiu nuo 2020-12-13 iki 2020-12-17 Jonas Sirvydas ir Liutauras Nemeikšis organizavo ne mažiau kaip 110 kg kanapių dervos (hašišo) gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimo eigą per Europos valstybių teritorijas. Vykdydamas Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Vaidas Filipavičius 2020-12-17 ikiteisminio tyrimo nustatinėjamoje vietoje neteisėtai įgijo iš tyrimo metu nenustatyto asmens labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo), kurią neteisėtai gabeno per Lenkijos Respublikos teritoriją iki tyrimo metu nustatinėjamos vietos, kur iki 2021-02-24 minėtos narkotinės medžiagos buvo neteisėtai laikomos. Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus 2021-02-24 laikotarpiu nuo 1.53 val. iki 2.11 val. susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko vairuojamą ikiteisminio tyrimo nustatinėjamą transporto priemonę. Tuomet ne vėliau kaip 2021-02-26 Darius Palinauskas ir Titas Ramanauskas labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo), neteisėtai gabeno iš Lenkijos Respublikos per Baltarusijos Respubliką į Rusijos Federacijos Smolensko sritį, kur neteisėtai realizavo, perduodami ikiteisminio tyrimo nenustatytiems asmenims.

Veikdami pagal susitarimą su Džeraldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, tęsdami suplanuotą nusikaltimą, ne vėliau kaip 2021-03-02 Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. 2021-03-02 ikiteisminio tyrimo metu nustatinėjami bendrininkai, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo). Ne vėliau kaip 2021-03-03, Jonas Sirvydas ir Liutauras Nemeikšis organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo) neteisėtą gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimą per Europos valstybių teritorijas. Vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas 2021-03-09 susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį narkotinės medžiagos – kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko ikiteisminio tyrimo nustatinėjamą transporto priemonę, po ko Darius Palinauskas ir Titas Ramanauskas labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo), neteisėtai gabeno per Lenkijos Respublikos, Baltarusijos Respublikos ir Rusijos Federacijos teritorijas į Smolensko sritį, kur neteisėtai

6



realizavo, perduodami ikiteisminio tyrimo nenustatytiems asmenims.

Veikdami pagal susitarimą su Dželaldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, tęsdami suplanuotą nusikaltimą, ne vėliau kaip 2021-10-09 Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. Ne vėliau kaip 2021-10-09 ikiteisminio tyrimo nustatinėjami bendrininkai, vykdydami Jono Sirvydo ir Liutaro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 244 kg kanapių dervos (hašišo). Tęsdami nusikalstamą veiką, nevėliau kaip 2021-10-09 tiksliai nenustatytomis aplinkybėmis, Jonas Sirvydas ir Liutauras Nemeikšis organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 244 kg kanapių dervos (hašišo) neteisėtą gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimo eigą per Europos valstybių teritorijas. Vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus dėl narkotinės medžiagos gabenimo iš Lenkijos Respublikos per Baltarusijos Respubliką į Rusijos Federaciją, Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, 2021-10-09 susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.“, adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį narkotinės medžiagos – kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko vairuojamą transporto priemonę - vilkiką "DAF XF480FT", valst. Nr. KHJ 035, su puspriekabe "Pezzaioli SBA 3", valst. Nr. MP 643, nuosavybės teise priklausančias UAB „Transfriga", po ko D. Palinauskas ir T. Ramanauskas labai didelį kiekį narkotinės medžiagos – 244 kg kanapių dervos (hašišo) paminėta transporto priemone neteisėtai gabeno per Lenkijos Respublikos teritoriją į Rusijos Federaciją, tačiau 2021-10-09 buvo sulaikyti Lenkijos Respublikos policijos pareigūnų.

Nerijus Tautvydas įtariamas padaręs nusikalstamas veikas, numatytas BK 25 str. 4 d., 7 str. 12 p., 260 str. 3 d.

| Duomenys, leidžiantys manyti, kad asmuo padarė tą nusikalstamą veiką | Duomenys, gauti pagal Europos tyrimo orderius ir tarptautinės teisinės pagalbos prašymus, taikant procesines prievartos priemones užfiksuoti duomenys, tarnybiniai pranešimai ir kt. ikiteisminio tyrimo medžiaga. |
|---|---|
| Nutarimo priėmimo motyvai | Ikiteisminio tyrimo metu surinkta pakankamai duomenų, leidžiančių pagrįstai įtarti, kad Nerijus Tautvydas padarė aukščiau nurodytas nusikalstamas veikas. Ikiteisminio tyrimo duomenimis, Nerijus Tautvydas yra ne Lietuvos Respublikos teritorijoje. Kadangi byloje nėra galimybių Nerijui Tautvydui nedelsiant įteikti pranešimą apie įtarimą Lietuvos Respublikos baudžiamojo proceso kodekse nustatyta tvarka ir atlikti su juo kitus būtinus procesinius veiksmus, yra pagrindas jį pripažinti įtariamuoju pagal BK 249 str. 3 d., 25 str. 4 d., 7 str. 12 p., 260 str. 3 d., 199 str. 4 d. |

Remdamasis tuo, kas išdėstyta, ir vadovaudamasis Lietuvos Respublikos baudžiamojo proceso kodekso (toliau – BPK) 21 ir 187 straipsniais,

n u t a r i a:

Pripažinti Nerijų Tautvydą, gim. 1984-06-06, a. k. 38406060244, įtariamuoju padarius nusikalstamą veiką, numatytą Lietuvos Respublikos baudžiamojo kodekso
25 str. 3 d., 199 str. 4 d., 260 str. 3 d., 249 str. 3 d., 25 str. 4 d., 7 str. 1 d. 12 p., 260 str. 3 d..

Nutarimas gali būti skundžiamas Lietuvos Respublikos baudžiamojo proceso kodekso 62-64 straipsniuose nustatyta tvarka Generalinės prokuratūros Organizuotų nusikaltimų ir korupcijos tyrimo departamento vyriausiajam prokurorui.

7



Skundo padavimas iki jo išsprendimo nesustabdo skundžiamo veiksmo ar nutarimo vykdymo, išskyrus atvejus, jeigu tai padaryti pripažįsta esant reikalinga prokuroras.

Prokurorė                                                                                              Aida Japertienė

## DETALŪS METADUOMENYS

| | |
|---|---|
| **Dokumento sudarytojas (-ai)** | Generalinės prokuratūros Organizuotų nusikaltimų ir korupcijos tyrimo departamentas 288603320, Rinktinės g. 5A, LT-01515 Vilnius |
| **Dokumento pavadinimas (antraštė)** | Nutarimas pripažinti įtariamuoju |
| **Dokumento registracijos data ir numeris** | 2022-11-04 Nr. IBPS-V-2925463-22 |
| **Dokumento gavimo data ir dokumento gavimo registracijos numeris** | – |
| **Dokumento specifikacijos identifikavimo žymuo** | ADOC-V1.0 |
| **Informacija apie būdus, naudotus metaduomenų vientisumui užtikrinti** | "Registravimas" paskirties metaduomenų vientisumas užtikrintas naudojant "RCSC IssuingCA, VI Registru centras - i.k. 124110246 LT" išduotą sertifikatą "Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos, Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos, į.k.188774822 LT", sertifikatas galioja nuo 2022-02-28 14:20:39 iki 2025-02-27 14:20:39. Veiksmą atliko 2022-11-04 08:03:44 (GMT+02:00) Aida Japertienė, Prokurorė, Generalinės prokuratūros Organizuotų nusikaltimų ir korupcijos tyrimo departamentas "Registravimas" paskirties metaduomenų vientisumas užtikrintas naudojant "RCSC IssuingCA, VI Registru centras - i.k. 124110246 LT" išduotą sertifikatą "Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos, Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos, į.k.188774822 LT", sertifikatas galioja nuo 2022-02-28 14:20:39 iki 2025-02-27 14:20:39. Veiksmą atliko 2022-11-04 08:03:45 (GMT+02:00) Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos |
| **Pagrindinio dokumento priedų skaičius** | – |
| **Pagrindinio dokumento pridedamų dokumentų skaičius** | – |
| **Pridedamo dokumento sudarytojas (-ai)** | – |
| **Pridedamo dokumento pavadinimas (antraštė)** | – |
| **Pridedamo dokumento registracijos data ir numeris** | – |
| **Programinės įrangos, kuria naudojantis sudarytas elektroninis dokumentas, pavadinimas** | IBPS sistema, versija 1.3.17 |
| **Informacija apie elektroninio dokumento ir elektroninio (-ių) parašo (-ų) tikrinimą (tikrinimo data)** | Atitinka specifikacijos keliamus reikalavimus. Visi dokumente esantys elektroniniai parašai galioja (2022-12-07 11:17:17) |
| **Elektroninio dokumento nuorašo atspausdinimo data ir jį atspausdinęs darbuotojas** | Nuorašą suformavo IBPS sistema 2022-12-07 11:17:17 Prokurorė Jurga Zieniūtė |
| **Ikiteisminio tyrimo Nr.** | TP-05-00009-22 |

/TRANSLATION FROM LITHUANIAN/

Copy of an electronic document

/the Coat of Arms of the Republic of Lithuania/                    /QR code/

## ORGANISED CRIME AND CORRUPTION INVESTIGATION DEPARTMENT UNDER THE VILNIUS REGIONAL PROSECUTOR'S OFFICE

### RESOLUTION
### ON DECLARATION OF SUSPECT

| Date | 04/11/2022 |
|---|---|
| Place | Vilnius |
| Pre-trial investigation No. | 01-1-09596-21 |

| Resolution by | The Prosecutor Aida Japertienė |
|---|---|
| has established the following: | |
| Criminal offence under the investigation, its classification | The Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Police Bureau is carrying out a pre-trial investigation No. 01-1-09596-21 on the basis of elements of the criminal offences laid down in Articles 249 (2), 249 (3), 7 (12), 25 (4), 199 (4), 260 (3) and 187 (1) of the Criminal Code of the Republic of Lithuania (hereinafter – CC) regarding unlawful possession of a large quantity of narcotic substances and the trafficking thereof, the participation in the activities of criminal association and unjust enrichment. |
| Individual to be declared a suspect | Nerijus Tautvydas, born 06/06/1984, personal ID number 38406060244, declared place of residence: Saulės str. 10-21, Elektrėnai, Elektrėnai Municipality |

Enough factual evidence was gathered during the pre-trial investigation to reasonably suspect that
Nerijus Tautvydas organized the 'Džerkiniai' armed criminal association and participated in its activities, as well as possessed unlawfully a large quantity of narcotic substances, and organized the trafficking thereof, specifically:
Nerijus Tautvydas, no later than in 2014, for immoral motives, in order to criminally enrich himself and to gain significant influence among the actors of the Lithuanian and foreign criminal world, having agreed in advance with Džeraldas Paulauskas and Valdemaras Raudonis to commit grave, serious and less serious crimes, such as unlawful possession of very large quantities of the narcotic substances, the trafficking thereof, as well as other grave and serious crimes, has organised (established) an armed criminal association 'Džerkiniai', that has been led by Džeraldas Paulauskas since 2014, and engaged Jonas Sirvydas, Liutauras Nemeikšis, Mindaugas Švermickas, the citizen of the Russian Federation Oleg Kravchenko, Ramūnas Lapinskas and other individuals currently being identified, in the activities of the said criminal association, as well as engaged Vaidas Filipavičius, Artūras Liubauskas, Titas Ramanauskas, Darius Palinauskas, citizen of the Federal Republic of Germany Riccardo Marian Rotmann, citizen of the Czech Republic Vilem Kovač, citizen of the Republic of Latvia Aleksandrs Zaicevs and other individuals who are not members of the said armed criminal association for joint criminal activities, i.e. for commission of individual crimes, and participated together with other accomplices in the activities of the said armed criminal association until the end of 2022.
During the 2015-2022 period, while the armed criminal association 'Džerkiniai' existed, Nerijus Tautvydas had a treasury common with the leader of the armed criminal association and other members for financing the activities of the armed criminal association, acquired, transported and possessed, without authorisation, a large quantity of firearms and ammunition, which he planned to use in the crimes committed by the criminal association.

Projektų vadovė
Eglė DAUNORAVIČIŪTĖ

Ext-TAUTVYDAS-0040

*/TRANSLATION FROM LITHUANIAN/*

Nerijus Tautvydas, the leader of the 'Džerkiniai' armed criminal association and the members thereof held periodic briefings to discuss plans, specific crimes and other matters related to the activity of the armed criminal association using means of encrypted communications, both within and outside of the Republic of Lithuania.

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
29/11/2022

2

*/QR code/*

Being one of the organisers and participants of the armed criminal association, Nerijus Tautvydas, acting for his own benefit and for the benefit of the members of the armed criminal association, in order to criminally enrich himself, committed crimes specified in the Criminal Code of the Republic of Lithuania: Article 260 (3), i.e. organised the unlawful possession of a very large quantity of narcotic substances; Article 199 (4), i.e. organised the trafficking of the narcotic substances to and from the Republic of Lithuania.

Nerijus Tautvydas is suspected committing a criminal offence under Article 249 (3) of the Criminal Code of the Republic of Lithuania.

Nerijus Tautvydas is also suspected of organising unlawful possession of a very large quantity of a narcotic substance and the trafficking thereof to and from the Republic of Lithuania, while being one of the organisers and members of the 'Džerkiniai' armed criminal association, and acting together with the leader of the said armed criminal association Džeraldas Paulauskas, and the members of the said armed criminal association Valdemaras Raudonis, Ramūnas Lapinskas, Mindaugas Švermickas, the citizen of the Russian Federation Oleg Kravchenko, as well as other individuals, who are not members of the said armed criminal association – the citizen of the German Federal Republic Riccardo Marian Rotmann, citizen of the Czech Republic Vilem Kovač, citizen of the Republic of Latvia Aleksandrs Zaicevs and other individuals currently being identified in course of investigation, for immoral motives, namely:

In execution of their plan for criminal offence, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Mindaugas Švermickas, Ramūnas Lapinskas, as well as Riccardo Marian Rotmann, who is not a member of the armed criminal association, and other individuals currently being identified in course of investigation, organised unlawful acquisition of a very large quantity – no less than 3,480kg – of a narcotic substance cannabis resin (hashish) in the Republic of Lebanon and its unlawful transportation from the Republic of Lebanon to Czech Republic in transit through European countries during the period from 23 August 2020 until 22 November 2020.

By common agreement between Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Ramūnas Lapinskas, Riccardo Marian Rottman and other accomplices currently being identified, the load of at least 3,480kg of cannabis resin was divided into two parts, one of which remained in the Czech Republic and the other part, consisting of no less than 1,480.4kg of cannabis resin (hashish), which was concealed in hiding places made in slabs of marble products, was trafficked to the Republic of Lithuania at the instruction of Džeraldas Paulauskas and his accomplices no later than on 30 December 2020. In organising the transportation of a large quantity of a narcotic substance, Ramūnas Lapinskas and his accomplices involved Artūras Liubauskas in the commission of criminal offence, who, no later than until 30 December 2020, driving the road tractor being identified in course of investigation with semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, loaded with no less than 1,480.4kg of cannabis resin (hashish), concealed in hiding places made in slabs of marble products, was unlawfully transporting this very large quantity of narcotic substance from the Czech Republic to the Polish-Lithuanian state border in transit through territories of European countries, then

Projektų vadovė
Eglė DAUNORAVIČIŪTĖ

*/TRANSLATION FROM LITHUANIAN/*

transported the said narcotic substance through the Polish-Lithuanian border without submitting the cargo for customs control and

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sujenko
29/11/2022

3

*/QR code/*

avoiding it by having concealed the narcotic substances in hiding places made in slabs of marble products, and then unlawfully transported this very large quantity of the narcotic substance from the state border through the territory of the Republic of Lithuania to the location in Kaunas county, currently being identified in course of investigation, and from there, on 31 December 2020, at the instruction of Ramūnas Lapinskas, Nerijus Tautvydas and Mindaugas Švermickas, the said very large quantity of narcotic substance was unlawfully transported through the territory of the Republic of Lithuania to the location currently being identified in course of investigation, referred to by the members of the criminal association 'at Tadas'.

After Ramūnas Lapinskas, Džeraldas Paulauskas, Valdemaras Raudonis, Nerijus Tautvydas and Mindaugas Švermickas provided the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403 and connected a semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, with a large quantity of a narcotic substance – no less than 1,480.4kg of cannabis resin (hashish) – concealed in in hiding places made in slabs of marble products that the semi-trailer was loaded with, and organised the trafficking of the said narcotic substance from the Republic of Lithuania, Artūras Liubauskas, between 24 January 2021 and 25 January 2021, at the instruction of his accomplices, transported a very large quantity – no less than 1,480.4 kg – of a narcotic substance cannabis resin (hashish), from the location referred to as 'at Tadas' currently being identified in course of investigation, to the Lithuanian-Latvian state border, and, without a permit, transported the aforementioned narcotic substance across the state border of the Republic of Lithuania, without submitting the cargo to customs control and avoiding customs control by having concealed the narcotic substances in hiding places made in slabs of marble products, then unlawfully transported a very large quantity of a narcotic substance from the state border through the territory of the Republic of Latvia, up to the Latvian-Russian border inspection post at Terehov, however, having noticed damage (cracks) in some slabs of marble products in which the narcotic substances were concealed, in order to avoid the possible discovery and apprehension of narcotic substances during the customs checks, Artūras Liubauskas has stopped in the vicinity of the said border post, where he left the vehicle containing the narcotic substances and, after informing his accomplices of this, returned to the Republic of Lithuania.

Having discussed the situation, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis and Ramūnas Lapinskas, in agreement with Aleksandrs Zaicevs, instructed him to find premises for keeping the road tractor with semi-trailer and for re-loading of the narcotic substances to other hiding places, as well as a driver, who, at the instruction of Aleksandrs Zaicevs and accompanied by individuals sent by Aleksandrs Zaicevs, currently being identified in course of investigation, on 2 February 2021, by the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403, with semi-trailer Schmitz .PR 24-13.62, licence plate No. DP 810, unlawfully transported a very large quantity of narcotic substances – no less than 1,480.4kg of cannabis resin (hashish) – concealed in in hiding places made in slabs of marble products that the semi-trailer was loaded with, through the territory of the Republic of Latvia, from the surroundings of the Terehov border inspection post to the premises arranged by A. Zaicevs at the location currently being identified in course of investigation, where he and his accomplices kept the said very large quantity of narcotic substance at least until 3 March 2021. Continuing their preparations for the transportation of a very large quantity of narcotic substances to the Russian Federation, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg

Projekto vadovė
DAUNORAVIČIŪTĖ

*/TRANSLATION FROM LITHUANIAN/*

Kravchenko and Ramūnas Lapinskas came up with a plan for further criminal activities, in execution of which the individuals found by Nerijus Tautvydas, Mindaugas Švermickas and Ramūnas Lapinskas, currently being identified in course of the investigation, in the territory of the private limited liability company Akmenstata, UAB, located at Elektrėnų str. 3B, Pastrėvys, Elektrėnai Municipality, made hiding places for the transportation of the narcotic substances by cutting out cavities in the slabs of marble products between 6 February 2021 and 23 February 2021. Acting as previously agreed, Aleksandrs Zaicevs, in the period from 2 February 2021 to 23 February 2021, jointly with individuals currently being identified in course of the pre-trial investigation, dismantled the damaged slabs of marble products and removed the very large quantity of narcotic substance – no less than 1,480.4 kg of cannabis resin (hashish) – concealed therein. During the same period, at the instruction of Ramūnas Lapinskas and Nerijus Tautvydas, the individuals currently being identified in course of the pre-trial investigation, have transported the road tractor with semi-trailer currently being identified in course of investigation, loaded with slabs of marble products with hiding places therein, from the territory of Akmenstata, UAB, located at Elektrėnų str. 3B, Pastrėvys, Elektrėnai Municipality, to premises leased by A. Zaicevs in the Republic of Latvia, where a very large quantity of narcotic substances was unlawfully stored.

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
29/11/2022

4

*/QR code/*

Having coordinated their actions with Džeraldas Paulauskas, Valdemaras Raudonis and Oleg Kravchenko by means of an encrypted communication platform Sky ecc, and during the meetings, Ramūnas Lapinskas, Nerijus Tautvydas and Aleksandrs Zaicevs, in the period from 24 February 2021 to 3 march 2021, in the Republic of Latvia, at the premises, the location of which is currently being identified in course of investigation, have repackaged a very large quantity of narcotic substance, and afterwards concealed a part, i.e. 974,953g, of cannabis resin (hashish) in hiding places in slabs of marble products brought from Lithuania and loaded them into the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403 with semi-trailer Schimtz S.PR 24-13.62, licence plate No. DP 810, and the part of the narcotic substances that did not fit – at least 505kg of cannabis resin (hashish) – was left at the said premises. Ramūnas Lapinskas then arranged with the driver, Artūras Liubauskas, to transport the narcotic substance from the Republic of Latvia to the Russian Federation in return for payment. From 3 March 2021 to 12 March 2021 Artūras Liubauskas, driving the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403, with semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, illegally transported a very large quantity of the narcotic substance - 974,953g of cannabis resin (hashish) – through the territory of the Republic of Latvia, stopping at a car park to be identified during the pre-trial investigation, and at a guarded car park at a petrol station Cirkle K, located at Salaspils, Nometnu iela 1. After which, following the instructions of the accomplices, on 12 March 2021, Artūras Liubauskas driving a road tractor Volvo FM 400 FH 400, licence plate No. LRO 403, with semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, loaded with a very large quantity of a narcotic substance concealed in the hiding places in slabs of marble products, was illegally transporting a very large quantity of narcotic substances - 974,953g of cannabis resin (hashish) – from the secure parking area at the above-mentioned Cirkle K petrol station, towards the Latvian-Russian state border through the territory of the Republic of Latvia to the territory of the Russian Federation, until he was apprehended by Latvian police officers in Riga, Uriekstes iela 16, at 5.30 a.m. on 12 March 2021

By these actions, Nerijus Tautvydas is suspected of having committed the criminal offences provided for in Articles 25(4), 7(12), 260(3) and 199(4) of the Criminal Code.

*Prezidiu vadovė*
*DAUNORAVIČIŪTĖ*

*/TRANSLATION FROM LITHUANIAN/*

In addition, Nerijus Tautvydas, as one of the organisers and members of the 'Džerkiniai' armed criminal association, for immoral motives - with the aim of profiting from the crimes committed by the members of the criminal association, by encouraging other members of the criminal association to commit crimes, and by obtaining a criminal profit from the commission of crimes, acting jointly with the leader of the criminal association, Džeraldas Paulauskas, and its members Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis, as well as with Titas Ramanauskas, Darius Palinauskas, Vaidas Filipavičius, who are not members of the criminal association, and other persons to be identified in the course of the pre-trial investigation, during the period from 24 November 2020 to 9 October 2021, organised the unlawful acquisition of a very large quantity of narcotic substances - cannabis resin (hashish) - in the Kingdom of Spain, the unlawful transport of narcotic substances from the Kingdom of Spain through the territory of the Member States of the European Union to the territory of the Republic of Poland, and then to the Republic of the Russian Federation, hiding the narcotic substances in road tractors and other vehicles, and the unlawful disposal of a very large quantity of narcotic substances in the Russian Federation

In pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis assigned themselves and their accomplices the following tasks and roles: in the period from 24 November 2020 to 9 October 2021, in the Kingdom of Spain, under circumstances to be determined in course of the pre-trial investigation, with the intermediation of accomplices to be determined in course of the pre-trial investigation, on at least three occasions, acquired a very large amount of narcotic substances, i.e. at least 479 kg of cannabis resin (hashish), with a view to disposing thereof in the Russian Federation, and recruited into the criminal activity Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas who were not members of the criminal association, and organised, with accomplices, the illicit transport and storage of the said narcotic substance to the Republic of Poland; organised, with accomplices,

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
29/11/2022

5

*/QR code/*

illicit transport of the said very large quantity of narcotic substance cannabis resin (hashish) to the Russian Federation and unlawful disposal thereof in the Russian Federation, 244 kg of which have been apprehended by officer in the Republic of Poland.

Acting as agreed with and in pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis, during the period from 24 November 2020 until 11 December 2020, in contact with each other and with accomplices and suppliers of narcotic substances to be identified in course of the investigation, organised acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. On 11 December 2020, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, the accomplices to be identified in course of the pre-trial investigation, illegally acquired in the Kingdom of Spain a very large quantity of a narcotic substance - at least 110 kg of cannabis resin (hashish). Between 13 December 2020 and 17 December 2020, Jonas Sirvydas and Liutauras Nemeikšis organised the transport of at least 110 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland and coordinated the course of the transport of narcotic substances through the territories of the European States. On 17 December 2020, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, Vaidas Filipavičius, at a place to be determined in the pre-trial investigation, illegally acquired from a person not identified in the investigation a very large quantity of a narcotic substance - at least 110 kg of cannabis resin (hashish), which he illegally transported across the territory of the Republic of Poland to [the place to be

*/TRANSLATION FROM LITHUANIAN/*

determined in course of the investigation, where the aforementioned narcotic substances were illegally stored until 24 February 2021. On 24 February 2021, between 1.53 a.m. and 2.11 a.m., Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, met at the petrol station SHELL Polska SP z.o.o., located at ul. Nowoslawy Dolne 140, Dmosin, where they transferred a very large quantity of cannabis resin (hashish) from the vehicle driven by Vaidas Filipavičius, to be identified in course of the pre-trial investigation, to the vehicle driven by Darius Palinauskas and Titas Ramanauskas, to be identified in course of the pre-trial investigation. Then, no later than on 26 February 2021, Darius Palinauskas and Titas Ramanauskas illegally transported a very large quantity of the narcotic substance, at least 110 kg of cannabis resin (hashish), from the Republic of Poland via the Republic of Belarus to the Smolensk Region of the Russian Federation, where it was illegally disposed of by transferring it to the persons unidentified during the pre-trial investigation.

Acting as agreed with and in pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, continuing the commission of crime they have planned, no later than on 2 March 2021, Jonas Sirvydas and Liutauras Nemeikšis, in contact with accomplices and suppliers of narcotic substances to be identified in course of the investigation, organised unlawful acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. On 2 March 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, the accomplices to be identified in course of the pre-trial investigation, illegally acquired in the Kingdom of Spain a very large quantity of a narcotic substance - at least 125 kg of cannabis resin (hashish). No later than on 3 March 2021, Jonas Sirvydas and Liutauras Nemeikšis organised the unlawful transport of at least 125 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland and coordinated the course of the transport of narcotic substances through the territories of the European States. On 9 March 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, met at the petrol station SHELL Polska SP z.o.o., located at ul. Nowoslawy Dolne 140, Dmosin, where they transferred a very large quantity of cannabis resin (hashish) from the vehicle driven by Vaidas Filipavičius, to be identified in course of the pre-trial investigation, to the vehicle driven by Darius Palinauskas and Titas Ramanauskas, to be identified in course of the pre-trial investigation. Then, Darius Palinauskas and Titas Ramanauskas illegally transported a very large quantity of the narcotic substance, at least 125 kg of cannabis resin (hashish), from the Republic of Poland via the Republic of Belarus to the Smolensk Region of the Russian Federation,

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sujenko
29/11/2022

6

*/QR code/*

where it was illegally disposed of by transferring it to the persons unidentified during the pre-trial investigation.

Acting as agreed with and in pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis, no later than on 9 October 2021, in contact with accomplices and suppliers of narcotic substances to be identified in course of the investigation, organised unlawful acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. No later than on 9 October 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, the accomplices to be identified in course of the pre-trial investigation, illegally acquired in the Kingdom of Spain a very large quantity of a narcotic substance - at least 244 kg of cannabis resin (hashish). Continuing the commission of the criminal offence, no later than on 9 October 2021, under unspecified circumstances, Jonas Sirvydas

Ext-TAUTVYDAS-0045

*/TRANSLATION FROM LITHUANIAN/*

and Liutauras Nemeikšis organised the illegal transport of a very large quantity of the narcotic substance – at least 244 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland and coordinated the course of the transport of narcotic substances through the territories of the European States. On 9 October 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, met at the petrol station SHELL Polska SP z.o.o., located at ul. Nowosławy Dolne 140, Dmosin, where they transferred a very large quantity of cannabis resin (hashish) from the vehicle driven by Vaidas Filipavičius, to be identified in course of the pre-trial investigation, to the road tractor DAF XF480FT, licence plate No. KHJ 035, with semi-trailer Pezzaioli SBA 3, licence plate No. MP 643, both owned by the private limited liability company Transfríga, UAB, driven by Darius Palinauskas and Titas Ramanauskas. Then, Darius Palinauskas and Titas Ramanauskas were illegally transporting a very large quantity of the narcotic substance, at least 244 kg of cannabis resin (hashish), through the territory of the Republic of Poland to the Russian Federation, when, on 9 October 2021, they were apprehended by officers of the Republic of Poland.

Nerijus Tautvydas is suspected of having committed the criminal offences provided for in Articles 25(4), 7(12) and 260(3) of the Criminal Code.

| Evidence suggesting that the person has committed the said criminal offences | Evidence received on the basis of European Investigation Orders and requests for international legal assistance, evidence recorded in application of procedural coercive measures, service reports and other pre-trial investigation material. |
|---|---|
| Grounds for adopting the resolution | Sufficient evidence has been gathered during the pre-trial investigation to reasonably suspect that Nerijus Tautvydas has committed the above-mentioned criminal offences. According to the pre-trial investigation, Nerijus Tautvydas is outside the territory of the Republic of Lithuania. Since it is not possible to serve a notification of suspicion on Nerijus Tautvydas without delay, as provided for in the Code of Criminal Procedure of the Republic of Lithuania and to carry out other necessary procedural actions with him, there are grounds to declare him a suspect under Article 249(3), Article 25(4), Article 7(12), Article 260(3) and Article 199(4) of the Criminal Code of the Republic of Lithuania. |

In the light of the above and in accordance with Articles 21 and 187 of the Code of Criminal Procedure of the Republic of Lithuania, the Prosecutor

h a s   r e s o l v e d :

To recognise Nerijus Tautvydas, born 06/06/1984, personal ID number 38406060244, a suspect in committing criminal offences under Articles 249 (3), 25 (4), 7 (12), 260 (3) and 199 (4) of the Criminal Code of the Republic of Lithuania.

The Resolution may be appealed against to the Chief Prosecutor of the Organised Crime and Corruption Investigation Department Under the Vilnius Regional Prosecutor's Office in accordance with the procedure established in Articles 62-64 of the Criminal Code of the Republic of Lithuania.

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
29/11/2022

7

*/QR code*

| The lodging of a complaint pending its resolution does not suspend the enforcement of the action or resolution, which has been appealed against, except for cases where the Prosecutor recognises it being necessary. |
|---|
| The Prosecutor ... Aldona Janertienė |

*/TRANSLATION FROM LITHUANIAN/*

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
29/11/2022



*/TRANSLATION FROM LITHUANIAN/*

| DETAILED METADATA | |
|---|---|
| Document created by | Organised Crime and Corruption Investigation Department under the Prosecutor General's Office, legal entity code 288603320, Rinktinės str. 5A, LT-01515, Vilnius |
| Document title | Resolution on Declaration of Suspect |
| Document registration date and number | 04/11/2022 No. IBPS-V-2 925463-22 |
| Document receipt date and document receipt registration number | - |
| Document specification identification mark | ADOC-V1.0 |
| Information on means used to ensure the integrity of the metadata | The integrity of metadata with the designation 'Registration' has been ensured by using the certificate 'Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania, Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania, legal entity code 188774822 LT' issued by 'RCSC IssuingCA, VI Registru centras, legal entity code 124110246 LT', the certificate is valid from 28/02/2022 14:20:39 until 27/02/2025 14:20:39. The action has been carried out on 04/11/2022 08:03:44 (GMT+03:00) by the Prosecutor Aida Japertienė, Organised Crime and Corruption Investigation Department under the Prosecutor General's Office <br><br> The integrity of metadata with the designation 'Registration' has been ensured by using the certificate 'Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania, Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania, legal entity code 188774822 LT' issued by 'RCSC IssuingCA, VI Registru centras, legal entity code 124110246 LT', the certificate is valid from 28/02/2022 14:20:39 until 27/02/2025 14:20:39. The action has been carried out on 04/11/2022 08:03:45 (GMT+03:00) by the Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania. |
| Number of annexes to the main document | 1 |
| Number of documents attached to the main document | - |
| Originator(s) of the attached document | - |
| Title of the attached document | - |
| Registration date and number of the attached document | - |
| Title of the software used to conclude the electronic document | IBPS system, version 1.3.17 |
| Information on the verification of the electronic document and electronic signature (verification date) | Conforms to the specification requirements. All electronic signatures in the document are valid (29/11/2022 11:07:21) |
| Date of printing the copy of electronic document and the employee who has printed the document | The copy generated by the IBPS system (29/11/2022 11:07:22) Chief Investigator Jelizaveta Sajenko |
| Pre-trial investigation number | 01-1-09596-21 |



Projektų vadovė
*Eglė DAUNORAVIČIŪTĖ*

Ext-TAUTVYDAS-0048

# PRIEDAS NR. 3

Ext-TAUTVYDAS-0049

*Translation from Lithuanian*

**Summary of Data Underlying the Suspicions for Nerijus TAUTVYDAS**

Nerijus TAUTVYDAS is suspected of organizing an armed criminal association of *Džerkiniai* and participating in their activities, unlawful possession of high quantity of narcotic substances, and organizing smuggling of narcotic substances

## Offense No. 1.

1. In accordance with the criminal laws of the Republic of Lithuania, participation in the armed criminal association (hereinafter referred to as "the ACA") is a criminal offense punishable by a long-term custodial sentence or custodial life sentence. The ACA shall be a group in which three or more persons join together for the commission of a joint criminal offense – one or several serious and grave crimes – and it is the most dangerous form of complicity. The members of a criminal association are linked by permanent mutual relations and division of roles or tasks. A criminal association is formed with a prior agreement, it has a high level of organization, apart from the formal features (number of members, purpose, communications, etc.), it contains informal features (hierarchical structure, association management, action plans, seeking profit, possession of common funds, maintenance of order and subordination by intimidation and other means, use of communications and other technical means in the criminal offenses, use of physical violence and mental coercion, level of armaments, etc.). The criminal association is classified as armed criminal association when they have at least one firearm, explosive or a certain quantity of explosive materials that are sufficient to cause and explosion endangering the human life, health or property. Organizing the criminal association may include the selection of persons, joining them for a common criminal offense, division of functions among the members of the association, preparation of action plans for the criminal offense, acquisition of firearms, explosive materials, means of transportation, communications or other technical means, and other actions. Leading the criminal association is the gathering of group members and assignment to commit specific crimes, establishing the functions of each member, division of tasks and giving orders to other members, assurance of the respect for internal rules, final word in accepting new group members and in solving other issues, division of profit among the members of the criminal association, solving the issues of the use of common funds, etc. The leader of the group may also participate in the crimes as an executor. The organizers and leaders of the criminal association may be multiple members at once. The members of the criminal association, regardless of their role during the criminal offense, are liable as executors.

2. Third Serious and Organized Crime Investigation Board under the Lithuanian Criminal Police Bureau conducted an investigation of criminal intelligence regarding the armed criminal association, unlawful possession of narcotic and psychotropic substances in a very large quantity, organizing their smuggling, and other serious and grave criminal offenses committed by them. The detailed results of the aforementioned investigation of the criminal intelligence are provided in the official reports by the officer who conducted the investigation (23 April 2021 No. 38-2(DS)-2162-RN and 24 October 2022 No. 38-2(DS)-5246-RN).

3. The first piece of information was received by the police officers in 2014 about the fact that the ACA, known as *Džerkiniai*, was formed in Lithuania and began operating on the international level. It was formed for the purpose of making profit of a criminal offense – international trade of narcotic substances (cocaine, hashish, etc.), as well as achieving influence among other competitive criminal groups.

4. It was found during the investigation of the criminal intelligence, that the ACA was organized by the following citizens of the Republic of Lithuania: Džeraldas Paulauskas, nickname Džerka, d. o. b. 18 March 1968, Valdemaras Raudonis, nickname Valdelis, Senis, d. o. b. 24

*Translation from Lithuanian*

December 1961, and Nerijus TAUTVYDAS, nickname Prancūzas, Šlanga, d. o. b. 6 June 1984. The leader of ACA was D. Paulauskas, and N. TAUTVYDAS and V. Raudonis were his closest associates who kept recruiting new persons (currently, the suspicions on leading the ACA and participating in ACA are raised to 13 persons). The aforementioned ACA leaders and other members, during the period of 2014-2022 incriminated on them, unlawfully possessed very large quantities of narcotic and psychotropic substances, they are suspected of committing their smuggling to and from the Republic of Lithuania, and they are also suspected of committing other serious and grave crimes.

5. In committing the crimes, the leaders of ACA cooperated with the members of the criminal world from the following countries: Kingdom of Spain, Republic of Lebanon, Federal Republic of Germany, Kingdom of the Netherlands, Czech Republic, Republic of Latvia, Republic of Poland, and Russian Federation. The active territory of the aforementioned ACA included the following countries: Kingdom of Spain, Republic of Lebanon, Federal Republic of Germany, Kingdom of the Netherlands, Czech Republic, Republic of Latvia, Republic of Poland, Kingdom of Norway, Russian Federation, and others. Upon committing the crimes, the members of ACA used the maritime and road transport, cover cargoes, and various hiding places. For the purpose of maintaining a strict conspiracy, the internal communication among the members of ACA was carried out using the means of communication ensuring an encrypted service. For the protection of ACA activities against the competing criminal groups, D. Paulauskas, N. TAUTVYDAS and V. Raudonis had acquired and unlawfully possessed until 22 November 2022 the firearms and ammunition, out of which, two pistols and 9 mm caliber Luger firearms were found during the search of 22 November 2022 in the garage of an ACA member Ramūnas Lapinskas, at Dambrava, Panevėžys district, Lithuania.

6. For the purpose of committing crimes, the members of ACA handled a common cash fund that they used to acquire narcotic substances, to cover other expenses related to committing criminal activities, to acquire ammunition, for means of communication, etc. During the investigation of the criminal intelligence (a detailed report by the police officer in the official report No. 38-2(DS)-5246_RN dated 24 October 2022), it was found that the ACA members paid a fixed amount to the cash fund of ACA (member fee) and a certain part of the profit acquired from criminal activities. The money collected by the ACA members were used for the legal defense of the ACA members detained in Lithuania and abroad, sent to the ACA members serving prison sentences to prison institutions for a living, the money was also transferred to the families of the ACA members serving custodial sentences in prison institutions for a living, etc. According to the data of the criminal intelligence, the member fee was collected monthly or annually. Džeraldas Paulauskas personally checked which members paid the money to the ACA cash fund and how they did it; in case someone failed to pay, he persuaded them to do it. The contributions were also made by the ACA leaders Džeraldas Paulauskas, Valdemaras Raudonis and Nerijus TAUTVYDAS.

7. That way, according to the data of the pre-trial investigation, during the initial stage of ACA activities between 2015-2016, the members of ACA *Džerkiniai*, in cooperation with the representatives of the criminal world from the Kingdom of Spain, the Kingdom of the Netherlands and the Republic of Poland, transported from the Kingdom of Spain to the Kingdom of the Netherlands about 9 t 100 kg of cannabis resin (hashish), as well as the money to the Kingdom of Spain for the handled hashish. These circumstances, apart from other data, were confirmed by the witness Jaroslaw Jaskowski. At a later time, the leaders and members of ACA transported the narcotic substances to be handled from the Kingdom of Spain, the Republic of Lebanon, to the Russian Federation and the Kingdom of Norway. According to the data of the pre-trial investigation, as the members and leaders of ACA, D. Paulauskas, N. TAUTVYDAS and V. Raudonis made profit from all of the crimes committed by the association, all of the crimes committed were arranged and planned with them and they supervised the process.

*Translation from Lithuanian*

8. Subject to the aforementioned ACA members, complex investigative actions were applied: in accordance with the European Investigation Orders in France (D. Paulauskas, O. Kravčenka), Norway (M. Švermickas) and Spain (R. Lapinskas) issued by the judicial institutions of the Republic of Lithuania, the tracking of the persons was conducted; also, the supervision of phone conversations of the aforementioned persons and the content of the information transferred via other means of electronic communication; supervision of fixed conversations in various premises and vehicles; inspection of premises, territories and vehicles; analysis of information obtained from the judicial institutions and economic entities of Lithuania and other countries. In consideration that the majority of the ACA members lived in foreign countries, the supervision and accumulation of the contents of the information transferred by their families (with court permission) via electronic means of communication were conducted, for the purpose of finding the movement and activities of the ACA members. The analysis and use of information obtained during the criminal prosecution of a part of the persons participating in the activities of ACA carried out in the Republic of Latvia and Poland for the purposes of identifying the leaders and members of ACA. In addition, the data obtained during the questioning of witnesses Raimondas Pėčia and Tadas Valeckas, the explanations of suspects Vaidotas Jančius, Egidijus Jančius and Alvydas Šliažas, the objects removed during the searches conducted upon detaining ACA members (in the Republic of Lithuania, France and Spain), the tasks assigned to carry out the examination of the objects, and other data obtained in executing requests for legal assistance and European Investigation Orders (hereinafter referred to as EIO). It is important to note that the procedural actions are not complete in the present pre-trial investigation; currently, the ACA members are undergoing questioning, the objects taken during searches are undergoing examination and other procedural actions are being conducted.

9. In the process of the present investigation, it was found that the members of ACA and their families spent a lot of time together, went on vacation, visited each other, and that way directly exchanged information.



A photograph of family celebration; in pink dress – Valdemaras Raudonis's wife, to the right – Džeraldas Paulauskas.

*Translation from Lithuanian*



During the search of 22 November 2022 at the E. Švermickienė's (M. Švermickas's wife) home in the Republic of Lithuania, the photographs were found in her personal computer about the visit of the Švermickai at Džeraldas Paulauskas in Nice (M. Švermickas – a member of ACA, currently in detention in Norway).



*Translation from Lithuanian*



In this photograph, M. Švermickas is at Džeraldas Paulauskas's residential place in Nice.

*Translation from Lithuanian*

10. The data underlying the suspicions to Nerijus TAUTVYDAS regarding Offense No. 1 are supplemented with the hierarchical structure of the members of ACA *Džerkiniai* **(Attachment No. 3 (a))**.

## Offense No. 2

11. Nerijus TAUTVYDAS is also suspected of the following: being one of the organizers and members of ACA, acting for his benefit and the benefit of the members of the armed criminal association, seeking an unlawful enrichment from criminal activities, organized an unlawful possession of a very large quantity of a narcotic substance; he also organized the smuggling of the narcotic substance to and from the Republic of Lithuania.

12. Upon executing the EIO issued by a competent institution of the Republic of Lithuania, information was obtained from the institutions of the Republic of Latvia that Artūras Liubauskas, driving the truck Volvo FM 400 FH 400 (registration No. LRO 403) with the semi-trailer Schmitz S.PR 24-13.62 (registration No. DP 810) loaded with a very large quantity of narcotic substances hidden in the slabs of marble products, traveled towards the Latvian-Russian border, i.e. through the territory of the Republic of Latvia, unlawfully transported a very large quantity of narcotic substances – 974,953 g of cannabis resin (hashish), until on 12 March 2021 at 5:30 a.m., at Uriekstes iela 16, Riga, he was detained by the officers of the Republic of Latvia.

13. The fact that Nerijus TAUTVYDAS committed these offenses is supported by the data obtained during the investigation.

14. During the execution of EIO, the French Republic provided the persons' communication data transferred and received via the encrypted transmission system of electronic communications Sky Ecc. With the help of the material inspected, from the virtual data storage of the French Republic, the folder titled Exécution CR JI-507-1-22-488-1140 (Lituanie) was forwarded.

15. Upon analyzing the data transferred via the system Ske Ecc that are recorded in the criminal matter in the Statement of Inspection of SKY ECC data of 18 November 2021, it was found that Nerijus TAUTVYDAS, together with accomplices, organized the smuggling of narcotic substances from Lebanon to Czech Republic and from Czech Republic to Russia by transit through Lithuania and Latvia.

16. Nerijus TAUTVYDAS received information that there is a possibility to execute the smuggling of the narcotic substance – hashish – from Lebanon, the photographs of the narcotic substances were sent to him (it is supported by the totality of data: the packaging of the narcotic substances in the photograph sent to Nerijus TAUTVYDAS and the narcotic substances detained in Latvia on 12 March 2021 is the same).

SPECIFIC MESSAGES FROM SKY:

- 9 August 2020, Džeraldas Paulauskas (user ID 8AAO3A) sends text messages to Nerijus TAUTVYDAS (user ID 84AIUB):

*On 9 August 2020, Džeraldras Paulauskas informs Nerijus TAUTVYDAS that soon five tons of a presumably narcotic substance – hashish – will be delivered, half of which (2.5 tons) belong to the three of them and will have to be transported.*

- 23 August 2020, Džeraldas Paulauskas (user ID 8AAO3A) sends photo images and text messages to Nerijus TAUTVYDAS (user ID 84AIUB):



*Translation from Lithuanian*

| Date, time | Sender | Message text | User ID |
|---|---|---|---|
| 8/23/2020 07:35:01 a.m. | 8AAO3A |  | 84AIUB, 8AAO3A |
| 8/23/2020 07:36:22 a.m. | 8AAO3A |  | 84AIUB, 8AAO3A |

17. Upon analyzing SKY Ecc, it was found that Nerijus TAUTVYDAS, together with the associate of the criminal offense – Mindaugas Švermickas, d. o. b. 4 May 1979, had been to Prague, Czech Republic, where they examined the quality of the narcotic substances delivered. Having examined the quality of the narcotic substances, he decided that, based on the qualitative features,

*Translation from Lithuanian*

the narcotic substances are not suitable for the Scandinavian market. Such narcotic substances may be transported (they are suitable) to the Russian market. He directly informed Džeraldas Paulauskas, the leader of ACA, about the decision he had made;

18. Nerijus TAUTVYDAS and Mindaugas Švermickas stayed at the same hotel. During their stay, they used their real names.

19. The data obtained from the law enforcement institutions of the Czech Republic confirm that, during the aforementioned period, Nerijus TAUTVYDAS and Mindaugas Švermickas stayed at the same hotel in the city of Prague (it is supported by the totality of data: registration documents retrieved from the Czech hotel and, as previously mentioned, the analysis of SKY data).

SPECIFIC MESSAGES FROM SKY:

8 December 2020, Oleg Kravchenko (user ID R9SJMM) sends text messages to Nerijus TAUTVYDAS (user ID 84AIUB)

*Riccardo Marian Rotmann (Polish), SKY ECC ID – SD6ISX. Also, Oleg Kravchenko tells Nerijus TAUTVYDAS to arrive in Prague, Czech Republic, and text to Riccardo Marian Rotmann (Polish).*

- 8 December 2020, Riccardo Marian Rotmann (user ID SD6ISX) sends text messages to Nerijus TAUTVYDAS (user ID 84AIUB) confirming his presence in Prague.

- 8 December 2020, Džeraldas Paulauskas (user ID D5LV4T) sends text messages to Mindaugas Švermickas (user ID GIWG7Z):

*Nerijus TAUTVYDAS and Mindaugas Švermickas together arrived in Prague, Czech Republic, where they were supposed to meet Riccardo Marian Rotmann and to examine the quality of the narcotic substances. Džeraldas Paulauskas explains to Mindaugas Švermickas that Nerijus TAUTVYDAS should contact Riccardo Marian Rotmann (Polish) himself.*

- *8 December 2020, Riccardo Marian Rotmann (user ID SD6ISX) sends text messages to Nerijus TAUTVYDAS (user ID 84AIUB):*

| Date, time | Sender | Text message | User ID |
|---|---|---|---|
| 12/8/2020 5:47:29 p.m. | SD6ISX | Please take any hotel in center.ones you in hotel please let me know and we meet | 84AIUB, SD6ISX |
| 12/8/2020 5:47:48 p.m. | SD6ISX | I give you address later | 84AIUB, SD6ISX |

*Riccardo Marian Rotmann sends a photograph to Nerijus TAUTVYDAS with the address where Nerijus TAUTVYDAS should arrive in Prague.*

- *9 December 2020, Džeraldas Paulauskas (user ID D5LV4T) sends text messages to Nerijus TAUTVYDAS (user ID 84AIUB):*

*Džeraldas Paulauskas informs Nerijus TAUTVYDAS that Riccardo Marian Rotmann (Polish) is executing the works of loading/unloading narcotic substances. Džeraldas Paulauskas informs that there are five types of the narcotic substances and Riccardo Marian Rotmann (Polish) will send the pictures of the narcotic substances.*

*In the text messages, Džeraldas Paulauskas asks Nerijus TAUTVYDAS about the quality of the narcotic substance – hashish. Džeraldas Paulauskas texts that the narcotic substances are in a shape of a bun (lepioshka). The examined narcotic substances are of komers type (komers is the type of the narcotic substance – hashish). Džeraldas Paulauskas suggests that Nerijus TAUTVYDAS should smoke some of the hashish to test its quality.*

*Translation from Lithuanian*

*Džeraldas Paulauskas asks Nerijus TAUTVYDAS whether he had told Riccardo Marian Rotmann (Polish) that the narcotic substances he examined – hashish, brought from Lebanon, are suitable for the market of the Russian Federation.*

20. When the narcotic substances were brought from the Czech Republic to Lithuania, the ACA members encountered procedural problems when transporting goods from the countries of the European Union. Nerijus TAUTVYDAS referred to the persons who were able to handle customs clearing (*Note.* When the cargo is exported outside the customs territory of the European Union (as in this case when it was intended to be exported to Russia), a different customs procedure is applied), organized the acquisition of the cargo, which was presented to the customs procedures simulating the cargo brought from the Czech Republic (this is confirmed by the totality of the data – investigative actions of law enforcement officers of Latvia, i.e. searches and inspections, during which customs documents were taken, and, as mentioned before, analysis of SKY data).

21. Upon preparation for the customs clearing, the ACA members acquired another identical cargo of marble, which was submitted to the Customs officials in Lithuania; that way the necessary customs clearing was performed and the documents were formalized that are necessary for further transportation of the actual cargo – marble slabs with the drugs hidden inside – from Lithuania to Russia through Latvia.

SPECIFIC MESSAGES FROM SKY:

*(Mindaugas Švermickas sends to Nerijus TAUTVYDAS a photograph of the semi-trailer, which was brought from Šiauliai to the agreed place by an unidentified person on 14 January 2021. Apart from the semi-trailer, the photograph shows a crane. Mindaugas Švermickas informs Nerijus Tautvydas that the semi-trailer is loaded and sends the photographs showing the marble slabs in the semi-trailer).*

22. The photographs exchanged between Nerijus TAUTVYDAS (user ID 84AIUB) and Mindaugas Švermickas (user ID GIWG7Z) on 15 January 2021.



| 1/16/2021 07:19:24 a.m. | GIWG7Z | | 84AIUB, GIWG7Z |
|---|---|---|---|

*Translation from Lithuanian*



| 1/16/2021 07:44:03 a.m. | GIWG7Z | | 84AIUB, GIWG7Z |
| 1/16/2021 1:50:22 p.m. | GIWG7Z | | 1/16/2021 1:26:34 p.m. |



*Translation from Lithuanian*



| | | | |
|---|---|---|---|
| 1/16/2021 1:50:35 p.m. | GIWG7Z | | 1/16/2021 1:29:58 p.m. |
| 1/16/2021 1:52:49 p.m. | GIWG7Z | | 1/16/2021 1:38:12 p.m. |



*Translation from Lithuanian*



| 1/16/2021 1:53:06 p.m. | GIWG7Z | | 1/16/2021 1:39:05 p.m. |
|---|---|---|---|

23. While carrying out the smuggling of the narcotic substances, it was noticed in the territory of Latvia that the granite slabs, wherein the narcotic substances were hidden, were broken. Nerijus TAUTVYDAS organized the production of new hiding places in Lithuania. After new hiding places were made, they were transported to Latvia to which he went as well.

SPECIFIC MESSAGES FROM SKY:

*Photos and messages by Nerijus Tautvydas (user ID: GBK4VE) sent to Aleksandrs Zaicevs (user ID: 8TEQ9H) on 3 February 2021:*



| 02/03/2021 02:26:49 p.m. | GBK4VE | | 8TEQ9H, GBK4VE |
|---|---|---|---|

*Translation from Lithuanian*



| 02/03/2021 02:28:40 p.m. | GBK4VE | | 8TEQ9H, GBK4VE |

*(Nerijus Tautvydas asks Aleksandrans Zaicevs which slabs need to be replaced).*

    24. The investigation has established that it was UAB Akmenstata that produced the granite slabs in which cavities had been cut out to hide the narcotic substances (974,953 g of cannabis resin (hashish) that was seized in the Republic of Latvia on 12 March 2021). The production of the granite slabs was organized by Nerijus TAUTVYDAS and Mindaugas Švermickas, who, in the ACA, were responsible for disguising narcotic substances and hiding them in a cargo. This fact is confirmed by the witness Ramūnas Pėčia. Ramūnas Pėčia, Head of UAB Akmenstata, stated that in the winter, about two years ago, he was approached by his neighbor Tadas Valeckas asking if he had stone for sale. He was told that a large amount was needed. The neighbor introduced him to two men. One was about 40 years old, about 1.75 m tall, chunky, short haircut, no beard, no mustache, no glasses, no special features that he could notice. The second one was taller, about 1.90 – 1.95 m tall, with an athletic build, perhaps also about 40 years old.

    25. During the investigation, following these explanations by the witness, the act of identifying a person based on his photograph was performed, during which the witness Raimundas Pėčia recognized Mindaugas Švermickas (a shorter man) and Nerijus TAUTVYDAS (a taller man) as the persons about whom he was testifying.



*Translation from Lithuanian*



     The photo depicts the witness Ramūnas Pėčia who recognized Nerijus TAUTVYDAS (a taller man) as a person about whom he testified.

     26. The witness Ramūnas Pėčia confirmed that a couple years ago this person bought from UAB Akmenstata run by him a large quantity of granite slabs that would not crumble in the cold and could be exposed to environmental factors. The case-file shows that the granite slabs in which the cavities had been cut out were used to conceal narcotic substances (974 953 g of cannabis resin (hashish)), which were seized in the Republic of Latvia on 12 March 2021. The witness Ramūnas Pėčia testified that when he met the men, as he found out during the identification procedure that they were Mindaugas Švermickas (the shorter man) and Nerijus TAUTVYDAS (the taller man), they told him what they needed, i. e. a large quantity of granite slabs, 2 cm wide, that would not crumble in the cold and could be exposed to environmental factors. The witness had to sell the granite that was suitable for them. The witness explained that these persons (Mindaugas Švermickas and Nerijus TAUTVYDAS) asked him if UAB Akmenstata could process the granite slabs by cutting a cavity along the entire length of a slab according to the specified dimensions. The cavities were cut out. The customers paid in cash in several installments.

     27. After carrying out a search of UAB Akmenstata on 22 November 2022, the company's documents were seized. These documents will be used to establish the facts (evidence) related to the sales of granite slabs for the winter/spring period of 2021, other information relevant to the investigation.

*Translation from Lithuanian*

28. During the interview, Tadas Valeckas named by the witness Ramūnas Pėčia confirmed the circumstances surrounding the actions of Nerijus TAUTVYDAS and Mindaugas Švermickas related to the commission of this criminal offense, he indicated that he was aware of "the group *Džerkiniai*".

29. Tadas Valeckas is a suspect. He explained that he knew Nerijus TAUTVYDAS and Mindaugas Švermickas. He heard from other persons in Elektrėnai (where he currently lives) that since a long time ago, maybe since 2012, or even earlier, cannot specify, Mindaugas Švermickas and Nerijus TAUTVYDAS had belonged to a Kaunas-based group called *Džerkiniai*. He cannot say who exactly belonged to this group. The suspect explained that before the New Year of 2021, Mindaugas Švermickas called him and asked to meet him near the Abromiškės Manor. When he arrived, Mindaugas was not alone. He was accompanied by a man, about 40 years old, short, with no beard, no mustache, no glasses. During the conversation, Mindaugas Švermickas asked his advice on the transportation of marble products from the Czech Republic to Russia. He explained the situation that a driver had left the Czech Republic with marble products and had failed to mark something, that he needed some kind of certificate and that he had not arrived somewhere, or that there was something wrong with a declaration, cannot remember the exact problem. Tadas Valeckas made a phone call to customs clearance agents he knew. He does not remember how this conversation ended. Around the same time, Mindaugas Švermickas asked him which border checkpoint was the best to cross for a truck which drove from Europe to Russia. Next time, Mindaugas Švermickas approached Tadas Valeckas a little later, possibly on 31 December 2020. During the meeting, he asked for a permission to park a trailer within the territory of UAB Elspeda at Ateities st. 10, Vievis. Later, Mindaugas Švermickas asked to lend a truck to transport the trailer to the territory of UAB Elspeda. He explained that the truck DAF, state registration plate number: JZZ170, owned by UAB Elspeda, was driven by Artūras Labenskas who brought it to the territory of UAB Elspeda. Tadas Valeckas indicated that once he and Mindaugas Švermickas went somewhere by the car Lexus, state registration plate number: JSD 010. At the request of Mindaugas Švermickas, they went to some parking site outside the territory of UAB Elspeda and Mindaugas Švermickas took photos of the trailer from his front passenger seat. This trailer was parked within the territory of UAB Elspeda till the end of January 2021. Around the same period, Tadas Valeckas was contacted by Mindaugas Švermickas requesting to introduce him to Raimundas Pėčia related to UAB Akmenstata. Mindaugas Švermickas requested him to ask if UAB Akmenstata had some kind of stone, maybe granite, maybe marble, gray or black, he does not remember exactly. He mentioned that there was some problem with their marble slabs. After which Tadas Valeckas introduced Mindaugas Švermickas and Nerijus TAUTVYDAS to Raimundas Pėčia. He did not participate in their conversations, did not hear what they were discussing. He does not know and was not interested in what Mindaugas Švermickas, Nerijus TAUTVYDAS and Raimundas Pėčia did with that stone, what issues they were dealing with as regards that stone. Mindaugas Švermickas approached Tadas Valeckas again and requested him to ask Raimundas Pėčia if UAB Akmenstata still held papers (documents) relating to the acquisition of the stone or any work done, what would be related to the fulfillment of their (M. Švermickas and N. TAUTVYDAS) order.

30. In the course of criminal intelligence (Official Report No. 38-2(DS)-5632-RN dated 18 November 2022 issued by an officer of the Third Serious and Organized Crime Investigation Board of the Lithuanian Criminal Police), information has been obtained that on 24 January 2021, Artūras Liubauskas, a driver found by Egidijus Jančys and Vaidotas Jančys, drove the truck Volvo FM 400, state registration plate number: LRO 403, and the semi-trailer Schmitz S.PR 24-13.62, state registration plate number: DP 810, containing a cargo of granite slabs, wherein the narcotic substances were hidden, to the Republic of Latvia. Artūras Liubauskas was under the supervision of a person appointed by Egidijus Jančys and Vaidotas Jančys. An inspection of the cargo carried out before crossing the Latvian-Russian border revealed that the granite slabs used to conceal the narcotic substances had been damaged, making the narcotic substances visible. It was decided to use rock prod-

*Translation from Lithuanian*

ucts acquired from UAB Akmenstata to produce new hiding places to disguise narcotic substances. On 6 February 2021, Artūras Liubauskas, using the truck Volvo FH, state registration plate number: LPL 297, brought the semi-trailer Schmitz S01, state registration plate number: HJ 606, from Egidijus Jančys and Vaidotas Jančys to Vievis and left it at the entrance of UAB Elspeda at Ateities st. 10, Vievis. On 23 February 2021, Artūras Liubauskas, using the truck Volvo FH, state registration plate number: LPL 297, took the semi-trailer Schmitz S01, state registration plate number: HJ 606, from Vievis and brought it to the Republic of Latvia where the narcotic substances were repackaged in new hiding places made of granite slabs and loaded into the semi-trailer Schmitz S01, state registration plate number: HJ 606. The criminal intelligence investigation has established that Artūras Liubauskas and Alvydas Šležas, who was directly instructed by Egidijus Jančys and Vaidotas Jančys, arrived in the Republic of Latvia several times at the truck Volvo FM 400 FH 400, state registration plate number: LRO 403, and the semi-trailer Schmitz S.PR 24-13.62, state registration plate number: DP 810, containing a cargo of granite slabs in which narcotic substances were hidden. On 12 March 2021, Artūras Liubauskas was arrested while driving the truck Volvo FM 400, state registration plate number: LRO 403, and the semi-trailer Schmitz S.PR 24-13.62, state registration plate number: DP 810, in which 970 kg of the narcotic substance (hashish) was found and withdrawn from illicit circulation.

31. The actions of the pre-trial investigation were continued, which led to the discovery of the following new and significant circumstances relating to this criminal offense.

32. On 12 November 2022, the suspects Vaidotas Jančius, Egidijus Jančius and Alvyda Šliažas were arrested in the Republic of Lithuania, a measure of restraint of arrest was imposed on them.

33. After new hiding places had been produced by UAB Akmenstata, they were taken to Latvia to which Nerijus TAUTVYDAS also went.

34. In Latvia, Nerijus Tautvydas inspected the semi-trailer used for drug smuggling and being convinced that there was no equipment allegedly used by law enforcement authorities, organized the transportation of the semi-trailer to the premises rented.

35. In the rented premises, Nerijus Tautvydas, together with the accomplices, smashed granite slabs in which narcotic substances were hidden, re-vacuumed the narcotic substances, and transferred them into new hiding places made in Lithuania from granite slabs acquired there (all this is confirmed by totality of data: the investigative actions carried out by the Latvian officials – hiding places found during searches where the narcotic substances were transported, and, as mentioned, the analysis of SKY data).

36. Nerijus Tautvydas and his accomplices were constantly sending photos of slabs masked with narcotic substances inside, of narcotic substances, and of vehicles used to smuggle narcotic substances through the means of communication used in the Sky Ecc system. The packing of narcotic substances sent by Nerijus Tautvydas and accomplices are identical to the packing of narcotic substances seized in Latvia on 12 March 2021.

37. As stated above, when executing the European Investigation Order (EIO) issued by a competent authority of the Republic of Lithuania, the material and information were obtained from the authorities of the Republic of Latvia. It was indicated in the said information that on 12 March 2021 a very large quantity of narcotic substances, i.e. 974,953 g of cannabis resin (hashish), was seized by Latvian police officers, leading to the opening of criminal proceedings No. 11815001221 in the Republic of Latvia.

38. During the pre-trial investigation being conducted in Lithuania, on 26 May 2021 a prosecutor applied to Latvian authorities with a EIO regarding the submission of some data (evidence) existing in the investigation being conducted in Latvia. On 8 August 2021, Latvian officials submitted material and expert examination reports on narcotic substances for the execution of the EIO (Report No. 2103059 dated 25 March 2021).

*Translation from Lithuanian*

39. A total of 36 examinations of narcotic and psychotropic substances was ordered by a chief inspector of Main Criminal Police Department of the State Police of the Republic of Latvia with the instruction to determine whether the substances of unknown origin found in the Volvo truck on 12 March 2021 contain narcotic or psychotropic substances.

40. After carrying out the examinations, a total of 36 experts of the Forensic Science Department of the State Police of the Ministry of the Interior of the Republic of Latvia issued reports establishing that the substances submitted for the expert examinations were cannabis (hashish).

41. The entire quantity of the narcotic substances found and seized during the searches was submitted to experts. The experts examined narcotic substances in parts, resulting in 36 separate expert examination reports on narcotic substances. The expert examinations were carried out by Olga Čuhrova, Chief Expert of Chemical Examination Division of Forensic Science Department of the State Police of the Ministry of the Interior of the Republic of Latvia. Qualifications: Forensic Expert Certificate No. 2015040017 authorizing chemical forensic examinations in the field of examination of narcotic and psychotropic substances; Katrina Sudmalė, Expert of Chemical Examination Division of Forensic Science Department of the State Police of the Ministry of the Interior of the Republic of Latvia, Forensic Expert Certificate No.1715040082 authorizing chemical forensic examinations in the field of examinations of narcotic and psychotropic substances; Inesė Ivanova, Expert of Chemical Examination Division of Forensic Science Department of the State Police of the Ministry of the Interior of the Republic of Latvia. Qualifications: Forensic Expert Certificate No. 2015040004 authorizing chemical forensic examinations in the field of examinations of narcotic and psychotropic substances; Kristinė Krūminia, Expert of Chemical Examination Division of Forensic Science Department of the State Police of the Ministry of the Interior of the Republic of Latvia. Qualifications: Forensic Expert Certificate No. 1915040052 authorizing chemical forensic examinations in the field of examination of narcotic and psychotropic substances; Žanna Mališa-Koptenkova, Expert of Chemical Examination Unit of Forensic Science Department of the State Police of the Ministry of the Interior of the Republic of Latvia, Forensic Expert Certificate No. 1715040166 authorizing chemical forensic examinations in the field of examinations of narcotic and psychotropic substances.

42. The data underlying the suspicions against Nerijus TAUTVYDAS for having committed offense No. 2 are accompanied by a chronology of relevant events **(Enclosure No. 3 (b))**.

## Offense No. 3

43. Nerijus TAUTVYDAS is also suspected of the following: he, as one of the organizers and members of the armed criminal association *Džerkiniai*, for mercenary reasons, with the aim of profiting from the crimes committed by the members of the criminal association, encouraging other members of the criminal association to commit crimes and receiving criminal profit from their commission, acting together with Džeraldas Paulauskas, the head of the said association, and the members Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis as well as Titas Ramanauskas, Darius Palinauskas, Vaidas Filipavičius not belonging to the criminal association and other persons currently being identified during the pre-trial investigation, within the period from 24 November 2020 to 9 October 2021, organized the unlawful acquisition of a very large quantity of the narcotic substances – cannabis resin (hashish) in the Kingdom of Spain, the unlawful transportation of the narcotic substances from the Kingdom of Spain through the territory of the European Union states to the Republic of Poland, and from there to the Russian Federation, by hiding the narcotic substances in trucks and other vehicles, as well as the unlawful handling of a very large quantity of the narcotic substances in the Russian Federation.

44. According to the material of the pre-trial investigation, with a view to committing individual offenses, Jonas Sirvydas, Liutauras Nemeikšis and other persons, i. e. non-members of the

*Translation from Lithuanian*

ACA (Vaidas Filipavičius, Titas Ramanauskas, Darius Palinauskas), were engaged in the activities of the ACA *Džerkiniai* organized by Dž. Paulauskas, N. TAUTVYDAS, V. Raudonis and led by D. Paulauskas from 2014 to the end of 2022. When participating in the activities of the ACA, J. Sirvydas paid into a shared fund, followed the instructions of Dž. Paulauskas, N. TAUTVYDAS, V. Raudonis, organized and committed together with them the crimes described below.

45. Criminal actions of N. TAUTVYDAS are proven by the evidence in the case.

46. During the interview, the witness Jaroslaw Jaskowski testified that, in the period from 26 June 2015 to 7 December 2016, he transported 9 t 100 kg of hashish in total for *Džerkiniai* in 16 trips from the Kingdom of Spain to the Netherlands, and he used to bring back the money for the hashish sold. The first and second cargos consisted of 200 kg of hashish each (2 pallets). Subsequently, four pallets of hashish (400 kg each) were transported, followed by six pallets of hashish (600 kg each). J. Jaskowski received EUR 20,000 for each trip. Drivers were paid EUR 500 for each transportation of money. He paid the drivers EUR 7 000 for each transportation of hashish. *Džerkiniai* and the drivers told him that N. TAUTVYDAS and V. Raudonis were always involved in the loading/unloading of hashish in Spain and money in the Netherlands. In addition to the Lithuanians, other persons were also involved in the activities, i.e. Artur Kozlowski, drivers Slawomir Stefanski and Rafal Slawinski, a Dutch, Moroccan, Greek. Trucks with semi-trailers were used, including a DAF truck with a Chereau semi-trailer. A. Kozlowski coordinated everything during the first and second trips. Later, A. Kozlowski told him that he would not do this anymore and organized a meeting in Poland with *Džerkiniai*. Dž. Paulauskas, N. TAUTVYDAS and V. Raudonis used to meet with J. Jaskowskis. At their direction and expenses, J. Jaskowski bought a semi-trailer Chereau in Holland (there should be an invoice dated 21 October 2015 on the case-file), where a hiding place was later set up in the floor in Lithuania. It had a capacity of 400-500 kg of hashish. There were many meetings in Poland and Lithuania, as well as in Spain and Holland. One of such meetings took place on 10 October 2016 in Augustów, Poland, during which N. TAUTVYDAS gave him EUR 200,000. Dž. Paulauskas and N. TAUTVYDAS were there. *Džerkiniai,* for conspiracy purposes, did not use any means of transport, except for cars, and only used encrypted mobile phones. Dž. Paulauskas used cars bearing state registration plates of the Russian Federation.

47. On 26 December 2022, the Prosecutor General's Office of the Republic of Lithuania sent a European Investigation Order (EIO) to the Republic of Poland regarding the submission of copies of pre-trial investigation No. RP II Ds 8.2021. A copy of the case-file of pre-trial investigation No. RP II Ds 8.2021 was received from Poland for the execution of the above EIO.

48. On 12 May 2021, the Prosecutor General's Office of the Republic of Lithuania referred to the Republic of France with the EIO for the acquisition of the SKY Ecc data. The law enforcement of France executed the Lithuanian EIO and provided the Lithuanian law enforcement with the requested data on communication between Dž. Paulauskas, N. TAUTVYDAS, V. Raudonis, R. Lapinskas through the Sky Ecc system.

49. The official report issued by Tadas Gudjonis, Chief Investigator of the First Division of the Third Serious and Organized Crime Investigation Board of the Lithuanian Criminal Police, states that during the pre-trial investigation, information on the identification data (PINs) of communication devices used in the Sky Ecc system by Džeraldas Paulausas, Valdemaras Raudonis, Nerijus TAUTVYDAS, Ramūnas Lapinskas have been obtained. To obtain data transmitted and received by the end-devices used by these persons in the Sky Ecc system, a EIO was sent to law enforcement authorities of the Republic of France. The law enforcement authorities of the Republic of France submitted the requested information.

50. The inspection of the data obtained from law enforcement authorities of the Republic of France has revealed that Džeraldas Paulauskas, Valdemaras Raudonis, Nerijus TAUTVYDAS and Ramūnas Lapinskas regularly used the Sky Ecc encrypted electronic communication system to communicate with each other and with other persons. Using the Sky Ecc system, they sent text and

*Translation from Lithuanian*

voice messages, photos and extracts of correspondence to each other and to identified and unidentified accomplices.

51. The inspection of the files listed (correspondence texts, photos (of persons, surroundings, notes, documents, etc.), voice messages (by listening), excerpts of correspondence) has revealed that:

- **Džeraldas Paulauskas** used accounts on the Sky Ecc system with the following user IDs: 8AAO3A, A4U4QS, D5LV4T, 756B27. **Username** used by Džeraldas Paulauskas is **Toto**;
- **Nerijus TAUTVYDAS** used accounts on the Sky Ecc system with the following user IDs: 84AIUB, GBK4VE, KJ78AV. While inspecting the data sent and received by Džeraldas Paulauskas in the Sky Ecc system, it has been established that N. TAUTVYDAS additionally used a device in the Sky Ecc system belonging to his partner Gintarė Granickaitė, born in 1983, user ID: ID D1BEUX. **Username** used by Nerijus TAUTVYDAS is **Designo.** N. TAUTVYDAS is also known by his accomplices in the Sky Ecc system as **Dodo.**
- **Valdemaras Raudonis** used accounts on the Sky Ecc system with the following user IDs: SNJ2Q4, VM4CRA, MUSHB9. **Username** used by Valdemaras Raudonis is **Vova.**
- **Ramūnas Lapinskas** used accounts on the Sky Ecc system with the following user IDs: W9S5D1. **Usernames** used by Ramūnas Lapinskas are **Chicago, Žvėris.**

52. On 9 May 2022, the Prosecutor General's Office of the Republic of Lithuania referred to the Republic of France with the EIO for the acquisition of the SKY Ecc data. The law enforcement of France executed the Lithuanian EIO and submitted data to Lithuanian law enforcement on communication of J. Sirvydas using the Sky Ecc system.

53. The inspection of the files, i. e. correspondence texts, photos (of people, surroundings, notes, documents, etc.), voice messages (by listening), extracts of correspondence obtained from a virtual repository of the Republic of France named "Exécution CR JI-507-1-22-488-1140 (Lituanie)", carried out by the record of inspection dated 11/10/2022 on the basis of the EIO, has revealed that Jonas Sirvydas used accounts on the Sky Ecc system with the following user IDs: K4102G and T7TKIT. Username used by Jonas Sirvydas is "Did". Jonas Sirvydas is also known by other users as "Didelis", he also introduced himself by that name.

54. While inspecting the correspondence, a text message sent by Jonas Sirvydas (user ID: K4102G) to Nerijus TAUTVYDAS (user ID: 84AIUB) on 15 December 2020 has been established: 2020-12-15 21:21:52 K4102G evelina.indriliunaite@gmail.com 84AIUB, K4102G. (*Jonas Sirvydas sends the email address of his cohabiting partner Evelina Indriliūnaitė to Nerijus TAUTVYDAS).* This information not only confirms the close relationship between the accomplices, but also the fact that they used other people's e-mails, rather than their personal e-mails, to communicate with each other and to transmit larger volumes of data (documents). This was done to conceal their mutual acquaintance and close communication.

55. The inspection of the correspondence has also revealed that on 22 January 2021 Jonas Sirvydas (username: K4102G) sent photos of packages of cannabis resin (hashish) and text messages offering to buy hashish to various contacts (accomplices). An indication of where the loading of cannabis resin (hashish) would take place in the Kingdom of Spain was also provided.



*Translation from Lithuanian*








*Translation from Lithuanian*



56. In the correspondence of J. Sirvydas, around a tonne of cannabis in Germany, cocaine in Norway and other drugs have also been offered to his accomplices for purchase.




57. The evidence provided points to the conclusion that V. Sirvydas, as a member of the ACA *Džerkiniai,* has a consistent criminal history of unlawful possession of narcotic substances for the benefit of the ACA.

58. It has also been established during the inspection that Jonas Sirvydas, together with accomplices, organized the smuggling of narcotic substances from the Kingdom of Spain to the Republic of Poland and from there to the Russian Federation via the Republic of Belarus in the period of 2021 (until the arrest that took place on 9 October 2021)

59. Jonas Sirvydas, for this purpose, communicated with accomplices currently being identified who used end-devices on the Sky Ecc system with user IDs: ID F4VXED, RM9RTM, MQVHSL, JPR76I, HVQRIJ, 2V7LTV, RE8168, CJHI53, SI9IP5, also with Liutauras Nemeikšis, d. o. b. 18 May 1989 (user ID: PDION2), Darius Palinauskas, d. o. b. 12 November 1982 (user ID: C90MT2), Vaidas Filipavičius, d. o. b. 18 December 1973 (user ID: 7DTM1A). Jonas Sirvydas was

*Translation from Lithuanian*

responsible for acquiring the narcotic substances in Spain, bringing them to Poland, storing them in Poland and arranging for their transfer to long-distance driver Darius Palinauskas; Vaidas Filipavičius was responsible for picking up the narcotic substances brought from Spain in Poland, storing them in Poland and transferring them to Darius Palinauskas for transportation to the Russian Federation; Darius Palinauskas was responsible for the transportation of the narcotic substances from the Republic of Poland to the Russian Federation using a truck with a semi-trailer for transporting livestock, in which the narcotic substances, i. e. cannabis resin (hashish), were loaded.

60. The correspondence that was carried out using devices in the Sky Ecc system contain data on the process of acquisition and transportation of the narcotic substances, the actions of the accomplices at the time the offenses were committed. These data were confirmed by Polish offices during pre-trial investigation No. 1001-102.DS.14.2021. These data were obtained from the hotel where V. Filipavičius had stayed, from the petrol station SHELL Polska SP z.o.o. at ul. Nowoslawy Dolne 140, Dmosin, within the territory of which a very large quantity of the narcotic substance – cannabis resin (hashish) was reloaded from a vehicle currently being identified to the truck DAF XF480FT, state registration plate number: KHJ 035, with the semi-trailer Pezzaioli SBA 3, state registration plate number: MP 643, driven by Palinauskas and T. Ramanauskas, i. e. 110 kg was reloaded on 24 February 2021, 125 kg was reloaded on 9 March 2021, whereas 244 kg of hashish was reloaded on 9 October 2021 (see photo below).



61. It should be noted that J. Sirvydas committed all crimes as a member of the ACA *Džerkiniai* and part of the profit derived from these activities was placed into a shared fund held by the ACA.

62. On 22 September 2022, the Prosecutor General's Office of the Republic of Lithuania sent a EIO to the Republic of Poland requesting for the transfer of copies of the case-file of pre-trial investigation No. 1001-102.DS.14.2021. The said EIO was executed and a copy of the said case-file was transferred to the Republic of Lithuania.

63. When questioned in pre-trial investigation No. 1001-102.DS.14.2021, Darius Palinauskas testified that he and Titas Ramanauskas started to participate in drug smuggling in 2021, transported them three times, the last of which was in October 2021 when they were detained by Polish officers. The drugs were always packaged in bags and packets. He had to deliver the drugs to the Russian Federation. The man who recruited him to transport the drugs gave him a phone with an encrypted

*Translation from Lithuanian*

contact app, which they used to keep in touch. He changed phones about four times, always getting them from the same person – the customer. He used to receive EUR 150 for transporting a kilo of smuggled drugs.

64. When questioned in pre-trial investigation No. 1001-102.DS.14.2021, Titas Ramanauskas provided similar testimony and supplemented that he was hired by D. Palinauskas to transport the drugs. He transported the drugs in a DAF truck with a semi-trailer for transporting animals. He received EUR 4 000 for all the journeys.

65. On 9 October 2021, during a search of the truck DAF XF480FT, state registration plate number: KHJ 035, with the semi-trailer Pezzaioli SBA 3, state registration plate number: MP 643, driven by Darius Palinauskas and Titas Ramanauskas, 14 sports bags were found in the cavities of the semi-trailer and seized. The bags contained packages wrapped in black foil that was soaked in the substance that smelled like gasoline.

66. The record of inspection of items dated 9 October 2021 states that 14 sports bags found in the truck DAF XF480FT, state registration plate number: KHJ 035, with the semi-trailer Pezzaioli SBA 3, state registration plate number: MP 643, were inspected. When they were opened, 122 rectangular packages were found inside, they were wrapped in foil and paper that smelled of gasoline. The packages were packed in transparent polythene and white polythene bags with inscriptions and graphics. Briquettes of plant material were also wrapped in a transparent film. During the inspection, weighing of 122 briquettes of plant material was carried out. Each package weighed approximately 2 kg and the total weight of the plant material was at least 244 kg.

67. According to Report No. KG-OS-VI-RBF.4380.69.2021 dated 11 October 2021 issued by Specialist Danuta Zaleszczyk, an expert in the field of physical and chemical examinations, the plant material submitted for examination is cannabis resin (hashish).

68. A comparison of the packages of the narcotic substances – cannabis resin (hashish) shown in the correspondence between D. Paulauskas and N. TAUTVYDAS in the SKY system, the packages seized during the arrest in the Republic of Latvia on 12 March 2021, and the packages seized during the arrest in the Republic of Poland on 9 October 2021 (pre-trial investigation No. 1001-102.DS.14.2021), has revealed that they are identical hashish packages with the same drawings and inscriptions on the packages, which, taking into account the material collected during the pre-trial investigation on the activities of the ACA *Džerkiniai* relating to the unlawful possession of very large quantities of the narcotic substances, leads to the conclusion that, in both cases, the hashish was obtained by the same persons (members of the ACA *Džerkiniai*) from the same source.






(packages of hashish found and seized during the arrest in the Republic of Poland on 9 October 2021)

*Translation from Lithuanian*





(packages of hashish found and seized during the arrest in the Republic of Latvia on 12 March 2021)

69. On 23 August 2020, Džeraldas Paulauskas (user ID: 8AAO3A) sent photos and text messages to Nerijus TAUTVYDAS (user ID: 84AIUB):

| Date, time | Sender | Message text | User ID |
| --- | --- | --- | --- |
| | | | |



*Translation from Lithuanian*



| | | | |
|---|---|---|---|
| 08/23/2020 07:35:01 a.m. | 8AAO3A | | 84AIUB, 8AAO3A |
| 08/23/2020 07:36:22 a.m. | 8AAO3A | | 84AIUB, 8AAO3A |

70. During a search of the place of residence of Džeraldas Paulauskas at Semaškos st. 42, Kaunas, carried out on 22 November 2022, among other items, a Samsung external drive was found and seized from a bedroom on the 2nd floor of the house. This disc contains photographs from 2008 onwards, depicting Dž. Paulauskas, N. TAUTVYDAS, V. Raudonis, J. Sirvydas, M. Švermickas and other persons related to the activities of the ACA on various occasions and in different compositions, in different countries. These photographs confirm the long-standing and close communication and constant contact between the organizers, leader and members of the ACA *Džerkiniai*.

*Translation from Lithuanian*



Džeraldas Paulauskas and Nerijus TAUTVYDAS (the first from left to right)



D. Paulauskas, N. TAUTVYDAS (the sixth from left to right), J. Sirvydas (the seventh from left to right) and other persons.



*Translation from Lithuanian*



N. TAUTVYDAS (the first from left to right) and J. Sirvydas.

*Translation from the Lithuanian language by Milda Vildžienė and Renata Stankūnienė, translators at Prosecutor's General Office, who was been warned about criminal liability for making false or deliberately misleading translation under Article 235 of the Criminal Code of the Republic of Lithuania.*

**Duomenų, kuriais grindžiami įtarimai Nerijui TAUTVYDUI, santrauka**

Nerijus TAUTVYDAS įtariamas tuo, jog organizavo „Džerkinių" ginkluotą nusikalstamą susivienijimą ir dalyvavo jo veikloje, neteisėtai disponavo labai dideliu narkotinių medžiagų kiekiu, organizavo narkotinės medžiagos kontrabandą

## Veika Nr. 1.

1. Pagal Lietuvos Respublikos baudžiamuosius įstatymus, dalyvavimas ginkluoto nusikalstamo susivienijimo (toliau - GNS) veikloje yra nusikalstama veika už kurią numatyta ilgalaikė laisvės atėmimo bausmė ar laisvės atėmimas iki gyvos galvos. GNS yra trijų ar daugiau asmenų grupė, susibūrusi nusikalstamai veikai – vienam ar keliems sunkiems arba labai sunkiems nusikaltimams – daryti ir yra pavojingiausia bendrininkavimo forma. Nusikalstamo susivienijimo narius sieja pastovūs tarpusavio ryšiai ir vaidmenų bei užduočių pasiskirstymas. Nusikalstamas susivienijimas kuriamas esant išankstiniam susitarimui, jam būdingas aukštas organizuotumo lygis, be formaliųjų (narių skaičius, tikslas, ryšiai ir kita), ir neformalieji požymiai (hierarchinė grupės struktūra, vadovavimas grupei, jos veiklos planavimas, pelno siekimas, disponavimas bendromis lėšomis, drausmės ir subordinacijos palaikymas bauginimu ar kitais būdais, ryšio ir kitų techninių priemonių naudojimas nusikalstamoje veikoje, fizinės ir psichinės prievartos panaudojimas, ginkluotės lygis ir kita). Nusikalstamas susivienijimas laikomas ginkluotu, jei turi bent vieną šaunamąjį ginklą ar sprogmenį arba tam tikrą kiekį sprogstamųjų medžiagų, kurių pakanka sprogimui, pavojingam žmonių gyvybei, sveikatai ar turtui, sukelti. Nusikalstamo susivienijimo organizavimas gali pasireikšti asmenų parinkimu, jų suvienijimu bendrai nusikalstamai veikai, funkcijų susivienijimo nariams paskirstymu, nusikalstamos veikos planų rengimu, ginklų, sprogstamųjų medžiagų, transporto, ryšio ar kitų techninių priemonių įgijimu ir kitais veiksmais. Vadovavimas nusikalstamam susivienijimui – tai grupės narių sutelkimas ir nukreipimas vykdyti konkrečius nusikaltimus, kiekvieno nario funkcijų nustatymas, užduočių paskyrimas ir įsakinėjimas kitiems nariams, vidinės tvarkos taisyklių laikymosi užtikrinimas, lemiamas žodis priimant naujus grupės narius ir sprendžiant kitus klausimus, pelno tarp nusikalstamo susivienijimo dalyvių skirstymas, bendrų lėšų panaudojimo klausimų sprendimas ir kita. Grupės vadovas gali dalyvauti nusikaltimuose ir kaip vykdytojas. Nusikalstamo susivienijimo organizatoriais ir vadovais gali būti pripažinti iš karto keli jo nariai. Nusikalstamo susivienijimo dalyviai, nepaisant jų vaidmens darant nusikalstamą veiką, atsako kaip vykdytojai.

2. Lietuvos kriminalinės policijos biuro Sunkaus ir organizuoto nusikalstamumo tyrimo 3-iojoje valdyboje (toliau - LKPB SONT 3-ioji valdyba) atliktas kriminalinės žvalgybos tyrimas dėl ginkluoto nusikalstamo susivienijimo, neteisėto disponavimo narkotinėmis ir psichotropinėmis medžiagomis labai dideliais kiekiais, jų kontrabandos organizavimo, kitų jų vykdomų sunkių ir labai sunkių nusikalstamų veikų. Šio kriminalinės žvalgybos tyrimo išsamūs rezultatai aprašyti tyrimą atlikusio pareigūno tarnybiniuose pranešimuose (2021-04-23 Nr. 38-2(DS)-2162-RN ir 2022-10-24 Nr. 38-2(DS)-5246-RN).

3. Pirmoji informacija policijos pareigūnų gauta 2014 m. apie tai, kad Lietuvoje susiformavo ir tarptautiniu mastu pradėjo veikti „Džerkinių" pavadinimu žinomas GNS, kuris buvo suburtas siekiant pelnytis iš nusikalstamos veiklos – tarptautinės prekybos labai dideliais kiekiais narkotinių medžiagų (kokaino, hašišo ir kitų), taip pat siekiant įgauti įtaką tarp kitų konkuruojančių nusikalstamų grupuočių.

4. Kriminalinės žvalgybos tyrimo metu nustatyta, kad GNS, organizavo Lietuvos Respublikos piliečiai Džeraldas Paulauskas pravarde „Džerka", gim. 1968-03-18, Valdemaras Raudonis pravarde „Valdelis", „Senis", gim. 1961-12-24, ir Nerijus TAUTVYDAS pravarde „Prancūzas", „Šlanga", gim. 1984-06-06, GNS vadovu tapo D. Paulauskas, o N. TAUTVYDAS ir V. Raudonis buvo artimiausi jo pagalbininkai, kurie į GNS veiklą skirtingais etapais įtraukė vis naujus asmenis (šiuo metu įtarimai dėl vadovavimo GNS ir dalyvavimo GNS veikloje pareikšti 13 asmenų). Minėti

GNS lyderiai ir kiti dalyviai jiems inkriminuojamu 2014-2022 metų veiklos laikotarpiu neteisėtai disponavo labai dideliais kiekiais narkotinių ir psichotropinių medžiagų, įtariami padarę jų kontrabandą į Lietuvos Respubliką ir iš jos, taip pat įtariami padarę kitus sunkius ir labai sunkius nusikaltimus.

5. Darydami nusikaltimus, GNS lyderiai bendrininkavo su nusikalstamo pasaulio atstovais iš Ispanijos Karalystės, Libano Respublikos, Vokietijos Federacinės Respublikos, Nyderlandų Karalystės, Čekijos Respublikos, Latvijos Respublikos, Lenkijos Respublikos, Rusijos Federacijos. Minėto GNS veiklos teritorija apėmė tokias valstybes kaip Ispanijos Karalystė, Libano Respublika, Vokietijos Federacinė Respublika, Nyderlandų Karalystė, Čekijos Respublika, Latvijos Respublika, Lenkijos Respublika, Norvegijos Karalystė, Rusijos Federacija bei kitas. Darydami nusikaltimus, GNS dalyviai naudojo jūrinį ir kelių transportą, priedanginius krovinius, įvairias slėptuves. Laikydamiesi griežtos konspiracijos, tarpusavio ryšio palaikymui GNS dalyviai naudojo kriptuotą (šifruotą) ryšį užtikrinančiomis ryšio priemonėmis. GNS veiklos apsaugai nuo konkuruojančių nusikalstamų grupuočių D. Paulauskas, N. TAUTVYDAS ir V. Raudonis buvo įgiję ir neteisėtai iki 2022-11-22 disponavo šaunamaisiais ginklais ir šaudmenimis, iš kurių kratos metu, atliktos 2022-11-22 vieno iš GNS narių įtariamojo Ramūno Lapisko garaže, esančiame Dambavoje, Panevėžio rajone, Lietuvoje, buvo aptikti du pistoletai ir 9 mm kalibro Luger tipo šaudmenys.

6. Nusikaltimų darymui GNS dalyviai disponavo „bendra kasa", kurios lėšos buvo naudojamos narkotinių medžiagų įgijimui, kitoms su nusikalstamos veiklos darymu susijusioms išlaidoms padengti, ryšio priemonėms, ginklams įgyti ir pan. Kriminalinės žvalgybos tyrimo metu (policijos pareigūno išsami ataskaita 2022-10-24 tarnybiniame pranešime Nr.38-2(DS)-5246_RN) nustatyta, jog GNS nariai mokėjo fiksuotą pinigų sumą į GNS kasą (nario mokestį) ir tam tikrą dalį nuo pelno gaunamo iš nusikalstamos veiklos. GNS narių surinkti pinigai buvo naudojami Lietuvoje ir užsienyje sulaikytiems GNS nariams užtikrinti teisinę gynybą, įkalinimo bausmes atliekantiems GNS nariams siunčiami į įkalinimo įstaigas pragyvenimui, taip pat pinigai perduodami laisvės atėmimo bausmes įkalinimo įstaigose atliekančių GNS narių šeimos nariams jų pragyvenimui ir pan. Turimais kriminalinės žvalgybos duomenimis „nario mokestis" buvo renkamas kas mėnesį arba kas metus. Džeraldas Paulauskas asmeniškai domėjosi kokie nariai ir kaip moka pinigus į GNS kasą, nesumokėjusius paragindavo tai daryti. Įnašus mokėjo ir GNS lyderiai Džeraldas Paulauskas, Valdemaras Raudonis, Nerijus TAUTVYDAS.

7. Taip, ikiteisminio tyrimo surinktais duomenimis, pirminiame GNS veiklos etape 2015-2016 metų laikotarpiu „Džerkos" GNS dalyviai, bendrininkaudami su Ispanijos Karalystės, Nyderlandų Karalystės ir Lenkijos Respublikos nusikalstamo pasaulio atstovais, iš Ispanijos Karalystės į Nyderlandų Karalystę pergabeno apie 9 t 100 kg kanapių dervos (hašišo) bei atgal į Ispanijos Karalystę gabeno pinigus už realizuotą hašišą. Šias aplinkybes, be kitų duomenų, patvirtino ir liudytoju apklaustas Jaroslaw Jaskowski. Vėlesniu laikotarpiu GNS vadovai ir dalyviai gabeno realizavimui narkotines medžiagas iš Ispanijos Karalystės, Libano Respublikos į Rusijos Federaciją, Norvegijos Karalystę. Ikiteisminio tyrimo duomenimis, būdami GNS organizatoriais ir lyderiais, D. Paulauskas, N. TAUTVYDAS ir V. Raudonis pelnėsi iš visų šio susivienijimo padarytų nusikaltimų, visi daromi nusikaltimai buvo su jais derinami, planuojami, kontroliuojama jų eiga.

8. Minėtos GNS narių atžvilgiu taikyti kompleksiniai tyrimo veiksmai: pagal Lietuvos Respublikos teisėsaugos institucijų Europos tyrimo orderius Prancūzijoje (Dž. Paulasko, O. Kravčenkos), Norvegijoje (M. Švermicko), Ispanijoje (R. Lapinsko) vykdytas asmenų sekimas; tuo pačiu ir minėtų asmenų telefoninių pokalbių, kitos elektroninėmis ryšio priemonėmis perduodamos informacijos turinio kontrolė; asmenų fiksuotų pokalbių įvairiuose patalpose, transporto priemonėse kontrolė; patalpų, teritorijų, transporto priemonių apžiūra; iš Lietuvos ir kitų šalių teisėsaugos institucijų bei ūkio subjektų gaunamos informacijos analizė. Atsižvelgiant į tai, kad dauguma GNS narių gyveno užsienio valstybėse, buvo vykdoma (gavus teismo leidimą) jų artimųjų elektroninėmis ryšio priemonėmis perduodamos informacijos turinio kontrolė ir jos kaupimas, siekiant nustatyti GNS narių judėjimą ir veiklas. Dalies GNS veikloje dalyvaujančių asmenų atžvilgiu atliekamo baudžiamojo persekiojimo Latvijos Respublikoje ir Lenkijoje metu gautos informacijos analizė ir panaudojimas identifikuojant GNS lyderius ir narius. Taip pat liudytojų Raimondo Pėčios, Tado Valecko ap-

klausos metu gauti duomenys, įtariamųjų Vaidoto Jančiaus, Egidijaus Jančiaus ir Alvydo Šliažo paaiškinimai, 2022-11-22 sulaikant GNS narius (tiek Lietuvos Respublikoje, tiek Prancūzijoje ir Ispanijoje) atliktų kratų metu išimti objektai, paskirtos užduotys atlikti objektų tyrimą, ir kiti duomenys, gauti vykdant teisinės pagalbos prašymus (toliau – TPP) ir Europos tyrimo orderius (toliau – ETO). Svarbu pažymėti ir tai, kad procesiniai veiksmai šiame ikiteisminiame tyrime nėra baigti, šiuo metu atliekamos sulaikytų GNS narių apklausos, tiriami kratų metu išimti objektai, atliekami kiti proceso veiksmai.

9. Šio tyrimo eigoje taip pat buvo nustatyta, jog GNS nariai ir jų šeimos daug laiko leido kartu, atostogavo, vieni kitus lankė ir taip betarpiškai keitėsi informacija.



Šeimos šventės fotonuotrauka – rožinė suknele Valdemaro Raudonio žmona, jai iš dešinės – Džeraldas Paulauskas.



2022-11-22 atliktos kratos metu  E. Švermickienės (M. Švermicko žmona) namuose Lietuvos Respublikoje, jos asmeniniame kompiuteryje rastos fotonuotraukos apie Švermickų lankymąsi Nicoje pas Džeraldą Paulauską (M. Švermickas – GNS narys, šiuo metu sulaikytas Norvegijoje).



Šioje nuotraukoje M. Švermickas Džeraldo Paulausko gyvenamoje vietoje Nicoje.



10. Prie duomenų, kuriais grindžiami įtarimai Nerijui TAUTVYDUI dėl Veikos Nr. 1, pridedama „Džerkinių" GNS narių hierarchinė struktūra **(Priedas Nr. 3 (a))**.

## Veika Nr. 2

11. Nerijus TAUTVYDAS taip pat įtariamas tuo, kad būdamas vienu iš GNS organizatorių ir dalyvių, veikdamas savo ir ginkluoto nusikalstamo susivienijimo dalyvių naudai, siekdamas nusikalstamai praturtėti iš nusikalstomos veiklos, organizavo neteisėtą disponavimą labai dideliu narkotinės medžiagos kiekiu; taip pat organizavo narkotinės medžiagos kontrabandą į Lietuvos Respubliką bei iš Lietuvos Respublikos.

12. Vykdant Lietuvos Respublikos kompetentingos institucijos išduotą ETO iš Latvijos Respublikos institucijų buvo gauta medžiaga bei informacija apie tai, kad Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst. Nr. LRO 403, su puspriekabėje „Schmitz S.PR 24-13.62", valst. Nr. DP 810, marmuro gaminių plokščių slėptuvėse paslėptu labai dideliu narkotinės medžiagos kiekiu, važiavo link Latvijos Respublikos – Rusijos Federacijos valstybės sienos, tai yra per Latvijos Respublikos teritoriją neteisėtai gabeno labai didelį narkotinių medžiagų kiekį - 974 953 g kanapių dervos (hašišo), kol 2021-03-12 5.30 val. Rygos mieste, Uriekstes iela 16, buvo sulaikytas Latvijos policijos pareigūnų.

13. Tai, kad Nerijus TAUTVYDAS padarė šias veikas, patvirtina tyrimo metu gauti duomenys.

14. ETO vykdymo metu iš Prancūzijos Respublikos buvo gauti koduota elektroninių ryšių perdavimo sistema „Sky Ecc" perduoti ir gauti asmenų bendravimo duomenys. Apžiūrima medžiaga iš Prancūzijos Respublikos virtualios duomenų saugyklos pagalba persiųstas aplankas pavadinimu „Exécution CR JI-507-1-22-488-1140 (Lituanie)".

15. Analizuojant „Sky Ecc" sistema siųstus duomenis, kurie baudžiamojoje byloje aprašyti 2021-11-18 SKY Ecc duomenų apžiūros protokole, nustatyta, jog Nerijus TAUTVYDAS su bendrininkais organizavo narkotinių medžiagų kontrabandą iš Libano į Čekiją ir iš Čekijos į Rusiją tranzitu per Lietuvą ir Latviją.

16. Nerijui TAUTVYDUI siųsta informacija apie tai, jog yra galimybė vykdyti narkotinės medžiagos – hašišo – kontrabandą iš Libano, siųstos narkotinių medžiagų nuotraukos (tai patvirtina duomenų visetas: narkotinių medžiagų, kurios nuotrauka siųsta Nerijui TAUTVYDUI, ir 2021-03-12 Latvijoje sulaikytų narkotinių medžiagų įpakavimai tokie patys).

KONKRETŪS PRANEŠIMAI IŠ SKY:

- 2020-08-09 Džeraldas Paulauskas (vartotojo ID 8AAO3A) siunčia tekstinius pranešimus Nerijui TAUTVYDUI (vartotojo ID 84AIUB):

*2020-08-09 Džeraldas Paulauskas informuoja Nerijų TAUTVYDĄ, kad greitu metu bus atsiųstos penkios tonos galimai narkotinės medžiagos – hašišo, iš kurių pusė (2.5 tonos) yra jų trijų ir jas reikės suvežioti.*

- 2020-08-23 Džeraldas Paulauskas (vartotojo ID 8AAO3A) siunčia nuotraukas ir tekstinius pranešimus Nerijui TAUTVYDUI (vartotojo ID 84AIUB):



| Date, time | Sender | Message text | User ID |
|---|---|---|---|
| 2020-08-23 07:35:01 | 8AAO3A |  | 84AIUB, 8AAO3A |
| 2020-08-23 07:36:22 | 8AAO3A |  | 84AIUB, 8AAO3A |

17. Analizuojant SKY Ecc nustatyta, kad Nerijus TAUTVYDAS su nusikalstamos veikos bendrininku Mindaugu Švermicku, gim. 1979-05-04, buvo atvykęs į Čekiją, Prahos miestą, kur tikrino iš Libano atvežtų narkotinių medžiagų kokybę. Patikrinęs narkotinių medžiagų kokybę nusprendė, jog pagal savo kokybines savybes narkotinės medžiagos Skandinavijos šalių rinkai netinka. Tokios kokybės narkotines medžiagas galima nugabenti (jos yra tinkamos) į Rusijos rinką. Apie savo priimtą sprendimą tiesiogiai informavo GNS lyderį Džeraldą Paulauską;

18. Nerijus TAUTVYDAS ir Mindaugas Švermickas buvo apsistoję kartu tame pačiame viešbutyje. Gyvendami viešbutyje naudojosi savo tikrais vardais.

19. Iš Čekijos teisėsaugos gauti duomenys patvirtina, kad Nerijus TAUTVYDAS ir Mindaugas Švermickas minėtu laikotarpiu apsigyveno tame pačiame viešbutyje, esančiame Prahos mieste (tai patvirtina duomenų visetas - registracijos dokumentai išimti iš Čekijos viešbučio ir, kaip minėta, SKY duomenų analizė).

KONKRETŪS PRANEŠIMAI IŠ SKY:

2020-12-08 Oleg Kravchenko (vartotojo ID R9SJMM) siunčia tekstinius pranešimus Nerijui TAUTVYDUI (vartotojo ID 84AIUB):

*Riccardo Marian Rotmann (Lenkas) SKY ECC naudojama ID – SD6ISX. Taip pat Oleg Kravchenko pasako, kad Nerijus TAUTVYDAS atvažiuotų į Čekiją, Prahos miestą ir susirašytų su Riccardo Marian Rotmann (Lenkas).*

- 2020-12-08 Riccardo Marian Rotmann (vartotojo ID SD6ISX) siunčia tekstinius pranešimus Nerijui TAUTVYDUI (vartotojo ID 84AIUB) patvirtinant buvimą Prahoje.

- 2020-12-08 Džeraldas Paulauskas (vartotojo ID D5LV4T) siunčia tekstinius pranešimus Mindaugui Švermickui (vartotojo ID GIWG7Z):

*Nerijus TAUTVYDAS ir Mindaugas Švermickas kartu atvyko į Čekiją, Prahos miestą, kur turėjo susitikti su Riccardo Marian Rotmann ir patikrinti narkotinių medžiagų kokybę. Džeraldas Paulauskas paaiškina Mindaugui Švermickui, jog Nerijus TAUTVYDAS pats susisiektų su Riccardo Marian Rotmann (Lenkas)).*

*- 2020-12-08 Riccardo Marian Rotmann (vartotojo ID SD6ISX) siunčia tekstinius pranešimus Nerijui TAUTVYDUI (vartotojo ID 84AIUB):*

| Data, laikas | Siuntėjas | Žinutės tekstas | Vartotojų ID |
|---|---|---|---|
| 2020-12-08 17:47:29 | SD6ISX | Please take any hotel in center.ones you in hotel please let me know and we meet Vertimas – Prašau paimti kokį nors viešbutį centre. Kai būsit viešbutyje, duokit man žinoti ir mes susitiksim) | 84AIUB, SD6ISX |
| 2020-12-08 17:47:48 | SD6ISX | I give you address later (vertimas – aš duosiu jums adresą vėliau) | 84AIUB, SD6ISX |

*Riccardo Marian Rotmann atsiunčia Nerijui TAUTVYDUI nuotrauką su nurodytu adresu, kur Nerijus TAUTVYDAS turi atvažiuoti Prahoje).*

*- 2020-12-09 Džeraldas Paulauskas (vartotojo ID D5LV4T) siunčia tekstinius pranešimus Nerijui TAUTVYDUI (vartotojo ID 84AIUB):*

*Džeraldas Paulauskas informuoja Nerijų TAUTVYDĄ, kad Riccardo Marian Rotmann (lenkas) vykdo narkotinių medžiagų iškrovimo/pakrovimo darbus. Džeraldas Paulauskas informuoja, kad narkotinės medžiagos yra 5 rūšių ir Riccardo Marian Rotmann (lenkas) atsiųs narkotinių medžiagų nuotraukas.*

*Tekstinėse žinutėse Džeraldas Paulauskas klausinėja Nerijaus TAUTVYDO apie narkotinės medžiagos – hašišo kokybę. Džeraldas Paulauskas parašo, kad narkotinių medžiagų forma yra bandelės („lepioška“) formos. Tikrinamos narkotinės medžiagos yra „Komers" rūšies („Komers" yra narkotinės medžiagos – hašišo rūšis). Džeraldas Paulauskas pasiūlo Nerijui TAUTVYDUI parūkyti hašišo, kad sužinoti kokia jo kokybė.*

*Džeraldas Paulauskas paklausia Nerijaus TAUTVYDO, ar jis perdavė Riccardo Marian Rotmann (lenkui), kad jo patikrintos narkotinės medžiagos – hašišas, atgabentos iš Libano yra tinkamos tik Rusijos Federacijos rinkai.*

20. Narkotines medžiagas atvežus iš Čekijos į Lietuvą, GNS nariai susidūrė su procedūrinėmis problemomis išgabenant prekes iš Europos Sąjungos šalių. Nerijus TAUTVYDAS kreipėsi į asmenis, galinčius atlikti muitinės procedūras (*Pastaba*. Kai krovinys yra išvežamas už Europos Są-

jungos muitų teritorijos (kaip šiuo atveju ketinant išvežti į Rusiją) yra taikoma kitokia muitinė procedūra), organizavo krovinio įgijimą, kuris buvo pateiktas muitinės procedūroms imituojant krovinį, atvežtą iš Čekijos (tai patvirtina duomenų visetas - Latvijos pareigūnų atlikti ikiteisminio tyrimo veiksmai, t. y. kratos ir apžiūros, kurių metu buvo išimti muitinės dokumentai, bei, kaip minėta, SKY duomenų analizė).

21. GNS nariai, ruošdamiesi atlikti muitinės procedūras, įgijo kitą identišką marmuro krovinį, kuris buvo pateiktas Muitinės pareigūnams Lietuvoje, tokiu būdu buvo atliktos muitinės procedūros ir įforminti dokumentai, reikalingi tikrojo krovinio-marmuro plokščių su jose paslėptomis narkotinėmis medžiagomis tolimesniam gabenimui iš Lietuvos per Latviją į Rusiją.

KONKRETŪS PRANEŠIMAI IŠ SKY:

*(Mindaugas Švermickas Nerijui TAUTVYDUI atsiunčia puspriekabės, kuri nenustatyto asmens 2021-01-14 atvežta iš Šiaulių į sutartą vietą, nuotrauką. Nuotraukoje be puspriekabės taip pat matosi kranas. Mindaugas Švermickas Nerijų Tautvydą informuoja, jog puspriekabė pakrauta ir siunčia nuotraukas, kuriose matosi marmuro plokštės puspriekabėje.)*

22. 2021-01-15 Nerijaus TAUTVYDO (vartotojo ID 84AIUB) ir Mindaugo Švermicko (vartotojo ID GIWG7Z) vienas kitam siųstos fotonuotraukos:



| 2021-01-16 07:19:24 | GIWG7Z | | 84AIUB, GIWG7Z |





| | | | |
|---|---|---|---|
| 2021-01-16 07:44:03 | GIWG7Z | | 84AIUB, GIWG7Z |
| 2021-01-16 13:50:22 | GIWG7Z | | 2021-01-16 13:26:34 |





| | | |
|---|---|---|
| 2021-01-16 13:50:35 | GIWG7Z | 2021-01-16 13:29:58 |
| 2021-01-16 13:52:49 | GIWG7Z | 2021-01-16 13:38:12 |





| 2021-01-16 13:53:06 | GIWG7Z | | 2021-01-16 13:39:05 |

23. Vykdant narkotinių medžiagų kontrabandą Latvijos teritorijoje pastebėta, jog lūžo granito plokštės, kuriose buvo užmaskuotos narkotinės medžiagos. Nerijus TAUTVYDAS Lietuvoje organizavo naujų slėptuvių gamybą. Pagaminus naujas slėptuves jos išvežtos į Latviją, kur taip pat išvyko Nerijus TAUTVYDAS.

KONKRETŪS PRANEŠIMAI IŠ SKY:

*2021-02-03 Nerijaus TAUTVYDO (vartotojo ID GBK4VE) siųsti tekstiniai pranešimai ir nuotraukos Aleksandrs Zaicevs (vartotojo ID 8TEQ9H):*



| 2021-02-03 14:26:49 | GBK4VE | | 8TEQ9H, GBK4VE |



| 2021-02-03<br>14:28:40 | GBK4V<br>E | | 8TEQ9H,<br>GBK4VE |

*Nerijus TAUTVYDAS klausia Aleksandrans Zaicevs, kurias plokštes reikia keisti.*

24. Tyrimo metu nustatyta, kad granito plokštės, kuriose išpjovus ertmes buvo paslėptos narkotinės medžiagos (974 953 g kanapių dervos (hašišo) ir kurios buvo sulaikytos 2021-03-12 Latvijos Respublikoje) - pagamintos UAB „Akmenstata". Granito plokščių gamybą organizavo Nerijus TAUTVYDAS ir Mindaugas Švermickas, kurie GNS-je buvo atsakingi už narkotinių medžiagų maskavimą ir slėpimą krovinyje. Tai patvirtina liudytojas Ramūnas Pėčia. UAB „Akmenstata" vadovas Ramūnas Pėčia paaiškino, kad žiemą, maždaug prieš du metus, į jį kreipėsi jo kaimynas – Tadas Valeckas su klausimu ar jis turi akmens pardavimui. Jam pasakė, kad reikia didelio kiekio. Kaimynas jam pristatė du vyrus. Vienas buvo apie 40 metų, apie 1,75 m ūgio, stambokas, trumpai kirptas, be barzdos, ūsų, akinių, kažkokių ypatingų požymių neįsidėmėjau. Antras buvo aukštesnis, apie 1,90 - 1,95 m ūgio, sportiško sudėjimo, gal irgi apie 40 metų amžiaus.

25. Tyrimo metu, po šių liudytojo paaiškinimų, buvo atliktas asmens parodymo atpažinti pagal jo fotonuotrauką veiksmas, kurio metu liudytojas Raimundas Pėčia atpažino Mindaugą Švermicką (žemesnis vyriškis) ir Neriju TAUTVYDĄ (aukštesnis vyriškis) kaip asmenis apie kuriuos duoda parodymus.





Šioje fotonuotraukoje fiksuota, kad liudytojas Ramūnas Pėčia atpažino Nerijų TAUTVYDĄ (aukštesnis vyriškis), kaip asmenį, apie kurį davė parodymus.

26. Liudytojas Ramūnas Pėčia patvirtino, kad šis asmuo prieš porą metų iš jo vadovaujamos UAB „Akmenstata" pirko daug granito plokščių, kurios netrupėtų šaltyje, nebijotų aplinkos veiksnių. Bylos duomenimis tai granito plokštės, kuriose išpjovus ertmes buvo paslėptos narkotinės medžiagos (974 953 g kanapių dervos (hašišo)), kurios buvo sulaikytos 2021-03-12 Latvijos Respublikoje. Liudytojas Ramūnas Pėčia parodė, kad susitiko su vyriškiais, kaip sužinojo parodymo atpažinti metu, tai buvo Mindaugas Švermickas (žemesnis vyriškis) ir Nerijus TAUTVYDAS (aukštesnis vyriškis), ir jie papasakojo ko jiems reikia – reikėjo didelio kiekio 2 cm pločio granito plokščių, kurios netrupėtų šaltyje ir nebijotų aplinkos veiksmų. Liudytojas turėjo parduoti jiems tinkamą granitą. Liudytojas paaiškino, kad šie asmenys (Nerijus TAUTVYDAS ir Ramūnas Švermickas) paklausė, ar UAB „Akmenstata" gali granito plokštes apdirbti – pagal nurodytus matmenis išpjauti ertmę per visą plokštės ilgį. Ertmės buvo išpjautos. Užsakovai pinigus sumokėjo grynais per kelis kartus.

27. 2022-11-22 atlikus kratą UAB „Akmenstata", buvo paimti įmonės dokumentai, kuriuos ištyrus bus siekiama nustatyti 2021 metų žiemos – pavasario laikotarpio granito plokščių pardavimo faktus (duomenis), kita tyrimui reikšminga informacija.

28. Byloje apklaustas liudytojo Ramūno Pėčios nurodytas Tadas Valeckas patvirtino aplinkybes apie Nerijaus TAUTVYDO ir Mindaugo Švermicko veiksmus, susijusius su šios nusikalstamos veikos padarymu, nurodė, kad jam žinoma apie „grupuotę Džerkinai".

29. Tadas Valeckas yra įtariamasis. Jis paaiškino, kad pažįsta Nerijų TAUTVYDĄ ir Mindaugą Švermicką. Iš kitų asmenų Elektrėnuose (kuriuose gyvena) jis girdėjo apie tai, kad Mindau-

gas Švermickas ir Nerijus TAUTVYDAS nuo senų laikų, gal nuo 2012 metų, ar dar anksčiau, tiksliai negali nurodyti, priklausė Kaune veikiančiai grupuotei pavadinimu "Džerkiniai". Kas konkrečiai priklausė šiai grupuotei - negali pasakyti. Įtariamasis paaiškino, kad prieš Naujuosius 2021 metus, Mindaugas Švermickas paskambino ir paprašė susitikti prie Abromiškių Dvaro. Jam atvažiavus, Mindaugas buvo ne vienas. Su juo kartu buvo vyriškis apie 40 metų amžiaus, neaukštas, be barzdos, be ūsų, be akinių. Mindaugas Švermickas pokalbio metu paprašė juos pakonsultuoti dėl marmuro gaminių gabenimo iš Čekijos į Rusiją. Jis aiškino situaciją, kad kažkoks vairuotojas išvažiavo iš Čekijos su marmuro gaminiais ir kažko neatžymėjo, kad reikėjo kažkokio sertifikato ir, kad jis kažkur neužvažiavo, ar kažkas su deklaracija buvo, tiksliai problemos negali prisiminti. Tadas Valeckas skambino pažįstamiems muitinės tarpininkams. Kuo tada baigėsi tas pokalbis - tiksliai neatsimena. Maždaug tuo pat metu, Mindaugas Švermickas jo dar klausė per kokį pasienio kontrolės punktą geriau vilkiku važiuoti iš Europos į Rusiją. Kitą kartą Mindaugas Švermickas į Tadą Valecką kreipėsi kiek vėliau, gali būti 2020-12-31. Susitikimo metu paprašė leidimo palikti priekabą UAB "Elspeda" teritorijoje, Ateities g. 10, Vievyje. Vėliau Mindaugas Švermickas paprašė paskolinti vilkiką, kad šio pagalba pergabenty priekabą į UAB "Elspeda" teritoriją. Paaiškino, kad vilkiką "DAF", valst. nr. JZZ170, priklausantį UAB "Elspeda", vairavo Artūras Labenskas ir atgabeno į UAB "Elspeda" teritoriją. Tadas Valeckas nurodė, kad kartą su Mindaugu Švermicku kažkur važinėjosi automobiliu "Lexus", valst. nr. JSD 010. Mindaugo Švermicko prašymu atvažiavo į kažkokią aikštelę už UAB "Elspeda" teritorijos ir Mindaugas Švermickas fotografavo iš priekinės keleivio vietos priekabą. Ši priekaba UAB "Elspeda" teritorijoje stovėjo iki 2021 metų sausio pabaigos. Maždaug tuo pačiu laikotarpiu, į Tadą Valecką kreipėsi Mindaugas Švermickas su prašymu supažindinti jį su Raimundu Pėčia, kuris susijęs su UAB "Akmenstata". Mindaugas Švermickas paprašė paklausti, ar UAB "Akmenstata" turi kažkokį akmenį, gal granitą, gal marmurą pilkos, ar juodos spalvos, tiksliai neatsimena. Jis minėjo, kad yra kažkokios problemos pas juos su marmuro plokštėmis. Po ko Tadas Valeckas supažindino Mindaugą Švermicką ir Nerijų TAUTVYDĄ su Raimundu Pėčia. Jų pokalbiuose jis nedalyvavo, negirdėjo apie ką jie kalbėjo. Toliau ką Mindaugas Švermickas, Nerijus TAUTVYDAS ir Raimundas Pėčia darė, kokius reikalus tvarkė su tuo akmeniu, jis nežino ir nesidomėjo. Dar kartą Mindaugas Švermickas pas Tadą Valecką atvažiavo ir prašė paklausti Raimundo Pėčios, ar UAB "Akmenstata" neliko jokių popierių (dokumentų) susijusių su akmens įgijimu, ar kažkokiu darbu atlikimu, kas būtų susiję su jų - M.Švermicko ir N.TAUTVYDO užsakymu.

30. Kriminalinės žvalgybos metu (LKPB SONT 3-iosio valdybos pareigūno tarnybinis pranešimas Nr. 2022-11-18 Nr. 38-2(DS)-5632-RN) buvo gauti duomenys, kad 2021-01-24 Egidijaus ir Vaidoto Jančių surastas vairuotojas Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst. Nr. LRO 403, ir puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, su joje esančiu granito plokščių kroviniu, kuriame užmaskuotos narkotinės medžiagos išvažiavo į Latvijos Respubliką. Artūras Liubauskas buvo stebimas Egidijaus ir Vaidoto Jančių paskirto asmens. Prieš kertant Latvijos – Rusijos valstybinę sieną patikrinus vežamą krovinį nustatyta, jog yra pažeistos granito plokštės, kuriose užmaskuotos narkotinės medžiagos, po ko matosi narkotinės medžiagos. Nuspręsta iš UAB „Akmenstata" įgytų uolienų gaminių pagaminti naujas slėptuves narkotinėms medžiagoms maskuoti. 2021-02-06 Artūras Liubauskas vilkiku „Volvo FH", valst. Nr. LPL 297, iš Egidijaus ir Vaidoto Jančių atvežė puspriekabę "Schmitz S01", valst. Nr. HJ 606, į Vievį ir paliko UAB „Elspeda", adresu Ateities g. 10, Vievis prieigose. 2021-02-23 Artūras Liubauskas vilkiku „Volvo FH", valst. Nr. LPL 297, iš Vievio paėmė puspriekabę "Schmitz S01", valst. Nr. HJ 606, kurią išvežė į Latvijos Respubliką, kur narkotinės medžiagos buvo perpakuojamos į naujas slėptuves padarytas iš granito plokščių ir pakrautos į puspriekabę "Schmitz S.PR 24-13.62", valst. Nr. DP 810. Kriminalinės žvalgybos tyrimo metu nustatyta, jog Artūras Liubauskas kartu su Alvydu Šležu, kuriam tiesiogiai nurodymus davė Egidijus ir Vaidotas Jančiai, keletą kartų buvo atvykę į Latvijos Respubliką prie vilkiko „Volvo FM 400 FH 400", valst. Nr. LRO 403, ir puspriekabės "Schmitz S.PR 24-13.62", valst. Nr. DP 810, su joje esančiomis granito plokščių kroviny užmaskuotomis narkotinėmis medžiagomis. 2021-03-12 Artūras Liubauskas sulaikytas vairuojantis vilkiką „Volvo FM 400

FH 400", valst. Nr. LRO 403, su puspriekabe "Schmitz S.PR 24-13.62", valst. Nr. DP 810, kurioje rasta ir iš neteisėtos apyvartos išimta apie 970 kg. narkotinės medžiagos – hašišo.

31. Tęsiant ikiteisminio tyrimo veiksmus, nustatytos šios naujos ir reikšmingos su šia nusikalstama veika susijusios aplinkybės.

32. Įtariamieji Vaidotas Jančius, Egidijus Jančius ir Alvydas Šliažas 2022-11-12 suimti Lietuvos Respublikoje, jiems skirta kardomoji priemonė – suėmimas. Įtariamieji apklausti. Jie šiuo metu nepateikė savo paaiškinimų.

33. Pagaminus naujas slėptuves UAB „Akmenstata", jos išvežtos į Latviją, kur taip pat išvyko Nerijus TAUTVYDAS.

34. Latvijoje Nerijus TAUTVYDAS apžiūrėjo vilkiko puspriekabę, kuria vykdyta narkotinių medžiagų kontrabanda, ir neradęs galimai teisėsaugos institucijų naudojamos įrangos, organizavo puspriekabės nuvežimą į išnuomotas patalpas.

35. Išnuomotose patalpose Nerijus TAUTVYDAS su bendrininkais daužė granito plokštes, kuriose užmaskuotos narkotinės medžiagos, narkotines medžiagas iš naujo pervakuumavo, ir perdėjo į naujas slėptuves padarytas Lietuvoje iš ten įgytų granito plokščių (tai patvirtina duomenų visetas: Latvijos pareigūnų atlikti ikiteisminio tyrimo veiksmai – kratų metu užfiksuotos slėptuvės, kurios buvo gabenamos narkotinės medžiagos, bei, kaip minėta, SKY duomenų analizė).

36. Nerijus TAUTVYDAS ir bendrininkai „Sky Ecc" sistemoje naudojamomis ryšio priemonėmis nuolat siuntinėjo plokščių, kuriose užmaskuotos narkotinės medžiagos, narkotinių medžiagų, transporto priemonių, kuriomis vykdoma narkotinių medžiagų kontrabanda nuotraukas. Nerijaus TAUTVYDO ir bendrininkų siųstų narkotinių medžiagų įpakavimai identiški 2021-03-12 Latvijoje sulaikytų narkotinių medžiagų pakuotėms.

37. Kaip jau buvo nurodyta aukščiau, vykdant Lietuvos Respublikos kompetentingos institucijos išduotą ETO, iš Latvijos Respublikos institucijų buvo gauta medžiaga bei informacija apie tai, kad 2021-03-12 neteisėtai gabentą labai didelį narkotinių medžiagų kiekį - 974 953 g kanapių dervos (hašišo) sulaikė Latvijos policijos pareigūnai, dėl ko Latvijos Respublikoje pradėtas baudžiamasi procesas Nr.11815001221.

38. Lietuvoje atliekamame ikiteisminiame tyrime prokuroras 2021-05-26 ETO kreipėsi į Latvijos pareigūnus dėl duomenų apie Latvijoje atliekamame tyrime esamų kai kurių duomenų (įrodymų) pateikimo. Latvijos pareigūnai vykdydami ETO 2021-08-10 pateikė medžiagą, taip pat narkotinių medžiagų ekspertizių aktus (2021-03-25 aktas Nr. 2103059).

39. Latvijos Respublikos Valstybės policijos Kriminalinės policijos vyriausiosios valdybos vyr. inspektorės sprendimais buvo paskirtos iš viso 36 narkotinių ir psichotropinių medžiagų ekspertizės, pavedant ekspertams nustatyti, ar 2021-03-12 vilkike „Volvo" rastose neaiškios kilmės medžiagose yra narkotinių arba psichotropinių medžiagų.

40. Atlikus ekspertizes, buvo gautos Latvijos Respublikos Vidaus reikalų ministerijos Valstybės policijos Kriminalistikos valdybos iš viso 36 ekspertų išvados, kuriose nustatyta, kad tyrimui pateiktos medžiagos yra kanapės (hašišas).

41. Ekspertams buvo pateiktas visas kratų metu rastas ir išimtas narkotinių medžiagų kiekis. Ekspertai narkotines medžiagas tyrė dalimis, todėl tyrimo rezultatai buvo pateikti 36 atskirose narkotinių medžiagų ekspertizių aktuose. Ekspertizes atliko: Olga Čuhrova, VRM Valstybės policijos Kriminalistikos valdybos Cheminių ekspertizių skyriaus vyriausioji ekspertė. Kvalifikacija: teismų eksperto sertifikatas Nr. 2015040017, suteikiantis teisę atlikti chemines teismo ekspertizes narkotinių ir psichotropinių medžiagų tyrimo srityje; Katrina Sudmalė, VRM Valstybės policijos Kriminalistikos valdybos Cheminių ekspertizių skyriaus ekspertė. Kvalifikacija: teismų eksperto sertifikatas Nr. 1715040082, suteikiantis teisę atlikti chemines teismo ekspertizes narkotinių ir psichotropinių medžiagų tyrimo srityje; Inesė Ivanova, VRM Valstybės policijos Kriminalistikos valdybos Cheminių ekspertizių skyriaus vyriausioji ekspertė. Kvalifikacija: teismų eksperto sertifikatas Nr. 2015040004, suteikiantis teisę atlikti chemines teismo ekspertizes narkotinių ir psichotropinių medžiagų tyrimo srityje; Kristinė Krūminia, VRM Valstybės policijos Kriminalistikos valdybos Cheminių ekspertizių skyriaus ekspertė. Kvalifikacija: teismų eksperto sertifikatas Nr. 1915040052, suteikiantis teisę atlikti chemines teismo ekspertizes narko-

tinių ir psichotropinių medžiagų tyrimo srityje; Žanna Mališa-Koptenkova, VRM Valstybės policijos Kriminalistikos valdybos Cheminių ekspertizių skyriaus ekspertė. Kvalifikacija: teismų eksperto sertifikatas Nr. 1715040166, suteikiantis teisę atlikti chemines teismo ekspertizes narkotinių ir psichotropinių medžiagų tyrimo srityje.

42. Prie duomenų, kuriais grindžiami įtarimai Nerijui TAUTVYDUI dėl Veikos Nr. 2, pridedama susijusių įvykių chronologija **(Priedas Nr. 3 (b))**.

## VEIKA NR. 3

43. Nerijus TAUTVYDAS taip pat įtariamas tuo, kad būdamas vienu iš „Džerkinių" GNS organizatorių ir dalyvių, dėl savanaudiškų paskatų – turėdamas tikslą pasipelnyti iš nusikalstamo susivienijimo dalyvių daromų nusikaltimų, skatindamas kitus nusikalstamo susivienijimo dalyvius daryti nusikaltimus ir gaudamas iš jų padarymo nusikalstamą pelną, veikdamas bendrai su šio susivienijimo vadovu Džeraldu Paulausku bei dalyviais Valdemaru Raudoniu, Jonu Sirvydu ir Liutauru Nemeikšiu, nusikalstamam susivienijimui nepriklausančiais Titu Ramanausku, Dariumi Palinausku, Vaidu Filipavičiumi bei kitais ikiteisminio tyrimo metu nustatinėjamais asmenimis, laikotarpiu nuo 2020-11-24 iki 2021-10-09 organizavo neteisėtą labai didelio kiekio narkotinių medžiagų – kanapių dervos (hašišo) įgijimą Ispanijos Karalystėje, neteisėtą narkotinių medžiagų gabenimą iš Ispanijos Karalystės per Europos Sąjungos valstybių teritoriją į Lenkijos Respubliką, o iš ten į Rusijos Federaciją, slepiant narkotines medžiagas vilkikuose ir kitose transporto priemonėse, neteisėtą labai didelį kiekio narkotinių medžiagų realizavimą Rusijos Federacijoje.

44. Ikiteisminio tyrimo duomenimis, Dž. Paulausko, N. TAUTVYDO, V. Raudonio organizuoto ir D. Paulausko vadovaujamo „Džerkinių" GNS, veikusio laikotarpiu nuo 2014 m. iki 2022 metų pabaigos, veikloje dalyvavo Jonas Sirvydas, Liutauras Nemeikšis ir kiti asmenys, taip pat buvo pasitelkti bendrai nusikalstamai veikai – atskiriems nusikaltimams daryti ginkluotam nusikalstamam susivienijimui nepriklausantys Vaidas Filipavičius, Titas Ramanauskas, Darius Palinauskas, kiti asmenys. Dalyvaudamas GNS veikloje, J. Sirvydas mokėjo į bendrą kasą, vykdė Dž. Paulausko, N. TAUTVYDO, V. Raudonio nurodymus, su jais organizavo ir darė nusikaltimus, kurie aprašyti žemiau.

45. Nerijaus TAUTVYDO nusikalstamus veiksmus patvirtina byloje esantys duomenys.

46. Liudytojas Jaroslaw Jaskowski apklausiamas parodė, kad laikotarpiu nuo 2015-06-26 iki 2016-12-07 iš Ispanijos Karalystės į Nyderlandų Karalystę „Džerkiniams" per 16 reisų pergabeno bendrai 9 t 100 kg hašišo, o atgal veždavo pinigus už realizuotą hašišą. Pirmą ir antrą kartą buvo gabenama po 200 kg hašišo (2 paletės). Paskui buvo vežama po keturias paletes (po 400 kg), vėliau – po 6 (po 600 kg) hašišo. Už kiekvieną reisą J. Jaskowski gaudavo 20 000 eurų. Už kiekvieną pinigų pervežimą vairuotojai gaudavo po 500 e. Jis vairuotojams už kiekvieną hašišo pervežimą mokėjo po 7 000 e. Iš „Džerkinių" bei vairuotojų pasakojimų J. Jaskowski žinojo, kad N. TAUTVYDAS ir V. Raudonis visada dalyvavo hašišo Ispanijoje ir pinigų Olandijoje pakrovime/iškrovime. Be lietuvių šioje veikloje dar dalyvavo Artur Kozlowski, vairuotojai Slawomir Stefanski ir Rafal Slawinski, taip pat olandas, marokietis, graikas. Naudoti buvo vilkikai su puspriekabėmis, tarp kurių ir vilkikas DAF su puspriekabe Chereau. Pirmo ir antro vežimų metu viską koordinavo A. Kozlowski. Po to A. Kozlowski jam pasakė, kad nebeužsiminės šituo ir Lenkijoje organizavo susitikimą su „Džerkiniais". Su J. Jaskowskiu susitikinėjo Dž. Paulauskas, N. TAUTVYDAS ir V. Raudonis. Jų nurodymu ir lėšomis J. Jaskowski Olandijoje įgijo puspriekabę Chereau (byloje lyg yra 2015-10-21 sąskaita faktūra), kurioje vėliau Lietuvoje grindyse buvo įrengta slėptuvė. Joje tilpo 400-500 kg hašišo. Viso susitikimų buvo daug tiek Lenkijoje, tiek Lietuvoje, taip pat Ispanijoje ir Olandijoje. Vienas tokių susitikimų buvo 2016-10-10 Augustove Lenkijoje, kurio metu jam N. TAUTVYDAS perdavė 200 000 eurų. Ten buvo atvykę Dž. Paulauskas ir N. TAUTVYDAS. „Džerkiniai" konspiracijos tikslais nesinaudojo kitu transportu kaip tik automobiliais ir naudojo tik kriptuotus mobiliojo ryšio telefonus. Dž. Paulauskas naudojo automobiliais su Rusijos Federacijos valstybiniais numeriais.

47. Lietuvos Respublikos generalinė prokuratūra 2022-10-26 kreipėsi į Lenkijos Respubliką su ETO dėl ikiteisminio tyrimo Nr. RP II Ds 8.2021 kopijų pateikimo. Vykdant minėtą ETO, iš Lenkijos Respublikos gauta ikiteisminio tyrimo Nr. RP II Ds 8.2021 medžiagos kopija.

48. Lietuvos Respublikos generalinė prokuratūra 2021-05-12 kreipėsi į Prancūzijos Respubliką su ETO dėl „Sky" platformoje turimų duomenų perdavimo. Vykdant minėtą ETO, Lietuvos Respublikai buvo perduoti duomenys apie Dž. Paulausko, N. TAUTVYDO, V. Raudonio, R. Lapinsko ir kitų asmenų susižinojimą naudojantis „Sky Ecc" sistema.

49. LKPB SONT 3-iosios valdybos 1-ojo skyriaus vyriausiojo tyrėjo Tado Gudjonio tarnybiniame pranešime nurodyta, kad ikiteisminio tyrimo metu gauti duomenys apie Džeraldo Paulausko, Valdemaro Raudonio, Nerijaus TAUTVYDO, Ramūno Lapinsko „Sky Ecc" sistemoje naudojamų ryšio priemonių identifikacinius duomenis (PIN). Siekiant gauti minėtų asmenų naudojamais galiniais įrenginiais „Sky Ecc" sistemoje siųstus ir gautus duomenis, ETO kreiptasi į Prancūzijos Respublikos teisėsaugos institucijas. Vykdydamos ETO, Prancūzijos Respublikos teisėsaugos institucijos atsiuntė prašomą informaciją.

50. Apžiūrint duomenis, gautus iš Prancūzijos Respublikos teisėsaugos institucijų nustatyta, jog Džeraldas Paulauskas, Valdemaras Raudonis, Nerijus TAUTVYDAS ir Ramūnas Lapinskas nuolat naudojosi koduota elektroninių ryšių perdavimo sistema „Sky Ecc" palaikyti ryšį tarpusavyje bei su kitais asmenimis. „Sky Ecc" sistemoje minėti asmenys vieni kitiems bei nustatytiems ir nenustatytiems bendrininkams siuntė tekstinius ir balso pranešimus, fotonuotraukas, susirašinėjimo ištraukas.

51. Apžiūrint išvardytus failus (susirašinėjimo tekstus, nuotraukas (asmenų, aplinkos, užrašų, dokumentų ir pan.), balso pranešimus (išklausant), susirašinėjimo ištraukas nustatyta, jog:

- Džeraldas Paulauskas naudojosi „Sky Ecc" sistemoje paskyromis, kurių vartotojo ID 8AAO3A, A4U4QS, D5LV4T, 756B27. Džeraldo Paulausko naudojamas vartotojo vardas - Toto;

- Nerijus TAUTVYDAS naudojosi „Sky Ecc" sistemoje paskyromis, kurių vartotojo ID 84AIUB, GBK4VE, KJ78AV. Taip pat apžiūrint Džeraldo Paulausko siųstus ir gautus duomenis „Sky Ecc" sistemoje nustatyta, jog N. TAUTVYDAS papildomai naudojosi sugyventinės Gintarės Granickaitės, gim. 1983 m., „Sky Ecc" sistemoje naudojamu įrenginiu, kurio vartotojo ID D1BEUX. Nerijaus TAUTVYDO naudotas vartotojo vardas – Designo. Nerijus TAUTVYDAS „Sky Ecc" sistemoje bendrininkų taip pat vadinamas – Dodo;

- Valdemaras Raudonis naudojosi „Sky Ecc" sistemoje paskyromis, kurių vartotojų ID SNJ2Q4, VM4CRA, MUSHB9. Valdemaro Raudonio naudotas vartotojo vardas – Vova.

- Ramūnas Lapinskas naudojosi „Sky Ecc" sistemoje paskyra, kurios vartotojo ID W9S5D1. Ramūno Lapinsko naudoti vartotojo vardai – Chicago, Žvėris.

52. Lietuvos Respublikos generalinė prokuratūra 2022-05-09 kreipėsi į Prancūzijos Respubliką su ETO dėl „Sky" platformoje turimų duomenų perdavimo. Vykdant minėtą ETO, Lietuvos Respublikai buvo perduoti duomenys apie J. Sirvydo susižinojimą naudojantis „Sky Ecc" sistema.

53. 2022-10-11 apžiūros protokolu apžiūrint ETO vykdymo pagrindu iš Prancūzijos Respublikos virtualios duomenų saugyklos gautus pavadinimu „Exécution CR JI-507-1-22-488-1140 (Lituanie)" - failus (susirašinėjimo tekstus, nuotraukas (asmenų, aplinkos, užrašų, dokumentų ir pan.), balso pranešimus (išklausant), susirašinėjimo ištraukas nustatyta, jog Jonas Sirvydas naudojosi „Sky Ecc" sistemoje paskyromis, kurių vartotojo ID K4102G ir T7TKIT. Jono Sirvydo naudojamas vartotojo vardas - Did. Jonas Sirvydas kitų vartotojų vadinamas „Didelis", pats taip pat prisistatė minėtu vardu.

54. Apžiūrint susirašinėjimą nustatytas Jono Sirvydo (vartotojo ID K4102G) 2020-12-15 siųstas tekstinis pranešimas Nerijui TAUTVYDUI (vartotojo ID 84AIUB): 2020-12-15 21:21:52 K4102G evelina.indriliunaite@gmail.com 84AIUB, K4102G. (*Jonas Sirvydas Nerijui TAUTVYDUI*

*siunčia sugyventinės Evelinos Indriliūnaitės elektroninio pašto adresą.)* Šie duomenys ne tik patvirtina artimą bendrininkų ryšį, bet ir tai, kad tarpusavio susižinojimui, didesnės apimties duomenų (dokumentų) perdavimui jie naudojo ne asmeninį, o kitų asmenų elektroninį paštą. Tai buvo daroma siekiant nuslėpti tarpusavio pažintį ir glaudų bendravimą.

55. Apžiūrint susirašinėjimą taip pat nustatyta, kaip Jonas Sirvydas (vartotojo vardas K4102G) *2021-01*-22 siuntė įvairiems kontaktams (bendrininkams) nuotraukas su kanapių dervos (hašišo) pakuotėmis ir tekstinius pranešimus su pasiūlymais pirkti hašišą. Taip pat pateikta nuoroda, kur Ispanijos Karalystėje vyko kanapių dervos (hašišo) pakrovimas.








56. Taip pat J. Sirvydo susirašinėjime bendrininkams buvo siūlomi įgijimui apie toną kanapių Vokietijoje, kokainas Norvegijoje ir kiti narkotikai.

 

57. Pateikti duomenys leidžia daryti išvadą apie nuolatinę V. Sirvydo kaip „Džerkinių" GNS dalyvio nusikalstamą veiklą neteisėtai disponuojant narkotinėmis medžiagomis GNS naudai.

58. Taip pat apžiūros metu nustatyta, jog Jonas Sirvydas su bendrininkais sistemingai 2021 metų laikotarpiu (iki 2021-10-09 sulaikymo) organizavo narkotinių medžiagų kontrabandą iš Ispanijos Karalystės į Lenkijos Respubliką ir iš ten į Rusijos Federaciją per Baltarusijos Respubliką.

59. Tuo tikslu Jonas Sirvydas palaikė ryšį su nustatinėjamais bendrininkais, kurie naudojosi galinio ryšio įrenginiais „Sky Ecc" sistemoje vartotojų ID F4VXED, RM9RTM, MQVHSL, JPR76I, HVQRIJ, 2V7LTV, RE8168, CJHI53, SI9IP5, taip pat Liutauru Nemeikšiu, gim. 1989-05-18 (vartotojo ID PDION2), Dariumi Palinausku, gim. 1982-11-12 (vartotojo ID C90MT2), Vaidu Filipavičiumi, gim. 1973-12-18 (vartotojo ID 7DTM1A). Jonas Sirvydas buvo atsakingas už narkotinių medžiagų įgijimą Ispanijoje, jų atvežimą į Lenkiją, jų saugojimą Lenkijoje ir perdavimo tolimųjų reisų vairuotojui Dariui Palinauskui organizavimą; Vaidas Filipavičius buvo atsakingas už at-

vežtų iš Ispanijos narkotinių medžiagų paėmimą Lenkijoje, jų saugojimą Lenkijoje ir jų perdavimą Dariui Palinauskui gabenimui į Rusijos Federaciją; Darius Palinauskas buvo atsakingas už narkotinių medžiagų pergabenimą iš Lenkijos Respublikos į Rusijos Federaciją naudojant vilkiką su puspriekabe gyvuliais vežti, kurioje ir buvo slepiama narkotinė medžiaga kanapių derva (hašišas).

60. Apžiūrėtame susirašinėjime įrenginiais sistemoje „Sky Ecc" yra duomenys apie narkotinių medžiagų įgijimo ir gabenimo eigą, bendrininkų veiksmus nusikaltimo darymo metu. Šie duomenys patvirtinti Lenkijos Respublikos pareigūnų atliekant ikiteisminį tyrimą Nr. 1001-102.DS.14.2021. Tai duomenys iš viešbučio, kuriame buvo apsistoję V. Filipavičius, iš degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin m., kurios teritorijoje iš V. Filipavičiaus nustatinėjamos transporto priemonės į D. Palinausko ir T. Ramanausko vairuojamą vilkiką "DAF XF480FT", valst.nr. KHJ 035, su puspriekabe "Pezzaioli SBA 3", valst.nr. MP 643, buvo perkrautas labai didelis kiekis narkotinės medžiagos – kanapių dervos (hašišo), t.y. 2021-02-24 perkrauta 110 kg, 2021-03-09 perkrauta 125 kg, o 2021-10-09 perkrauta 244 kg hašišo (vaizdas žemiau pateiktoje nuotraukoje).



61. Pažymėtina, kad visus nusikaltimus J. Sirvydas darė kaip „Džerkinių" GNS dalyvis ir dalis pelno iš šios veiklos pateko į GNS bendrą kasą.

62. Lietuvos Respublikos generalinė prokuratūra 2022-09-22 kreipėsi į Lenkijos Respubliką su ETO dėl ikiteisminio tyrimo Nr. 1001-102.DS.14.2021 medžiagos kopijų perdavimo. Vykdant minėtą ETO, Lietuvos Respublikai buvo perduota minėtos bylos medžiagos kopija.

63. Ikiteisminiame tyrime Nr. 1001-102.DS.14.2021 apklaustas Darius Palinauskas parodė, kad 2021 m. kartu su Titu Ramanausku pradėjo dalyvauti narkotikų kontrabandoje, gabeno tris kartus, iš kurių paskutinį kartą gabeno 2021 metų spalį, kai buvo sulaikyti Lenkijos Respublikos pareigūnų. Narkotikai visada buvo supakuoti į maišus ir pakelius. Narkotikus jis turėjo gabenti į Rusijos Federaciją. Jį užverbavęs gabenti narkotikus vyras davė jam telefoną su koduota kontaktine programėle, kurios pagalba jie palaikė ryšį. Telefonus jis keitė apie keturis kartus, visada gaudavo iš to paties žmogaus – užsakovo. Už kilogramo kontrabandinių narkotikų pergabenimą jis gaudavo 150 eurų.

64. Ikiteisminiame tyrime Nr. 1001-102.DS.14.2021 apklaustas Titas Ramanauskas parodė analogiškai ir papildė, kad jį gabenti narkotikus pasamdė D. Palinauskas. Narkotikus jie gabeno vilku DAF su gyvūnų gabenimui skirta puspriekabe. Už visus gabenimus jis gavo 4 000 eurų.

65. 2021-10-09 kratos vilkike "DAF XF480FT", valst. Nr. KHJ 035, su puspriekabe "Pezzaioli SBA 3", valst. Nr. MP 643, kurio vairuotojais buvo Darius Palinauskas ir Titas Ramanauskas, metu puspriekabės konstrukcijos ertmėse buvo rasta ir paimta 14 sportinių krepšių. Krepšiuose buvo į juodos spalvos, benzino kvapą turinčia medžiaga persunktą foliją suvynioti paketai.

66. 2021-10-09 daiktų apžiūros protokole nurodyta, kad apžiūrėti vilkike "DAF XF480FT", valst. Nr. KHJ 035, su puspriekabe "Pezzaioli SBA 3", valst. Nr. MP 643, rast 14 sportinių krepšių. Juos atidarius, viduje aptikti 122 stačiakampiai paketai, apvynioti folija bei benzino kvapą turinčiu popieriumi, Paketai buvo supakuoti į permatomą polietileną ir baltos spalvos polietileninius maišelius su užrašais ir grafiniais ženklais. Augalinės kilmės medžiagos briketai buvo papildomai suvynioti į skaidrią plėvelę. Apžiūros metu buvo atliktas 122 augalinės kilmės medžiagos briketų svėrimas. Kiekvieno paketo svoris buvo apie 2 kg, o bendras augalinės medžiagos svoris sudarė ne mažiau 244 kg.

67. 2021-10-11 specialisto magistrės Danuta Zaleszczyk, eksperto fizikinių cheminių tyrimų srityje, išvadoje Nr. KG-OS-VI-RBF.4380.69.2021 nurodyta, kad tyrimui pateikta augalinė medžiaga yra kanapių derva (hašišas).

68. Palyginus narkotinių medžiagų - kanapių dervos (hašišo) pakuotes, kurios pavaizduotos D. Paulausko ir N. TAUTVYDO susirašinėjime per SKY sistemą, taip pat pakuotes, paimtas 2021-03-12 sulaikymo Latvijos Respublikoje metu, taip pat pakuotes, paimtas 2021-10-09 sulaikymo Lenkijos Respublikoje metu (ikiteisminis tyrimas Nr. 1001-102.DS.14.2021), matyti, jog tai analogiškos hašišo pakuotės su tais pačiais ant pakuočių esančiais piešiniais ir užrašais, kas atsižvelgiant į ikiteisminiame tyrime surinktus duomenis apie „Džerkinių" GNS veiklą neteisėtai disponuojant labai dideliais kiekiais narkotinių medžiagų, leidžia daryti išvadą, jog abiem atvejais hašišas buvo įgytas tų pačių asmenų („Džerkinių" GNS dalyvių) iš to paties šaltinio.

  



(pavaizduotos hašišo pakuotės, rastos ir paimtos 2021-10-09 sulaikymo Lenkijos Respublikoje metu)







(pavaizduotos hašišo pakuotės, rastos ir paimtos 2021-03-12 sulaikymo Latvijos Respublikoje metu)

69. 2020-08-23 Džeraldas Paulauskas (vartotojo ID 8AAO3A) siunčia nuotraukas ir tekstinius pranešimus Nerijui TAUTVYDUI (vartotojo ID 84AIUB):



| Date, time | Sender | Message text | User ID |
|---|---|---|---|
| 2020-08-23 07:35:01 | 8AAO3A |  | 84AIUB, 8AAO3A |
| 2020-08-23 07:36:22 | 8AAO3A |  | 84AIUB, 8AAO3A |

70. 2022-11-22 kratos Džeraldo Paulausko gyvenamojoje vietoje Semaškos g. 42, Kauno mieste, metu, be kitų daiktų, namo 2-ojo aukšto miegamajame buvo rastas ir paimtas išorinis diskas "Samsung". Šiame diske aptiktos fotonuotraukos, darytos nuo 2008 metų, kuriose įvairiomis progomis ir sudėtimis, įvairiose šalyse pavaizduoti Dž. Paulauskas, N. TAUTVYDAS, V. Raudonis, J. Sirvydas, M. Švermickas ir kiti su GNS veikla susiję asmenys. Šios nuotraukos patvirtina nuolatinį ilgametį ir glaudų „Džerkinių" GNS organizatorių, vadovo ir dalyvių bendravimą ir pastovius ryšius.



Džeraldas Paulauskas ir Nerijus TAUTVYDAS (pirmas žiūrint iš kairės į dešinę)



D. Paulauskas, N. TAUTVYDAS (šeštas žiūrint iš kairės į dešinę), J. Sirvydas (septintas žiūrint iš kairės į dešinę) ir kiti asmenys.





N. TAUTVYDAS (pirmas žiūrint iš kairės į dešinę) ir J. Sirvydas.



Dokumento skaitmeninė kopija

## Leaders

 Riccardo Marian Rotmann
1956-04-18
• Citizen of Germany

 **Džeraldas PAULAUSKAS 1968-03-18**

 **Valdemaras RAUDONIS 1961-12-24**

 **Nerijus TAUTVYDAS 1984-06-06**

 **Oleg KRAVČENKO 1969-06-05**
• RF pilietis

## Middle level leaders



Jonas SIRVYDAS 1988-06-24 | Mindaugas Švermickas 1979-05-04 | Liutauras NEMEIKŠIS 1989-05-18 | Ramūnas Lapinskas 1981-08-01

## Executors



Justas Filatovas 1986-07-14 | Aleksandrs Zaicevs 1972-02-24 | Mantas ČESNAS 1989-08-04 | Darius DIRŽYS 1976-03-12 | Titas Ramanauskas 1987-09-18 | Darius Palinauskas 1982-11-12 | Tomas Šmitas 1984-10-17 | Vaidas Filipavičius 1973-12-18 | Artūras Liubauskas 1964-11-17 | Tadas Valeckas 1981-04-24 | Alvydas Šliažas 1967-04-16

Gintaras Maciulevičius 1967-02-25 | Egidijus Jančius 1977-07-30 | Vaidotas Jančius 1980-08-16

## Company

       

UAB Autospecas 145304012 | UAB Jutiskis 168601528 | UAB Akmenstata 300115482 | UAB Elspeda 181241070 | UAB Žemaitijos ratas 300851541 | UAB Vilkas 302656764

PRIEDAS NR. 3A)

Dokumento skaitmeninė kopija



Timeline headers: 2020 gruodis | 2021 sausis | 2021 vasaris

**Hashish smuggling from Lebanon to Greece**
2020 m.november
2020-11-01

**Hashish smuggling from Greece to Slovakia**
2020-11-29 - 2020-12-09
2020-12-01

**N. Tautvydas/Svermickas meets with R. M. Rotmann and checks the quality of the hashish**
2020-12-09

**The truck LPL297 with the semi-trailer DP810 leaves Lithuania**
2020-12-16

**The truck LPL297 with the semi-trailer DP810 returns to Lithuania**
2020-12-24

**The truck LRO403 with the semi-trailer DP810 leaves for LV**
2021-01-25

**Attempt to deliver hashish from LV to RF**
2021-01-25

**Installation of secret compartments**
from 2021-02-06 to 2021-02-23
2021-02-06

**Secret compartments transportation to LV**
2021-02-23

**Hashish repackaging - reloading**
2021-02-24 to 2021-03-01
2021-02-24

**Seizures of hashish in LV**
2021-03-12

PRIEDAS NR 3 (3)

**PRIEDAS NR. 4**





**VILNIAUS MIESTO APYLINKĖS TEISMAS**

**NUTARTIS**

2022-11-07

Vilniaus miesto apylinkės teismo ikiteisminio tyrimo teisėja Rasa Paulauskaitė-Šiaulė, sekretoriaujant Kamiliai Animuckajai,
dalyvaujant prokurorei Aidai Japertienei,
įtariamojo Nerijaus Tautvydo gynėjai advokatei Kristinai Sandaraitei-Butvilienei,
nedalyvaujant įtariamajam Nerijui Tautvydui,
neviešame teismo posėdyje, vykusiame nuotoliniu būdu, žodinio proceso tvarka išnagrinėjo Generalinės prokuratūros Organizuotų nusikaltimų ir korupcijos tyrimo departamento prokurorės Aidos Japertienės pareiškimą dėl kardomosios priemonės suėmimo skyrimo įtariamajam Nerijui Tautvydui.

Teismas

n u s t a t ė :

Nerijus Tautvydas, gimęs 1984 m. birželio 6 d., asmens kodas 38406060244, deklaruota gyvenamoji vieta adresu Saulės g. 10-21, Elektrėnai, Elektrėnų sav., neteistas (teistumas išnykęs),
įtariamas tuo, kad organizavo „Džerkinių" ginkluotą nusikalstamą susivienijimą ir dalyvavo jo veikloje, neteisėtai disponavo labai dideliu narkotinių medžiagų kiekiu, organizavo narkotinės medžiagos kontrabandą, o būtent:
Nerijus Tautvydas ne vėliau kaip 2014 metais dėl savanaudiškų paskatų, siekdamas nusikalstamai praturtėti ir įgyti didelę įtaką Lietuvos ir užsienio valstybių nusikalstamo pasaulio atstovų tarpe, iš anksto susitaręs su Džeraldu Paulausku ir Valdemaru Raudoniu daryti labai sunkius, sunkius ir apysunkius nusikaltimus – neteisėtai disponuoti labai dideliais narkotinių medžiagų kiekiais, užsiimti jų kontrabanda, organizavo (įkūrė) „Džerkinių" ginkluotą nusikalstamą susivienijimą (toliau – „Džerkinių" GNS), kuriam nuo 2014 m. iki 2022 metų pabaigos vadovavo Džeraldas Paulauskas, įtraukė į šio nusikalstamo susivienijimo veiklą Joną Sirvydą, Liutaurą Nemeikšį, Mindaugą Švermicką, Rusijos Federacijos pilietį Oleg Kravchenko, Ramūną Lapinską ir kitus nustatinėjamus asmenis, pasitelkė bendrai nusikalstamai veikai – atskiriems nusikaltimams daryti ginkluotam nusikalstamam susivienijimui nepriklausančius Vaidą Filipavičių, Artūrą Liubauską, Titą Ramanauską, Darių Palinauską, Vokietijos Federacinės Respublikos pilietį Riccardo Marian Rotmann, Čekijos Respublikos pilietį Vilem Kovač, Latvijos Respublikos pilietį Aleksandrs Zaicevs, kitus ikiteisminio tyrimo nustatinėjamus asmenis, iki 2022 metų pabaigos kartu su kitais bendrininkais dalyvavo šio ginkluoto nusikalstamo susivienijimo veikloje.
2015 metų – 2022 metų laikotarpiu, kol egzistavo „Džerkinių" GNS, Nerijus Tautvydas kartu su GNS vadovu ir kitais dalyviais turėjo bendrą kasą, skirtą GNS veiklai finansuoti, neturėdamas leidimo įgijo, gabeno ir laikė didelį kiekį šaunamųjų ginklų, šaudmenų, kuriuos planavo panaudoti nusikalstamo susivienijimo daromuose nusikaltimuose.
Nerijus Tautvydas kartu su „Džerkinių" GNS vadovu Džeraldu Paulausku ir kitais dalyviais, tiek Lietuvos Respublikoje, tiek ir už jos ribų, taip pat naudojantis šifruoto ryšio priemonėmis, periodiškai rengė pasitarimus, kurių metu buvo aptarinėjami ginkluoto nusikalstamo susivienijimo planai ir konkretūs nusikaltimai bei kiti klausimai, susiję su GNS veikla.

2



Nerijus Tautvydas, būdamas vienu iš GNS organizatorių ir dalyvių, veikdamas savo ir ginkluoto nusikalstamo susivienijimo dalyvių naudai, siekdamas nusikalstamai praturtėti iš nusikalstamos veiklos, padarė nusikaltimus, numatytus Lietuvos Respublikos baudžiamojo kodekso (toliau – BK) 260 straipsnio 3 dalyje, t. y. organizavo neteisėtą disponavimą labai dideliu narkotinės medžiagos kiekiu; 199 straipsnio 4 dalyje, t. y. organizavo narkotinės medžiagos kontrabandą į Lietuvos Respubliką bei iš Lietuvos Respublikos. Šiais veiksmais Nerijus Tautvydas įtariamas padaręs nusikalstamą veiką, numatytą BK 249 straipsnio 3 dalyje.

Taip pat Nerijus Tautvydas įtariamas tuo, kad, būdamas vienu iš „Džerkinių" nusikalstamo susivienijimo organizatorių ir dalyvių, veikdamas bendrai su šio susivienijimo vadovu Džeraldu Paulausku bei dalyviais Valdemaru Raudoniu, Ramūnu Lapinsku, Mindaugu Švermicku, Rusijos Federacijos piliečiu Oleg Kravcenko, ginkluotam nusikalstamam susivienijimui nepriklausančiais Vokietijos Federacinės Respublikos piliečiu Riccardo Marian Rotmann, Čekijos Respublikos piliečiu Vilem Kovač, Latvijos Respublikos piliečiu Aleksandrs Zaicevs ir kitais tyrimo nustatinėjamais asmenimis, dėl savanaudiškų paskatų – siekdamas nusikalstamai praturtėti, organizavo neteisėtą disponavimą labai dideliu narkotinės medžiagos kiekiu, šios medžiagos kontrabandą į Lietuvos Respubliką ir iš jos, o būtent:

Nerijus Tautvydas ne vėliau kaip iki 2020 metų rugpjūčio 9 d., veikdamas bendrai su šio NS vadovu Džeraldu Paulausku, dalyviais Valdemaru Raudoniu, Ramūnu Lapinsku, Mindaugu Švermicku, Rusijos Federacijos piliečiu Olegu Kravchenko, ginkluotam nusikalstamam susivienijimui nepriklausančiais Vokietijos Federacinės Respublikos piliečiu Riccardo Marian Rotmann, Čekijos Respublikos piliečiu Vilem Kovač, Latvijos Respublikos piliečiu Aleksandrs Zaicevs bei kitais tyrimo metu nustatinėjamais bendrininkais, pasitelkdamas kitus ginkluotam nusikalstamam susivienijimui nepriklausančius asmenis, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 3 480 kg kanapių dervos (hašišo) įgijimą Libano Respublikoje, neteisėtą šios narkotinės medžiagos laikymą ir gabenimą, taip pat kontrabandą.

Realizuodami nusikalstamos veikos planą, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Mindaugas Švermickas, Ramūnas Lapinskas, GNS nepriklausantis Riccardo Marian Rotmann bei kiti ikiteisminio tyrimo nustatinėjami asmenys, laikotarpiu nuo 2020 m. rugpjūčio 23 d. iki 2020 m. lapkričio 22 d. organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 3 480 kg kanapių dervos (hašišo) neteisėtą įgijimą ir laikymą Libano Respublikoje ir neteisėtą gabenimą iš Libano Respublikos per Europos valstybes į Čekijos Respubliką.

Bendru Džeraldo Paulausko, Nerijaus Tautvydo, Valdemaro Raudonio, Olego Kravchenko, Ramūno Lapinsko, Riccardo Marian Rottman ir kitų nustatinėjamų bendrininkų susitarimu padalinus ne mažesnį kaip 3 480 kg kanapių dervos krovinį į dvi dalis, viena dalis liko Čekijos Respublikoje, o kita – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), paslėpta marmuro gaminių plokštėse padarytose slėptuvėse, ne vėliau kaip 2020 m. gruodžio 30 d. Džeraldo Paulausko ir nusikaltimo bendrininkų nurodymu neteisėtai pergabenta kontrabanda į Lietuvos Respubliką. Organizuojant labai didelio narkotinės medžiagos kiekio pergabenimą, Ramūnas Lapinskas ir bendrininkai įtraukė į nusikalstamą veiklą Artūrą Liubauską, kuris ne vėliau kaip iki 2020 m. gruodžio 30 d. tyrimo nustatinėjamu vilkiku su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, pakrauta ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), paslėptos marmuro gaminių plokštėse padarytose slėptuvėse, neteisėtai gabeno šį labai didelį narkotinės medžiagos kiekį iš Čekijos Respublikos per Europos valstybių teritorijas iki Lenkijos Respublikos – Lietuvos Respublikos valstybės sienos, po ko paminėtą narkotinę medžiagą gabeno per Lenkijos Respublikos – Lietuvos Respublikos valstybės sieną nepateikiant krovinio muitinės kontrolei ir jos išvengiant – slepiant marmuro gaminių plokštėse padarytose slėptuvėse, po ko neteisėtai gabeno šį labai didelį kiekį narkotinės medžiagos nuo valstybės sienos per Lietuvos Respublikos teritoriją iki ikiteisminio

3



tyrimo nustatinėjamos vietos Kauno apskrityje, o iš ten Ramūno Lapinsko, Nerijaus Tautvydo ir Mindaugo Švermicko nurodymu minėtas labai didelis kiekis narkotinės medžiagos 2020 m. gruodžio 31 d. neteisėtai pergabentas per Lietuvos Respublikos teritoriją į ikiteisminio tyrimo nustatinėjamą vietą, NS dalyvių įvardintą sutartiniu pavadinimu „pas Tadą".

Ramūnui Lapinskui, Džeraldui Paulauskui, Valdemarui Raudoniui, Nerijui Tautvydui ir Mindaugui Švermickui parūpinus vilkiką „Volvo FM 400 FH 400", valst. Nr. LRO 403, ir prie jo prikabinus puspriekabę „Schmitz S.PR 24-13.62", valst.nr. DP 810, su joje marmuro gaminių plokštėse padarytose slėptuvėse paslėptu labai dideliu kiekiu narkotinės medžiagos – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), organizavus paminėtos narkotinės medžiagos pergabenimą kontrabanda būdu iš Lietuvos Respublikos, vykdydamas bendrininkų nurodymus Artūras Liubauskas laikotarpiu 2021 m. sausio 24 d. – 2021 m. sausio 25 d. neteisėtai gabeno labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 1 480,4 kg kanapių dervos (hašišo) iš tyrimo nustatinėjamos vietos sutartiniu pavadinimu „Pas Tadą" iki Lietuvos Respublikos – Latvijos Respublikos valstybės sienos, neturint leidimo minėtą narkotinę medžiagą gabeno per Lietuvos Respublikos valstybės sieną, nepateikiant krovinio muitinės kontrolei ir jos išvengiant – slepiant marmuro gaminių plokštėse padarytose slėptuvėse, neteisėtai gabeno labai didelį kiekį narkotinės medžiagos nuo valstybės sienos per Latvijos Respublikos teritoriją iki Latvijos Respublikos – Rusijos Federacijos pasienio kontrolės punkto „Terechovo", tačiau pastebėjus kai kurių marmuro gaminių plokščių, kuriose buvo paslėptos narkotinės medžiagos, pažeidimus (skilimus), siekdamas išvengti galimo gabenamų narkotinių medžiagų radimo ir sulaikymo muitinės patikros metu, sustojo minėto pasienio punkto prieigose, kur paliko transporto priemonę su narkotinės medžiagos kroviniu, apie ką informavęs bendrininkus grįžo į Lietuvos Respubliką.

Aptarę susiklosčiusią situaciją, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Ramūnas Lapinskas, susitarę su Aleksandrs Zaicevs, nurodė pastarajam surasti patalpas, skirtas vilkiko su puspriekabe laikymui, narkotikų krovinio perkrovimui į kitas slėptuves bei ikiteisminio tyrimo nustatinėjamą vairuotoją, kuris Aleksandrs Zaicevs nurodymu 2021 m. vasario 2 d. vilkiku „Volvo FM 400 FH 400", valst.nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst.nr. DP 810, lydimas A. Zaicevs atsiųstų tyrimo nustatinėjamų asmenų, per Latvijos Respublikos teritoriją nuo pasienio punkto „Terechovo" prieigų iki ikiteisminio tyrimo nustatinėjamų, A. Zaicevs surastų, patalpų neteisėtai gabeno puspriekabėje esančių marmuro plokščių slėptuvėse paslėptą labai didelį kiekį narkotinių medžiagų – ne mažiau kaip 1480,4 kg kanapių dervos (hašišo), kur paminėtą labai didelį kiekį narkotinės medžiagos su šio nusikaltimo bendrininkais neteisėtai laikė ne trumpiau kaip iki 2021 m. kovo 3 d.

Tęsdami pasirengimą labai didelio narkotinių medžiagų kiekio gabenimui į Rusijos Federaciją, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Ramūnas Lapinskas, parengė tolimesnių nusikalstamų veiksmų planą, kurį vykdant Nerijaus Tautvydo, Mindaugo Švermicko ir Ramūno Lapinsko surasti ikiteisminio tyrimo metu nustatinėjami asmenys, laikotarpiu nuo 2021 m. vasario 6 d. iki 2021 m. vasario 23 d. UAB „Akmenstata" teritorijoje, esančioje Elektrėnų g. 3B, Pastrėvys, Elektrėnų sav., išpjaudami ertmes marmuro gaminių plokštėse, pagamino jose slėptuves narkotinei medžiagai gabenti. Veikdamas pagal susitarimą, Aleksandrs Zaicevs laikotarpiu nuo 2021 m. vasario 2 d. iki 2021 m. vasario 23 d. bendrai su ikiteisminio tyrimo nustatinėjamais asmenimis išardė pažeistas marmuro gaminių plokštes ir iš jų išėmė ten paslėptą labai didelį narkotinės medžiagos kiekį – ne mažiau kaip 1 480,4 kg kanapių dervos (hašišo). Tuo pat laikotarpiu Ramūno Lapinsko bei Nerijaus Tautvydo nurodymu, tyrimo nustatinėjami asmenys iš UAB „Akmenstata" teritorijos, esančios Elektrėnų g. 3B, Pastrėvys, Elektrėnų sav., į Latvijos Respublikoje esančias A. Zaicevs išnuomotas patalpas, kuriose buvo neteisėtai laikomas labai didelis kiekis narkotinės medžiagos, nugabeno tyrimo nustatinėjamus vilkiką ir puspriekabę, pakrautą marmuro gaminių plokštėmis su slėptuvėmis jose.

4



Su Džeraldu Paulausku, Valdemaru Raudoniu, Olegu Kravchenko šifruotos komunikacijos platformos „Sky ecc" pagalba bei susitikimų metu suderinę savo veiksmus, laikotarpiu nuo 2021 m. vasario 24 d. iki 2021 m. kovo 3 d. Latvijos Respublikoje, tyrimo nustatinėjamoje vietoje esančiose patalpose, Ramūnas Lapinskas, Nerijus Tautvydas ir Aleksandrs Zaicevs perpakavo labai didelį kiekį narkotinės medžiagos, po ko dalį narkotinės medžiagos – 974 953 g kanapių dervos (hašišo), paslėpė į iš Lietuvos atgabentose marmuro gaminių plokštėse esančias slėptuves bei pakrovė į vilkiką „Volvo FM 400 FH 400", valst. Nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, o į slėptuves netilpusi narkotinės medžiagos dalis – ne mažiau kaip 505 kg kanapių dervos (hašišo), buvo palikta minėtose patalpose. Po to Ramūnas Lapinskas susitarė su vairuotoju Artūru Liubausku dėl narkotinės medžiagos gabenimo už atlygį iš Latvijos Respublikos į Rusijos Federaciją. Laikotarpiu nuo 2021 m. kovo 3 d. iki 2021 m. kovo 12 d. Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst .Nr. LRO 403, su puspriekabe „Schmitz S.PR 24-13.62", valst. Nr. DP 810, neteisėtai gabeno joje esantį labai didelį kiekį narkotinės medžiagos – 974 953 g kanapių dervos (hašišo) per Latvijos Respublikos teritoriją, sustodamas ikiteisminio tyrimo nustatinėjamoje automobilių stovėjimo aikštelėje, bei saugomoje aikštelėje, esančioje prie degalinės „Cirkle K" Salaspilyje, Nomietnu iela 1. Po ko, vykdydamas bendrininkų nurodymus, 2021 m. kovo 12 d. Artūras Liubauskas vilkiku „Volvo FM 400 FH 400", valst. Nr. LRO 403, su puspriekabėje „Schmitz S.PR 24-13.62", valst. Nr. DP 810, marmuro gaminių plokščių slėptuvėse paslėptu labai dideliu narkotinės medžiagos kiekiu, iš saugomos aikštelės, esančios prie minėtos degalinės „Cirkle K", link Latvijos Respublikos – Rusijos Federacijos valstybės sienos per Latvijos Respublikos teritoriją neteisėtai gabeno labai didelį narkotinių medžiagų kiekį – 974 953 g kanapių dervos (hašišo), kol 2021 m. kovo 12 d. 5.30 val. Rygos mieste, Uriekstes iela 16, buvo sulaikytas Latvijos policijos pareigūnų.

Šiais veiksmais Nerijus Tautvydas įtariamas padaręs nusikalstamas veikas, numatytas BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje, 199 straipsnio 4 dalyje.

Taip pat Nerius Tautvydas, būdamas vienu iš „Džerkinių" ginkluoto nusikalstamo susivienijimo organizatorių ir dalyvių, dėl savanaudiškų paskatų – turėdamas tikslą pasipelnyti iš nusikalstamo susivienijimo dalyvių daromų nusikaltimų, skatindamas kitus nusikalstamo susivienijimo dalyvius daryti nusikaltimus ir gaudamas iš jų padarymo nusikalstamą pelną, veikdamas bendrai su šio susivienijimo vadovu Džeraldu Paulausku bei dalyviais Valdemaru Raudoniu, Jonu Sirvydu ir Liutauru Nemeikšiu, nusikalstamam susivienijimui nepriklausančiais Titu Ramanausku, Dariumi Palinausku, Vaidu Filipavičiumi bei kitais ikiteisminio tyrimo metu nustatinėjamais asmenimis, laikotarpiu nuo 2020 m. lapkričio 24 d. iki 2021 m. spalio 9 d. organizavo neteisėtą labai didelio kiekio narkotinių medžiagų – kanapių dervos (hašišo) įgijimą Ispanijos Karalystėje, neteisėtą narkotinių medžiagų gabenimą iš Ispanijos Karalystės per Europos Sąjungos valstybių teritoriją į Lenkijos Respubliką, o iš ten į Rusijos Federaciją, slepiant narkotines medžiagas vilkikuose ir kitose transporto priemonėse, neteisėtą labai dideli kiekio narkotinių medžiagų realizavimą Rusijos Federacijoje.

Realizuodami bendrą su Džeraldu Paulausku, Nerijumi Tautvydu ir Valdemaru Raudoniu nusikalstamą sumanymą, Jonas Sirvydas ir Liutauras Nemeikšis sau ir bendrininkams paskyrė užduotis ir vaidmenis: 2020 m. lapkričio 24 d. – 2021 m. spalio 9 d. laikotarpiu Ispanijos Karalystėje ikiteisminio tyrimo nustatinėjamomis aplinkybėmis, tarpininkaujant ikiteisminio tyrimo nustatinėjamiems bendrininkams, mažiausiai per tris kartus, tikslu realizuoti Rusijos Federacijoje, įgijo labai didelį narkotinių medžiagų kiekį – ne mažiau kaip 479 kg kanapių dervos (hašišo); įtraukė į nusikalstamą veiklą nusikalstamam susivienijimui nepriklausančius Vaidą Filipavičių, Darių Palinauską, Titą Ramanauską bei organizavo su bendrininkais paminėtos narkotinės medžiagos neteisėtą gabenimą į Lenkijos Respubliką ir ten šio labai didelio narkotinės medžiagos kiekio laikymą; organizavo su bendrininkais minėto labai didelio kiekio narkotinės medžiagos



neteisėtą gabenimą į Rusijos Federaciją ir neteisėtą realizavimą ten, iš ko 244 kg kanapių dervos (hašišo) buvo sulaikyti Lenkijos Respublikoje pareigūnų.

Veikdami pagal susitarimą su Dželaldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, laikotarpiu nuo 2020 m. lapkričio 24 d. iki 2020 m. gruodžio 11 d. Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami tarpusavyje ir su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. Ikiteisminio tyrimo metu nustatinėjami bendrininkai, 2020 m. gruodžio 11 d. vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo). Laikotarpiu nuo 2020 m. gruodžio 13 d. iki 2020 m. gruodžio 17 d. Jonas Sirvydas ir Liutauras Nemeikšis organizavo ne mažiau kaip 110 kg kanapių dervos (hašišo) gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimo eigą per Europos valstybių teritorijas. Vykdydamas Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Vaidas Filipavičius 2020 m. gruodžio 17 d. ikiteisminio tyrimo nustatinėjamoje vietoje neteisėtai įgijo iš tyrimo metu nenustatyto asmens labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo), kurią neteisėtai gabeno per Lenkijos Respublikos teritoriją iki tyrimo metu nustatinėjamos vietos, kur iki 2021 m. vasario 24 d. minėtos narkotinės medžiagos buvo neteisėtai laikomos. Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas, vykdami Jono Sirvydo ir Liutauro Nemeikšio nurodymus 2021 m. vasario 24 d. laikotarpiu nuo 1.53 val. iki 2.11 val. susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko vairuojamą ikiteisminio tyrimo nustatinėjamą transporto priemonę. Tuomet ne vėliau kaip 2021 m. vasario 26 Darius Palinauskas ir Titas Ramanauskas labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 110 kg kanapių dervos (hašišo), neteisėtai gabeno iš Lenkijos Respublikos per Baltarusijos Respubliką į Rusijos Federacijos Smolensko sritį, kur neteisėtai realizavo, perduodami ikiteisminio tyrimo nenustatytiems asmenims.

Veikdami pagal susitarimą su Dželaldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, tęsdami suplanuotą nusikaltimą, ne vėliau kaip 2021 m. kovo 2 d. Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. 2021 m. kovo 2 d. ikiteisminio tyrimo metu nustatinėjami bendrininkai, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo). Ne vėliau kaip 2021 m. kovo 3 d., Jonas Sirvydas ir Liutauras Nemeikšis organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo) neteisėtą gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimą per Europos valstybių teritorijas. Vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas 2021 m. kovo 9 d. susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowoslawy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį narkotinės medžiagos – kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko ikiteisminio tyrimo nustatinėjamą transporto priemonę, po ko Darius Palinauskas ir Titas Ramanauskas labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 125 kg kanapių dervos (hašišo), neteisėtai gabeno per Lenkijos Respublikos, Baltarusijos Respublikos ir Rusijos

6



Federacijos teritorijas į Smolensko sritį, kur neteisėtai realizavo, perduodami ikiteisminio tyrimo nenustatytiems asmenims.

Veikdami pagal susitarimą su Dželaldu Paulausku, Nerijumi Tautvydu, Valdemaru Raudoniu ir realizuodami nusikalstamą sumanymą, tęsdami suplanuotą nusikaltimą, ne vėliau kaip 2021 m. spalio 9 d. Jonas Sirvydas ir Liutauras Nemeikšis, kontaktuodami su tyrimo metu nustatinėjamais bendrininkais bei tyrimo metu nustatinėjamais narkotinių medžiagų tiekėjais, organizavo neteisėtą labai didelio kiekio narkotinės medžiagos – kanapių dervos (hašišo), įgijimą Ispanijos Karalystėje. Ne vėliau kaip 2021 m. spalio 9 d. ikiteisminio tyrimo nustatinėjami bendrininkai, vykdydami Jono Sirvydo ir Liutaro Nemeikšio nurodymus, Ispanijos Karalystėje neteisėtai įgijo labai didelį kiekį narkotinės medžiagos – ne mažiau kaip 244 kg kanapių dervos (hašišo). Tęsdami nusikalstamą veiką, nevėliau kaip 2021 m. spalio 9 d. tiksliau nenustatytomis aplinkybėmis, Jonas Sirvydas ir Liutauras Nemeikšis organizavo labai didelio kiekio narkotinės medžiagos – ne mažiau kaip 244 kg kanapių dervos (hašišo) neteisėtą gabenimą iš Ispanijos Karalystės į Lenkijos Respubliką, koordinavo narkotinių medžiagų gabenimo eigą per Europos valstybių teritorijas. Vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus dėl narkotinės medžiagos gabenimo iš Lenkijos Respublikos per Baltarusijos Respubliką į Rusijos Federaciją, Vaidas Filipavičius, Darius Palinauskas ir Titas Ramanauskas, vykdydami Jono Sirvydo ir Liutauro Nemeikšio nurodymus, 2021 m. spalio 9 d. susitiko Lenkijos Respublikoje esančios degalinės „SHELL Polska SP z.o.o.", adresu ul. Nowosławy Dolne 140, Dmosin mieste, teritorijoje, kur perkrovė labai didelį kiekį narkotinės medžiagos – kanapių dervos (hašišo) iš Vaido Filipavičiaus vairuojamos ikiteisminio tyrimo nustatinėjamos transporto priemonės į Dariaus Palinausko ir Tito Ramanausko vairuojamą transporto priemonę vilkiką „DAF XF480FT", valst. Nr. KHJ 035, su puspriekabe „Pezzaioli SBA 3", valst. Nr. MP 643, nuosavybės teise priklausančias UAB „Transfriga", po ko D. Palinauskas ir T. Ramanauskas labai didelį kiekį narkotinės medžiagos – 244 kg kanapių dervos (hašišo) paminėta transporto priemone neteisėtai gabeno per Lenkijos Respublikos teritoriją į Rusijos Federaciją, tačiau 2021 m. spalio 9 d. buvo sulaikyti Lenkijos Respublikos policijos pareigūnų. Šiais veiksmais Nerijus Tautvydas įtariamas padaręs nusikalstamas veikas, numatytas BK 25 straipsnio 4 dalyje, 7 straipsnio 12 punkte, 260 straipsnio 3 dalyje.

2022 m. lapkričio 4 d. prokuroro nutarimu Nerijus Tautvydas pripažintas įtariamuoju pagal BK 249 straipsnio 3 dalį, 25 straipsnio 4 dalį, 7 straipsnio 12 punktą, 260 straipsnio 3 dalį, 199 straipsnio 4 dalį.

2022 m. lapkričio 4 d. prokuroro nutarimu buvo paskelbta įtariamojo Nerijaus Tautvydo paieška.

Prokurorė teismo posėdžio metu prašė skirti įtariamajam Nerijui Tautvydui kardomąją priemonę suėmimą Lietuvos Respublikos baudžiamojo proceso kodekso (toliau – ir BPK) 122 straipsnio 1 dalies 1, 2 ir 3 punktuose numatytais pagrindais.

Įtariamojo Nerijaus Tautvydo gynėja advokatė teismo posėdžio metu nurodė, kad nesutinka su kardomosios priemonės suėmimo paskyrimu, nes įtariamajam nėra įteiktas pranešimas apie įtarimą, jis įtariamuoju pripažintas prokuroro nutarimu, o prokurorė nenurodė, kokių veiksmų ėmėsi surasti įtariamąjį Nerijų Tautvydą.

*Prokurorės prašymas tenkintinas.*

Svarstydamas kardomosios priemonės skyrimo klausimą, teismas nevertina byloje esančių įrodymų ir nesprendžia, ar įtariamasis yra kaltas. Šioje proceso stadijoje pareiškimą nagrinėjantis teismas tik patikrina tai, ar byloje yra pakankamai duomenų, leidžiančių manyti, jog įtariamasis padarė jam inkriminuojamą nusikalstamą veiką, ir ar yra pagrindas paskirti jam kardomąją priemonę suėmimą. Ikiteisminio tyrimo metu yra surinkta pakankamai faktinių duomenų, leidžiančių manyti, kad įtarimas Nerijui Tautvydui pareikštas pagrįstai – duomenys, gauti pagal Europos tyrimo orderius ir tarptautinės teisinės pagalbos prašymus, taikant procesinės prievartos



priemones gauti duomenys, policijos pareigūnų tarnybiniai pranešimai ir kita ikiteisminio tyrimo bylos medžiaga.

Skiriant suėmimą BPK 122 straipsnio 1 dalies 1, 2 ir 3 punktuose nurodytais pagrindais, būtina atsižvelgti į visas BPK 122 straipsnio 2, 3 ir 4 dalyse nurodytas aplinkybes.

BPK 122 straipsnio 2 dalyje nurodyta, kad kai pagrįstai manoma, jog įtariamasis bėgs (slėpsis) nuo ikiteisminio tyrimo pareigūnų, prokuroro ar teismo, suėmimas gali būti paskirtas atsižvelgiant į įtariamojo šeiminę padėtį, nuolatinę gyvenamąją vietą, darbo santykius, sveikatos būklę, ankstesnį teistumą, ryšius užsienyje ir kitas aplinkybes. Teismų praktikoje pripažįstama, kad nusikaltimo sunkumas ir įstatymo sankcijoje numatyta griežta laisvės atėmimo bausmė priskiriama BPK 122 straipsnio 2 dalyje vartojamai „kitų aplinkybių" sąvokai. Šios aplinkybės pakanka pagrįstam manymui, kad įtariamasis bėgs, slėpsis nuo ikiteisminio tyrimo pareigūnų, prokuroro ar teismo, kai yra ir kitų faktinių aplinkybių, kurios patvirtintų ar paneigtų įtariamojo galimumą slėptis nuo ikiteisminio tyrimo pareigūnų ir taip neteisėtai jo vengti.

Kaip matyti iš ikiteisminio tyrimo medžiagoje esančių duomenų, Nerijus Tautvydas yra įtariamas labai sunkių nusikaltimų padarymu, taip pat ginkluoto nusikalstamo susivienijimo organizavimu, už ką baudžiamajame įstatyme numatytos tik labai griežtos laisvės atėmimo bausmės. Ikiteisminio tyrimo duomenimis, Nerijus Tautvydas Lietuvos Respublikoje neturi nei gyvenamosios vietos, nei pragyvenimo šaltinio, o po narkotinių medžiagų sulaikymo Latvijos Respublikoje jis su šeima išvyko į Jungtines Amerikos Valstijas, kur galimai gyvena ir šiuo metu, tačiau tiksli įtariamojo buvimo vieta yra nežinoma. Pagrįstai manytina, kad Nerijus Tautvydas turi ryšių su kitais asmenimis tiek Europos Sąjungos, tiek ir kitose valstybėse, nes ikiteisminio tyrimo duomenys leidžia įtarti jį organizavus didelio kiekio narkotinių medžiagų įgijimą Libano Respublikoje, Ispanijos Karalystėje ir jų gabenimą per Europos Sąjungos šalis, galimai ir į Rusijos Federaciją. Nustatyta, kad Nerijus Tautvydas su kitais nusikalstamo susivienijimo nariais bendrauja šifruoto ryšio priemonėmis, taigi sužinojęs apie atliekamą ikiteisminį tyrimą ir siekdamas išvengti baudžiamosios atsakomybės gali slėptis tiek Europos, tiek ir kitose valstybėse. Šios aplinkybės sudaro pagrindą skirti jam suėmimą BPK 122 straipsnio 1 dalies 1 punkte įtvirtintu pagrindu.

BPK 122 straipsnio 3 dalyje nurodyta, jog kai pagrįstai manoma, kad įtariamasis trukdys procesui, suėmimas gali būti paskirtas, jei yra duomenų, jog įtariamasis pats ar per kitus asmenis gali bandyti: 1) paveikti nukentėjusiuosius, liudytojus, ekspertus, kitus įtariamuosius, kaltinamuosius ar nuteistuosius; 2) sunaikinti, paslėpti ar suklastoti daiktus bei dokumentus, turinčius reikšmės nusikalstamai veikai tirti ir nagrinėti teisme.

Nerijus Tautvydas įtariamas ginkluoto nusikalstamo susivienijimo organizavimu, į kurį galimai įtraukė ir kitus asmenis. Ikiteisminio tyrimo metu surinkti duomenys leidžia spręsti, kad nusikalstamų veikų bendrininkai tarpusavyje bendrauja šifruoto ryšio priemonėmis, laikosi itin griežtos konspiracijos ir atsargumo priemonių, nusikalstamas veikas daro pasiskirstydami vaidmenimis. Taigi yra pakankamas pagrindas manyti, kad Nerijus Tautvydas, sužinojęs apie atliekamą ikiteisminį tyrimą, bandys suderinti pozicijas su kitais įtariamaisiais, paveikti kitus asmenis, sunaikinti daiktus ar dokumentus, reikšmingus atliekamam ikiteisminiam tyrimui, taip trukdant ikiteisminiam tyrimui.

BPK 122 straipsnio 4 dalyje nurodyta, jog kai pagrįstai manoma, kad įtariamasis darys naujus nusikaltimus, suėmimas gali būti paskirtas, jei yra duomenų, jog asmuo, įtariamas padaręs vieną ar kelis labai sunkius ar sunkius nusikaltimus arba BK 178 straipsnio 2 dalyje, 180 straipsnio 1 dalyje, 181 straipsnio 1 dalyje, 187 straipsnio 2 dalyje numatytus apysunkius nusikaltimus, iki nuosprendžio priėmimo gali padaryti naujų labai sunkių, sunkių ar šioje dalyje nurodytų apysunkių nusikaltimų, taip pat jei yra duomenų, kad būdamas laisvėje asmuo, įtariamas grasinimu ar pasikėsinimu padaryti nusikaltimą, gali tą nusikaltimą padaryti.

8



Įtarimas Nerijui Tautvydui pareikštas dėl ginkluoto nusikalstamo susivienijimo, kuris vykdė labai didelio narkotinių medžiagų kiekio kontrabandą ir disponavo labai dideliu kiekiu narkotinių medžiagų, organizavimo. Šios nusikalstamos veikos galimai buvo daromos siekiant nusikalstamai praturtėti, buvo kruopščiai planuojamos ir organizuojamos, įtraukiant Lietuvos Respublikos ir kitų šalių piliečius. Ikiteisminio tyrimo duomenys rodo, kad net ir po dalies narkotinių medžiagų sulaikymo, nusikalstama veikla galėjo būti tęsiama ir toliau. Duomenų apie kitą Nerijaus Tautvydo pragyvenimo šaltinį ikiteisminio tyrimo byloje nėra, todėl yra pakankamas pagrindas manyti, jog Nerijus Tautvydas gali ir toliau daryti naujus nusikaltimus. Taigi egzistuoja ir BPK 122 straipsnio 1 dalies 3 punkte numatytas suėmimo skyrimo pagrindas.

Įvertinus tiriamų nusikalstamų veikų pavojingumo laipsnį, įtariamojo asmenybę ir aplinkybes, kad įtariamasis yra išvykęs iš Lietuvos, su Lietuva jo nesaisto šeiminiai, darbiniai ir kitokie socialiniai ryšiai, įtariamojo buvimo vieta yra užsienyje, kur jis turi plačius ryšius, įtariamasis gali trukdyti ikiteisminiam tyrimui ir daryti naujas nusikalstamas veikas, konstatuotina, kad šioje ikiteisminio tyrimo stadijoje švelnesnėmis kardomosiomis priemonėmis negalima pasiekti BPK 119 straipsnyje numatytų tikslų. Suėmimas skiriamas siekiant užtikrinti netrukdomą ikiteisminį tyrimą, įtariamojo dalyvavimą procese ir užkirsti kelią naujų nusikalstamų veikų darymui.

Teisėja, vadovaudamasi tuo, kas išdėstyta, ir Lietuvos Respublikos baudžiamojo proceso kodekso 119, 122–127 straipsniais,

n u t a r ė :

Generalinės prokuratūros Organizuotų nusikaltimų ir korupcijos tyrimo departamento prokurorės Aidos Japertienės pareiškimą tenkinti.

Įtariamajam Nerijui Tautvydui, asmens kodas 38406060244, paskirti kardomąją priemonę suėmimą.

Suimtą Nerijų Tautvydą ne vėliau kaip per 48 val. nuo suėmimo momento pristatyti ikiteisminio tyrimo teisėjui.

Ši nutartis per 20 dienų suimtojo arba jo gynėjo gali būti skundžiama Vilniaus apygardos teismui, skundą paduodant per Vilniaus miesto apylinkės teismą.

Teisėjas (-a)                                                                 Rasa Paulauskaitė-Šiaulė



## DETALŪS METADUOMENYS

| | |
|---|---|
| **Dokumento sudarytojas (-ai)** | Vilniaus miesto apylinkės teismas 302942160, Laisvės pr. 79A, Vilnius |
| **Dokumento pavadinimas (antraštė)** | Nerijus Tautvydas Posėdžio nutartis |
| **Dokumento registracijos data ir numeris** | 2022-11-07 Nr. IBPS-V-2947272-22 |
| **Dokumento gavimo data ir dokumento gavimo registracijos numeris** | – |
| **Dokumento specifikacijos identifikavimo žymuo** | ADOC-V1.0 |
| **Parašo paskirtis** | Pasirašymas |
| **Parašą sukūrusio asmens vardas, pavardė ir pareigos** | Rasa Paulauskaitė-Šiaulė, Teisėjas(a), Vilniaus miesto apylinkės teismas |
| **Sertifikatas išduotas** | RASA PAULAUSKAITĖ, Vilniaus miesto apylinkės teismas, Nacionalinė teismų administracija LT |
| **Parašo sukūrimo data ir laikas** | 2022-11-07 13:16:34 (GMT+02:00) |
| **Parašo formatas** | XAdES-X-L |
| **Laiko žymoje nurodytas laikas** | 2022-11-07 13:14:46 (GMT+02:00) |
| **Informacija apie sertifikavimo paslaugų teikėją** | RCSC IssuingCA, VI Registrų centras - i.k. 124110246 LT |
| **Sertifikato galiojimo laikas** | 2022-05-10 12:52:04 – 2024-05-09 12:52:04 |
| **Informacija apie būdus, naudotus metaduomenų vientisumui užtikrinti** | "Registravimas" paskirties metaduomenų vientisumas užtikrintas naudojant "RCSC IssuingCA, VI Registrų centras - i.k. 124110246 LT" išduotą sertifikatą "Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos, Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos, j.k.188774822 LT", sertifikatas galioja nuo 2022-02-28 14:20:39 iki 2025-02-27 14:20:39. Veiksmą atliko 2022-11-07 13:16:43 (GMT+02:00) Informatikos ir ryšių departamentas prie LR vidaus reikalų ministerijos |
| **Pagrindinio dokumento priedų skaičius** | – |
| **Pagrindinio dokumento pridedamų dokumentų skaičius** | – |
| **Pridedamo dokumento sudarytojas (-ai)** | – |
| **Pridedamo dokumento pavadinimas (antraštė)** | – |
| **Pridedamo dokumento registracijos data ir numeris** | – |
| **Programinės įrangos, kuria naudojantis sudarytas elektroninis dokumentas, pavadinimas** | IBPS sistema, versija 1.3.17 |
| **Informacija apie elektroninio dokumento ir elektroninio (-ių) parašo (-ų) tikrinimą (tikrinimo data)** | Atitinka specifikacijos keliamus reikalavimus. Visi dokumente esantys elektroniniai parašai galioja (2022-12-07 11:17:53) |
| **Elektroninio dokumento nuorašo atspausdinimo data ir jį atspausdinęs darbuotojas** | Nuorašą suformavo IBPS sistema 2022-12-07 11:17:53 Prokurorė Jurga Zieniūtė |
| **Ikiteisminio tyrimo Nr.** | TP-05-00009-22 |



*Dokumento skaitmeninė kopija*

*/TRANSLATION FROM LITHUANIAN/*

**E-transcript**

*/the Coat of Arms of the Republic of Lithuania/*

*/QR code/*

## DISTRICT COURT OF VILNIUS CITY

### RULING

07/11/2022

Rasa Paulauskaitė-Šiaulė, the pre-trial investigation judge of the District Court of Vilnius City, with Kamilia Animuckaja as the registrar of the hearing,
in the presence of
the Prosecutor Aida Japertienė,
the lawyer Kristina Sandaraitė-Butvilienė as the Defence of the suspect Nerijus Tautvydas,
and in the absence of the suspect Nerijus Tautvydas,

has examined in the private court hearing held remotely by the oral procedure the application of the prosecutor of the Organised Crime and Corruption Investigation Department under the Prosecutor General's Office of the Republic of Lithuania Aida Japertienė (hereinafter referred to as the 'Prosecutor') regarding the remand in custody of the suspect Nerijus Tautvydas.

The court

e s t a b l i s h e d  t h e  f o l l o w i n g :

Nerijus Tautvydas, born 6 June 1984, personal ID number 38406060244, declared place of residence Saulės str. 10-21, Elektrėnai, Elektrėnai Municipality, with no criminal record (expunged),

is suspected to have organized the 'Džerkiniai' armed criminal association and participated in its activities, as well as to have possessed unlawfully a large quantity of narcotic substances, and organized the trafficking thereof, specifically:

Nerijus Tautvydas, no later than in 2014, for immoral motives, in order to criminally enrich himself and to gain significant influence among the actors of the Lithuanian and foreign criminal world, having agreed in advance with Džeraldas Paulauskas and Valdemaras Raudonis to commit grave, serious and less serious crimes, such as unlawful possession of very large quantities of the narcotic substances, the trafficking thereof, as well as other grave and serious crimes, has organised (established) an armed criminal association 'Džerkiniai', that has been led by Džeraldas Paulauskas since 2014, and engaged Jonas Sirvydas, Liutauras Nemeikšis, Mindaugas Švermickas, the citizen of the Russian Federation Oleg Kravchenko, Ramūnas Lapinskas and other individuals currently being identified, in the activities of the said criminal association, as well as engaged Vaidas Filipavičius, Artūras Liubauskas, Titas Ramanauskas, Darius Palinauskas, citizen of the Federal Republic of Germany Riccardo Marian Rotmann, citizen of the Czech Republic Vilem Kovač, citizen of the Republic of Latvia Aleksandrs Zaicevs and other individuals who are not members of the said armed criminal association for joint criminal activities, i.e. for commission of individual crimes, and participated together with other accomplices in the activities of the said armed criminal association until the end of 2022.

During the 2015-2022 period, while the armed criminal association 'Džerkiniai' existed, Nerijus Tautvydas had a treasury common with the leader of the armed criminal association and other members for financing the activities of the armed criminal association, acquired, transported and possessed,

*Projektų vadovė*
*Eglė DAUNORAVIČIŪTĖ*

*/TRANSLATION FROM LITHUANIAN/*

without authorisation, a large quantity of firearms and ammunition, which he planned to use in the crimes committed by the criminal association.

Nerijus Tautvydas, the leader of the 'Džerkiniai' armed criminal association and the members thereof held periodic briefings to discuss plans, specific crimes and other matters related to the activity of the armed criminal association using means of encrypted communications, both within and outside of the Republic of Lithuania.

> Genuine copy
> The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the
> Lithuanian Criminal Investigation Bureau
> (signature)
> Jelizaveta Sajenko
> 07/11/2022

2

*/QR code/*

Being one of the organisers and participants of the armed criminal association, Nerijus Tautvydas, acting for his own benefit and for the benefit of the members of the armed criminal association, in order to criminally enrich himself, committed crimes specified in the Criminal Code of the Republic of Lithuania: Article 260 (3), i.e. organised the unlawful possession of a very large quantity of narcotic substances; Article 199 (4), i.e. organised the trafficking of the narcotic substances to and from the Republic of Lithuania. These actions make Nerijus Tautvydas a suspect in committing a criminal offence under Article 249 (3) of the Criminal Code of the Republic of Lithuania.

Nerijus Tautvydas is also suspected of organising unlawful possession of a very large quantity of a narcotic substance and the trafficking thereof to and from the Republic of Lithuania, while being one of the organisers and members of the 'Džerkiniai' armed criminal association, and acting together with the leader of the said armed criminal association Džeraldas Paulauskas, and the members of the said armed criminal association Valdemaras Raudonis, Ramūnas Lapinskas, Mindaugas Švermickas, the citizen of the Russian Federation Oleg Kravchenko, as well as other individuals, who are not members of the said armed criminal association – the citizen of the German Federal Republic Riccardo Marian Rotmann, citizen of the Czech Republic Vilem Kovač, citizen of the Republic of Latvia Aleksandrs Zaicevs and other individuals currently being identified in course of investigation, for immoral motives, namely:

Before 9 August 2022, Nerijus Tautvydas, acting together with the leader of the said armed criminal association Džeraldas Paulauskas, and the members of the said armed criminal association Valdemaras Raudonis, Ramūnas Lapinskas, Mindaugas Švermickas, the citizen of the Russian Federation Oleg Kravchenko, as well as other individuals, who are not members of the said armed criminal association – the citizen of the German Federal Republic Riccardo Marian Rotmann, citizen of the Czech Republic Vilem Kovač, citizen of the Republic of Latvia Aleksandrs Zaicevs and other individuals currently being identified in course of investigation, organised unlawful acquisition of a very large quantity – no less than 3,480kg – of a narcotic substance cannabis resin (hashish) in the Republic of Lebanon, unlawful possession and transportation of the said narcotic substance and the trafficking thereof.

In execution of their plan for criminal offence, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Mindaugas Švermickas, Ramūnas Lapinskas, as well as Riccardo Marian Rotmann, who is not a member of the armed criminal association, and other individuals currently being identified in course of investigation, organised unlawful acquisition of a very large

*Projektų vadovė*
*Egle DAUNORAVIČIŪTĖ*

*/TRANSLATION FROM LITHUANIAN/*

quantity – no less than 3,480kg – of a narcotic substance cannabis resin (hashish) in the Republic of Lebanon and its unlawful transportation from the Republic of Lebanon to Czech Republic in transit through European countries during the period from 23 August 2020 until 22 November 2020.

By common agreement between Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko, Ramūnas Lapinskas, Riccardo Marian Rottman and other accomplices currently being identified, the load of at least 3,480kg of cannabis resin was divided into two parts, one of which remained in the Czech Republic and the other part, consisting of no less than 1,480.4kg of cannabis resin (hashish), which was concealed in hiding places made in slabs of marble products, was trafficked to the Republic of Lithuania at the instruction of Džeraldas Paulauskas and his accomplices no later than on 30 December 2020. In organising the transportation of a large quantity of a narcotic substance, Ramūnas Lapinskas and his accomplices involved Artūras Liubauskas in the commission of criminal offence, who, no later than until 30 December 2020, driving the road tractor being identified in course of investigation with semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, loaded with no less than 1,480.4kg of cannabis resin (hashish), concealed in hiding places made in slabs of marble products, was unlawfully transporting this very large quantity of narcotic substance from the Czech Republic to the Polish-Lithuanian state border in transit through territories of European countries, then transported the said narcotic substance through the Polish-Lithuanian border without submitting the cargo for customs control and avoiding it by having concealed the narcotic substances in hiding places made in slabs of marble products, and then unlawfully transported this very large quantity of the narcotic substance from the state border through the territory of the Republic of Lithuania to the location in

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
07/11/2022

3

*/QR code/*

Kaunas county, currently being identified in course of investigation, and from there, on 31 December 2020, at the instruction of Ramūnas Lapinskas, Nerijus Tautvydas and Mindaugas Švermickas, the said very large quantity of narcotic substance was unlawfully transported through the territory of the Republic of Lithuania to the location currently being identified in course of investigation, referred to by the members of the criminal association 'at Tadas'.

After Ramūnas Lapinskas, Džeraldas Paulauskas, Valdemaras Raudonis, Nerijus Tautvydas and Mindaugas Švermickas provided the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403 and connected a semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, with a large quantity of a narcotic substance – no less than 1,480.4kg of cannabis resin (hashish) – concealed in hiding places made in slabs of marble products that the semi-trailer was loaded with, and organised the trafficking of the said narcotic substance from the Republic of Lithuania, Artūras Liubauskas, between 24 January 2021 and 25 January 2021, at the instruction of his accomplices, transported a very large quantity – no less than 1,480.4 kg – of a narcotic substance cannabis resin (hashish), from the location referred to as 'at Tadas' currently being identified in course of investigation, to the Lithuanian-Latvian state border, and, without a permit, transported the aforementioned narcotic substance across the state border of the Republic of Lithuania, without submitting the cargo to customs control and avoiding customs control by having concealed the narcotic substances in hiding places made in slabs of marble

*Projekty vadove*
*Egl. D. NORAVIČIŪTĖ*

*/TRANSLATION FROM LITHUANIAN/*

products, then unlawfully transported a very large quantity of a narcotic substance from the state border through the territory of the Republic of Latvia, up to the Latvian-Russian border inspection post at Terehov, however, having noticed damage (cracks) in some slabs of marble products in which the narcotic substances were concealed, in order to avoid the possible discovery and apprehension of narcotic substances during the customs checks, Artūras Liubauskas has stopped in the vicinity of the said border post, where he left the vehicle containing the narcotic substances and, after informing his accomplices of this, returned to the Republic of Lithuania.

Having discussed the situation, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis and Ramūnas Lapinskas, in agreement with Aleksandrs Zaicevs, instructed him to find premises for keeping the road tractor with semi-trailer and for re-loading of the narcotic substances to other hiding places, as well as a driver, who, at the instruction of Aleksandrs Zaicevs and accompanied by individuals sent by Aleksandrs Zaicevs, currently being identified in course of investigation, on 2 February 2021, by the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403, with semi-trailer Schmitz .PR 24-13.62, licence plate No. DP 810, unlawfully transported a very large quantity of narcotic substances – no less than 1,480.4kg of cannabis resin (hashish) – concealed in in hiding places made in slabs of marble products that the semi-trailer was loaded with, through the territory of the Republic of Latvia, from the surroundings of the Terehov border inspection post to the premises arranged by A. Zaicevs at the location currently being identified in course of investigation, where he and his accomplices kept the said very large quantity of narcotic substance at least until 3 March 2021.

Continuing their preparations for the transportation of a very large quantity of narcotic substances to the Russian Federation, Džeraldas Paulauskas, Nerijus Tautvydas, Valdemaras Raudonis, Oleg Kravchenko and Ramūnas Lapinskas came up with a plan for further criminal activities, in execution of which the individuals found by Nerijus Tautvydas, Mindaugas Švermickas and Ramūnas Lapinskas, currently being identified in course of the investigation, in the territory of the private limited liability company Akmenstata, UAB, located at Elektrėnų str. 3B, Pastrėvys, Elektrėnai Municipality, made hiding places for the transportation of the narcotic substances by cutting out cavities in the slabs of marble products between 6 February 2021 and 23 February 2021. Acting as previously agreed, Aleksandrs Zaicevs, in the period from 2 February 2021 to 23 February 2021, jointly with individuals currently being identified in course of the pre-trial investigation, dismantled the damaged slabs of marble products and removed the very large quantity of narcotic substance – no less than 1,480.4 kg of cannabis resin (hashish) – concealed therein. During the same period, at the instruction of Ramūnas Lapinskas and Nerijus Tautvydas, the individuals currently being identified in course of the pre-trial investigation, have transported the road tractor with semi-trailer currently being identified in course of investigation, loaded with slabs of marble products with hiding places therein, from the territory of Akmenstata, UAB, located at Elektrėnų str. 3B, Pastrėvys, Elektrėnai Municipality, to premises leased by A. Zaicevs in the Republic of Latvia, where a very large quantity of narcotic substances was unlawfully stored.

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
07/11/2022

4

*/QR code/*

Projektų vadovė
Eglė DAUNORAVIČIŪTĖ

*/TRANSLATION FROM LITHUANIAN/*

Having coordinated their actions with Džeraldas Paulauskas, Valdemaras Raudonis and Oleg Kravchenko by means of an encrypted communication platform Sky ecc, and during the meetings, Ramūnas Lapinskas, Nerijus Tautvydas and Aleksandrs Zaicevs, in the period from 24 February 2021 to 3 march 2021, in the Republic of Latvia, at the premises, the location of which is currently being identified in course of investigation, have repackaged a very large quantity of narcotic substance, and afterwards concealed a part, i.e. 974,953g, of cannabis resin (hashish) in hiding places in slabs of marble products brought from Lithuania and loaded them into the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403 with semi-trailer Schimtz S.PR 24-13.62, licence plate No. DP 810, and the part of the narcotic substances that did not fit – at least 505kg of cannabis resin (hashish) – was left at the said premises. Ramūnas Lapinskas then arranged with the driver, Artūras Liubauskas, to transport the narcotic substance from the Republic of Latvia to the Russian Federation in return for payment. From 3 March 2021 to 12 March 2021 Artūras Liubauskas, driving the road tractor Volvo FM 400 FH 400, licence plate No. LRO 403, with semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, illegally transported a very large quantity of the narcotic substance - 974,953g of cannabis resin (hashish) – through the territory of the Republic of Latvia, stopping at a car park to be identified during the pre-trial investigation, and at a guarded car park at a petrol station Cirkle K, located at Salaspils, Nomietnu iela 1. After which, following the instructions of the accomplices, on 12 March 2021, Artūras Liubauskas driving a road tractor Volvo FM 400 FH 400, licence plate No. LRO 403, with semi-trailer Schmitz S.PR 24-13.62, licence plate No. DP 810, loaded with a very large quantity of a narcotic substance concealed in the hiding places in slabs of marble products, was illegally transporting a very large quantity of narcotic substances – 974,953g of cannabis resin (hashish) – from the secure parking area at the above-mentioned Cirkle K petrol station, towards the Latvian-Russian state border through the territory of the Republic of Latvia to the territory of the Russian Federation, until he was apprehended by Latvian police officers in Riga, Uriekstes iela 16, at 5.30 a.m. on 12 March 2021.

By these actions, Nerijus Tautvydas is suspected of having committed the criminal offences provided for in Articles 25(4), 7(12), 260(3) and 199(4) of the Criminal Code.

In addition, Nerijus Tautvydas, as one of the organisers and members of the 'Džerkiniai' armed criminal association, for immoral motives - with the aim of profiting from the crimes committed by the members of the criminal association, by encouraging other members of the criminal association to commit crimes, and by obtaining a criminal profit from the commission of crimes, acting jointly with the leader of the criminal association, Džeraldas Paulauskas, and its members Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis, as well as with Titas Ramanauskas, Darius Palinauskas, Vaidas Filipavičius, who are not members of the criminal association, and other persons to be identified in the course of the pre-trial investigation, during the period from 24 November 2020 to 9 October 2021, organised the unlawful acquisition of a very large quantity of narcotic substances - cannabis resin (hashish) - in the Kingdom of Spain, the unlawful transport of narcotic substances from the Kingdom of Spain through the territory of the Member States of the European Union to the territory of the Republic of Poland, and then to the Republic of the Russian Federation, hiding the narcotic substances in road tractors and other vehicles, and the unlawful disposal of a very large quantity of narcotic substances in the Russian Federation.

In pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis assigned themselves and their accomplices the following tasks and roles: in the period from 24 November 2020 to 9 October 2021, in the Kingdom of Spain, under circumstances to be determined in course of the pre-trial investigation, with the intermediation of accomplices to be determined in course of the pre-trial investigation, on at least three occasions, acquired a very large amount of narcotic substances, i.e. at least 479 kg of cannabis resin (hashish), with a view to disposing thereof in the Russian Federation, and recruited into the criminal

*/TRANSLATION FROM LITHUANIAN/*

activity Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas who were not members of the criminal association, and organised, with accomplices, the illicit transport and storage of the said narcotic substance to the Republic of Poland; organised, with accomplices,

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
07/11/2022

5

*/QR code/*

illicit transport of the said very large quantity of narcotic substance cannabis resin (hashish) to the Russian Federation and unlawful disposal thereof in the Russian Federation, 244 kg of which have been apprehended by officer in the Republic of Poland.

Acting as agreed with and in pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis, during the period from 24 November 2020 until 11 December 2020, in contact with each other and with accomplices and suppliers of narcotic substances to be identified in course of the investigation, organised acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. On 11 December 2020, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, the accomplices to be identified in course of the pre-trial investigation, illegally acquired in the Kingdom of Spain a very large quantity of a narcotic substance - at least 110 kg of cannabis resin (hashish). Between 13 December 2020 and 17 December 2020, Jonas Sirvydas and Liutauras Nemeikšis organised the transport of at least 110 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland and coordinated the course of the transport of narcotic substances through the territories of the European States. On 17 December 2020, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, Vaidas Filipavičius, at a place to be determined in the pre-trial investigation, illegally acquired from a person not identified in the investigation a very large quantity of a narcotic substance - at least 110 kg of cannabis resin (hashish), which he illegally transported across the territory of the Republic of Poland to the place to be determined in course of the investigation, where the aforementioned narcotic substances were illegally stored until 24 February 2021. On 24 February 2021, between 1.53 a.m. and 2.11 a.m., Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, met at the petrol station SHELL Polska SP z.o.o., located at ul. Nowoslawy Dolne 140, Dmosin, where they transferred a very large quantity of cannabis resin (hashish) from the vehicle driven by Vaidas Filipavičius, to be identified in course of the pre-trial investigation, to the vehicle driven by Darius Palinauskas and Titas Ramanauskas, to be identified in course of the pre-trial investigation. Then, no later than on 26 February 2021, Darius Palinauskas and Titas Ramanauskas illegally transported a very large quantity of the narcotic substance, at least 110 kg of cannabis resin (hashish), from the Republic of Poland via the Republic of Belarus to the Smolensk Region of the Russian Federation, where it was illegally disposed of by transferring it to the persons unidentified during the pre-trial investigation.

Acting as agreed with and in pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, continuing the commission of crime they have planned, no later than on 2 March 2021, Jonas Sirvydas and Liutauras Nemeikšis, in contact with accomplices and suppliers of narcotic substances to be identified in course of the investigation, organised unlawful acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom

Projektų vadovė
Eglė B ... NORAVIČIŪTĖ

*/TRANSLATION FROM LITHUANIAN/*

of Spain. On 2 March 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, the accomplices to be identified in course of the pre-trial investigation, illegally acquired in the Kingdom of Spain a very large quantity of a narcotic substance - at least 125 kg of cannabis resin (hashish). No later than on 3 March 2021, Jonas Sirvydas and Liutauras Nemeikšis organised the unlawful transport of at least 125 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland and coordinated the course of the transport of narcotic substances through the territories of the European States. On 9 March 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, met at the petrol station SHELL Polska SP z.o.o., located at ul. Nowoslawy Dolne 140, Dmosin, where they transferred a very large quantity of cannabis resin (hashish) from the vehicle driven by Vaidas Filipavičius, to be identified in course of the pre-trial investigation, to the vehicle driven by Darius Palinauskas and Titas Ramanauskas, to be identified in course of the pre-trial investigation. Then, Darius Palinauskas and Titas Ramanauskas illegally transported a very large quantity of the narcotic substance, at least 125 kg of cannabis resin (hashish), from the Republic of Poland via the Republic of Belarus to the Smolensk Region of the Russian Federation,

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
07/11/2022

6

*/QR code/*

where it was illegally disposed of by transferring it to the persons unidentified during the pre-trial investigation.

Acting as agreed with and in pursuit of the joint criminal conspiracy with Džeraldas Paulauskas, Nerijus Tautvydas and Valdemaras Raudonis, Jonas Sirvydas and Liutauras Nemeikšis, no later than on 9 October 2021, in contact with accomplices and suppliers of narcotic substances to be identified in course of the investigation, organised unlawful acquisition of a very large quantity of the narcotic substance – cannabis resin (hashish) in the Kingdom of Spain. No later than on 9 October 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, the accomplices to be identified in course of the pre-trial investigation, illegally acquired in the Kingdom of Spain a very large quantity of a narcotic substance - at least 244 kg of cannabis resin (hashish). Continuing the commission of the criminal offence, no later than on 9 October 2021, under unspecified circumstances, Jonas Sirvydas and Liutauras Nemeikšis organised the illegal transport of a very large quantity of the narcotic substance – at least 244 kg of cannabis resin (hashish) from the Kingdom of Spain to the Republic of Poland and coordinated the course of the transport of narcotic substances through the territories of the European States. On 9 October 2021, following the instructions of Jonas Sirvydas and Liutauras Nemeikšis, Vaidas Filipavičius, Darius Palinauskas and Titas Ramanauskas, met at the petrol station SHELL Polska SP z.o.o., located at ul. Nowoslawy Dolne 140, Dmosin, where they transferred a very large quantity of cannabis resin (hashish) from the vehicle driven by Vaidas Filipavičius, to be identified in course of the pre-trial investigation, to the road tractor DAF XF480FT, licence plate No. KHJ 035, with semi-trailer Pezzaioli SBA 3, licence plate No. MP 643, both owned by the private limited liability company Transfiga, UAB, driven by Darius Palinauskas and Titas Ramanauskas. Then, Darius Palinauskas and Titas Ramanauskas were illegally transporting a very large quantity of the narcotic substance, at least 244 kg of cannabis resin (hashish).

Eglė DAUNORAVIČIŪTĖ

*/TRANSLATION FROM LITHUANIAN/*

through the territory of the Republic of Poland to the Russian Federation, when, on 9 October 2021, they were apprehended by officers of the Republic of Poland. By these actions, Nerijus Tautvydas is suspected of having committed the criminal offences provided for in Articles 25(4), 7(12) and 260(3) of the Criminal Code.

By the Prosecutor's Resolution dated 4 November 2022, Nerijus Tautvydas was declared a suspect under Articles 249(3), 25(4), 7(12), 260(3), 199(4) of the Criminal Code.

By the Prosecutor's Resolution dated 4 November 2022, a search for the suspect Nerijus Tautvydas was declared.

During the court hearing, the Prosecutor requested for the remand in custody of the suspect Nerijus Tautvydas pursuant to Article 122 (1) (1), Article 122 (1) (2) and Article 122 (1) (3) of the Code of Criminal Procedure of the Republic of Lithuania.

During the hearing, the defence lawyer of the suspect Nerijus Tautvydas stated that she disagreed with the imposition of the remand in custody on the grounds that the suspect had not been served with a notification of suspicion, that the suspect had been recognised as a suspect by a resolution of the prosecutor, and the prosecutor had failed to indicate the actions she had taken in order to find the suspect Nerijus Tautvydas.

*The Prosecutor's request shall be granted.*

When considering whether to impose the remand in custody, the court does not assess the evidence in the case or decide whether the suspect is guilty. At this stage of the proceedings, the court hearing the application shall only examine whether there is sufficient evidence in the case file to believe that the suspect has committed the offence charged and whether there are grounds for imposing the remand in custody on him. Sufficient factual evidence has been gathered during the pre-trial investigation, leading to believe that the suspicion against Nerijus Tautvydas is well-founded, including data obtained in accordance with European Investigation Orders and requests for international legal assistance, data obtained through the application of procedural coercive measures,

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
07/11/2022

7

*/QR code/*

police officers' official reports and other material in the pre-trial investigation file.

When imposing remand in custody on the grounds referred to in Article 122(1)(1), 122 (1) (2) and 122 (1) (3) of the Code of Criminal Procedure, it is necessary to take into account all the circumstances referred to in Article 122(2), 122(3) and 122(4).

Article 122(2) of the Code of Criminal Procedure states that where it is reasonably believed that the suspect will flee (abscond) from the pre-trial investigation officers, the prosecutor or the court, arrest may be ordered taking into account the suspect's marital status, habitual residence, employment relations, state of health, previous convictions, contacts abroad and other circumstances. In case law, it is recognised that the seriousness of the offence and the severe penalty of imprisonment provided for in the law are included in the concept of 'other circumstances' referred to in Article 122(2) of the Code of Criminal Procedure. This circumstance is sufficient to justify a reasonable belief that the suspect will flee or hide from pre-trial investigators, the prosecutor or the court, when there are other factual circumstances which would confirm or deny the suspect's ability to hide from pre-trial investigators and thus unlawfully

Projekt( vadové
E/ DAUNORAVIČIŪTĖ

*/TRANSLATION FROM LITHUANIAN/*

evade them.

According to the pre-trial investigation file, Nerijus Tautvydas is suspected of committing grave crimes, including the organisation of an armed criminal association, for which the criminal law provides only for very severe custodial sentences. According to the pre-trial investigation data, Nerijus Tautvydas has no place of residence or livelihood in the Republic of Lithuania, and after the seizure of the narcotic substances in the Republic of Latvia, he and his family left for the United States, where he may be living now, but his exact whereabouts are unknown. It is reasonable to assume that Nerijus Tautvydas has contacts with other persons, both within the European Union and in other countries, as the pre-trial investigation data suggest that he is suspected of having organised the acquisition of large quantities of narcotic substances in the Republic of Lebanon, the Kingdom of Spain and their transportation through the countries of the European Union, possibly also to the Russian Federation. It has been established that Nerijus Tautvydas communicates with other members of the criminal organisation by means of encrypted communication, which means that he may hide in both European and other countries if he becomes aware of the ongoing pre-trial investigation and in order to avoid criminal liability. These circumstances justify his remand in custody on the grounds set out in Article 122(1)(1) of the Code of Criminal Procedure.

Article 122(3) of the Code of Criminal Procedure states that where there are reasonable grounds for believing that a suspect will obstruct proceedings, detention may be ordered if there is evidence that the suspect himself or through other persons may try: 1) to influence victims, witnesses, experts or other suspects, 2) destroy, conceal or falsify objects and documents, which are relevant for the investigation and trial of a criminal offence.

Nerijus Tautvydas is suspected of organising an armed criminal association, possibly involving other persons. Data gathered during the pre-trial investigation suggests that the accomplices of the criminal offences communicate with each other by means of encrypted communication, observe extremely strict conspiracy and precautionary measures, and carry out the criminal offences by dividing their roles. There are therefore sufficient grounds for believing that Nerijus Tautvydas, having learned of the ongoing pre-trial investigation, will attempt to coordinate his position with other suspects, to influence other persons, to destroy objects or documents relevant to the ongoing pre-trial investigation, and thus obstructing a pre-trial investigation.

Article 122(4) of the Code of Criminal Procedure states that where there are reasonable grounds to believe that the suspect will commit new offences, detention may be ordered if there are indications that the suspect is suspected of having committed one or more grave or serious offences, or less serious offences under Article 178(2), 180(1), 181(1)(1), 187(2) of the Criminal Code, and if there is evidence that a person suspected of having threatened or attempted to commit an offence is likely to commit that offence while at liberty.

Genuine copy
The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the
Lithuanian Criminal Investigation Bureau
(signature)
Jelizaveta Sajenko
07/11/2022

8

*/QR code/*

Nerijus Tautvydas is suspected of organising an armed criminal association that carried out trafficking of a very large quantity of narcotic substances and possessed of a very large quantity of narcotic substances. These offences were allegedly committed with the aim of criminal enrichment, were carefully planned and organised, involving the citizens of the Republic of Lithuania and other countries.

*Projektų vadovė
Eglė DAUNORAVIČIŪTĖ*

*/TRANSLATION FROM LITHUANIAN/*

The pre-trial investigation shows that, even after the apprehension of part of the narcotic substances, the criminal activity may have continued. There is no evidence in the pre-trial investigation file of any other source of livelihood of Nerijus Tautvydas, therefore there are sufficient grounds to believe that Nerijus Tautvydas may continue to commit new crimes. Therefore, there are grounds for remand in custody provided for in Article 122(1)(3) of the Code of Criminal Procedure.

Taking into account the degree of graveness of the criminal offences under investigation, the suspect;s personality and the circumstances that the suspect has left Lithuania, has no family, work or other social ties with Lithuania, and is located abroad, where he has extensive contacts, the suspect is likely to obstruct the pre-trial investigation and commit new criminal offences, it must be concluded that at this stage of the pre-trial investigation the objectives set out in Article 119 of the Code of Criminal Procedure cannot be achieved by lighter pre-trial measures. Remand in custody shall be ordered to ensure the smooth conduct of the pre-trial investigation, the participation of the suspect in the proceedings and the prevention of the commission of new criminal offences.

In the light of the above and in accordance with Article 119 and Articles 122 to 127 of the Code of Criminal Procedure of the Republic of Lithuania, the Judge

h e r e b y   d e c i d e s   t h e   f o l l o w i n g :

to grant the request of the prosecutor of the Organised Crime and Corruption Investigation Department under the Prosecutor General's Office of the Republic of Lithuania Aida Japertienė.

To authorise the suspect Nerijus Tautvydas, personal ID number 38406060244, to be remanded in custody.

To deliver the arrested Nerijus Tautvydas to the pre-trial investigation judge no later than 48 hours from the moment of his arrest.

The ruling may be appealed against by the arrested or his defence to the Vilnius Regional Court through the District Court of Vilnius City within 20 days.


The Judge                                                                        Rasa Paulauskaitė-Šiaulė

> Genuine copy
> The Chief Investigator of the Third Unit of the Third Serious and Organised Crime Investigation Board under the Lithuanian Criminal Investigation Bureau
> (signature)
> Jelizaveta Sajenko
> 07/11/2022

*Projektų vadovė*
*Eglė DAUNORAVIČIŪTĖ*

*/TRANSLATION FROM LITHUANIAN/*

| DETAILED METADATA | |
|---|---|
| Document created by | District Court of Vilnius City, 302942160, Laisvės pr. 79A, Vilnius |
| Document title | Nerijus Tautvydas Ruling of the Hearing |
| Document registration date and number | 07/11/2022 No. IBPS-V-2947272-22 |
| Document receipt date and document receipt registration number | - |
| Document specification identification mark | ADOC-V1.0 |
| Purpose of the signature | Signature |
| Full name and position of the creator of the signature | Rasa Paulauskaitė-Šiaulė, the Judge, District Court of Vilnius City |
| Certificate issued to | RASA PAULAUSKAITĖ, District Court of Vilnius City, National Court Administration LT |
| Date and time of the signature | 07/11/2022 13:16:34 (GMT+2:00) |
| Format of the signature | XAdES-T |
| Time indicated in the time stamp | 07/11/2022 13:14:46 (GMT+02:00) |
| Information on the certification service provider | RCSC IssuingCA, VĮ Registru centras, legal entity code 124110246 LT |
| Certificate validity | 10/05/2022 12:52:04 – 09/05/2024 12:52:04 |
| Information on means used to ensure the integrity of the metadata | The integrity of metadata with the designation 'Registration' has been ensured by using the certificate 'Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania, Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania, legal entity code 188774822 LT' issued by 'RCSC IssuingCA, VĮ Registru centras, legal entity code 124110246 LT', the certificate is valid from 28/02/2022 14:20:39 until 27/02/2025 14:20:39. The action has been carried out on 07/11/2022 13:16:43 (GMT+02:00) by the Information Technology and Communications Department under the Ministry of Interior of the Republic of Lithuania. |
| Number of annexes to the main document | - |
| Number of documents attached to the main document | - |
| Originator(s) of the attached document | - |
| Title of the attached document | - |
| Registration date and number of the attached document | - |
| Title of the software used to conclude the electronic document | IBPS system, version 1.3.17 |
| Information on the verification of the electronic document and electronic signature (verification date) | Conforms to the specification requirements. All electronic signatures in the document are valid (07/11/2022 13:17:36) |
| Date of printing the copy of electronic document and the employee who has printed the document | The copy generated by the IBPS system (07/11/2022 13:17:36) Chief Investigator Jelizaveta Sajenko |
| Pre-trial investigation number | 01-1-09596-21 |

Projektų vadovė
Eglė DAUNORAVIČIŪTĖ

**PRIEDAS NR. 5**

**Baudžiamojo kodekso išrašas:**

**Lietuvos Respublikos baudžiamojo kodekso 95 straipsnis. Apkaltinamojo nuosprendžio priėmimo senatis**

    1. Asmeniui, padariusiam nusikalstamą veiką, negali būti priimtas apkaltinamasis nuosprendis, jeigu:

    1) praėję:

    a) treji metai, kai buvo padarytas baudžiamasis nusižengimas;

    b) aštuoneri metai, kai buvo padarytas neatsargus arba nesunkus tyčinis nusikaltimas;

    c) dvylika metų, kai buvo padarytas apysunkis tyčinis nusikaltimas;

    d) penkiolika metų, kai buvo padarytas sunkus nusikaltimas;

    e) dvidešimt penkeri metai, kai buvo padarytas labai sunkus nusikaltimas;

    f) trisdešimt metų, kai buvo padarytas nusikaltimas, susijęs su tyčiniu kito žmogaus gyvybės atėmimu;

    2) per šio straipsnio 1 dalies 1 punkte nustatytą laiką asmuo nesislėpė nuo ikiteisminio tyrimo ar teismo ir nepadarė naujos tyčinės nusikalstamos veikos.

    2. Senaties terminas skaičiuojamas nuo nusikalstamos veikos padarymo iki nuosprendžio priėmimo dienos.

    3. Jeigu nuo šio kodekso XVIII, XX, XXI, XXIII ir XLIV skyriuose numatytų nusikalstamų veikų nukentėjo nepilnametis, senaties terminas negali baigtis anksčiau, negu šiam asmeniui sueina dvidešimt penkeri metai.

    **4. Jeigu nusikalstamą veiką padaręs asmuo pasislėpė nuo ikiteisminio tyrimo ar teismo, senaties eiga sustoja. Senaties eiga atsinaujina nuo tos dienos, kurią asmuo sulaikomas arba kurią jis pats atvyksta pas ikiteisminio tyrimo pareigūną, prokurorą ar į teismą. Tačiau apkaltinamasis nuosprendis negali būti priimtas, jeigu nuo to laiko, kai asmuo padarė nusikalstamą veiką, praėjo dvidešimt penkeri metai, o nuo to laiko, kai padarė nusikaltimą, susijusį su tyčiniu kito žmogaus gyvybės atėmimu, – trisdešimt metų ir senaties eiga nenutrūko dėl naujos tyčinės nusikalstamos veikos padarymo.**

    5. Jeigu nusikalstamą veiką padaręs asmuo pagal Lietuvos Respublikos įstatymus ar tarptautinės teisės normas turi imunitetą nuo baudžiamosios jurisdikcijos ir nėra gautas kompetentingos institucijos leidimas jį patraukti baudžiamojon atsakomybėn, senaties eiga sustoja. Senaties eiga atsinaujina nuo tos dienos, kurią yra gautas kompetentingos institucijos leidimas nusikalstamą veiką padariusį asmenį patraukti baudžiamojon atsakomybėn arba jis kitaip netenka šioje dalyje nurodyto imuniteto.

    6. Bylos nagrinėjimo teisme metu senaties eiga sustoja laikotarpiui, kuriam:

    1) teismas paskelbia nagrinėjimo teisme pertrauką ar bylos nagrinėjimą atideda dėl kaltinamojo ar jo gynėjo nedalyvavimo;

    2) teismas paskelbia nagrinėjimo teisme pertrauką, kol bus atlikta teismo paskirta ekspertizė, specialisto tyrimas ar bus įvykdytas teisinės pagalbos prašymas užsienio valstybei;

    3) teismas paskelbia nagrinėjimo teisme pertrauką ir paveda prokurorui ar ikiteisminio tyrimo teisėjui atlikti Lietuvos Respublikos baudžiamojo proceso kodekse numatytus procesinius veiksmus;

    4) teismas paskelbia nagrinėjimo teisme pertrauką naujai pakviestam kaltinamojo gynėjui susipažinti su bylos medžiaga.

    7. Šio straipsnio 5 dalyje numatytais atvejais apkaltinamasis nuosprendis negali būti priimtas, jeigu nuo senaties termino pradžios praėjo penkeriais metais ilgesnis terminas, negu numatyta šio straipsnio 1 dalyje.

    8. Jeigu asmuo iki šiame straipsnyje nurodytų terminų pabaigos padaro naują tyčinę nusikalstamą veiką, senaties eiga nutrūksta. Šiuo atveju senaties eiga už pirmą nusikalstamą veiką pradedama skaičiuoti nuo tos dienos, kurią buvo padarytas naujas tyčinis nusikaltimas ar baudžiamasis nusižengimas.

    9. Nėra senaties šiems nusikaltimams, numatytiems šiame kodekse:

*/Translation from Lithuanian/*

**Article 95 of the Criminal Code of the Republic of Lithuania**

**Statute of Limitations of a Judgment of Conviction**

1. A person who has committed a criminal act may not be subject to a judgment of conviction where:

1) the following period has lapsed:

a) three years, in the event of commission of a misdemeanour;

b) eight years, in the event of commission of a negligent or minor premeditated crime;

c) twelve years, in the event of commission of a less serious premeditated crime;

d) fifteen years, in the event of commission of a serious crime;

e) twenty-five years, in the event of commission of a grave crime;

f) thirty years, in the event of commission of a crime relating to a premeditated homicide;

2) within the period laid down in point 1 of paragraph 1 of this Article, the person did not hide from pre-trial investigation or a trial and did not commit a new criminal act.

2. The statute of limitations shall run from the commission of a criminal act until the passing of a judgment.

3. If a minor suffers from the criminal acts provided for in Chapters XVIII, XX, XXI, XXIII and XLIV of this Code, the statute of limitations may not run out before the person reaches the age of twenty-five years.

**4. Where a person who has committed a criminal act hides from pre-trial investigation or a trial, the statute of limitations shall not run. The statute of limitations shall resume running from the day when the person is detained or when he appears before a pre-trial investigation officer, a prosecutor or the court. However, a judgment of conviction may not be passed where twenty-five years have lapsed since the commission of the criminal act by the person and thirty years have lapsed since the commission of a crime relating to a premeditated homicide, and the statute of limitations has not stopped running due to commission of a new crime.**

5. In the course of hearing of a case before the court, the statute of limitations shall stop running for a period for which:

1) the court announces a break in the hearing before the court or postpones the hearing of the case due to the absence of the accused or his defence counsel;

2) the court announces a break in the hearing before the court pending an expert examination or a professional investigation assigned by the court or satisfaction of a request for legal assistance submitted to a foreign state;

3) the court announces a break in the hearing before the court and charges a prosecutor or a pre-trial investigation judge with taking the procedural actions provided for in the Code of Criminal Procedure of the Republic of Lithuania;

4) the court announces a break in the hearing before the court for the new defence counsel of the accused to familiarise with the case file.

6. In the cases provided for in paragraph 5 of this Article, a judgment of conviction cannot be passed where a period exceeding that provided for in paragraph 1 by five years has lapsed since the commencement of the statute of limitations.

7. Where a person commits a new premeditated criminal act before the expiry of the terms indicated in this Article, the statute of limitations shall stop running. In such a case, the statute of limitations in respect of the first criminal act shall start to run from the commission of a new crime or misdemeanour.

8. The following crimes provided for in this Code shall have no statute of limitations:

1) genocide (Article 99);

2) treatment of persons prohibited under international law (Article 100);

3) killing of the persons protected under international humanitarian law (Article 101);

4) deportation or transfer of civilians (Article 102);

5) causing bodily harm to, torture or other inhuman treatment of the persons protected under international humanitarian law or violation of protection of their property (Article 103);

6) forcible use of civilians or prisoners of war in the armed forces of the enemy (Article 105);

7) destruction of protected objects or plunder of national valuable properties (Article 106);

8) aggression (Article 110);

9) prohibited military attack (Article 111);

10) use of prohibited means of warfare (Article 112);

11) negligent performance of the commander's duties (Article 113$^1$).

*Translation corresponds to the original text.*

*Mrs Erika Jadovienė, translator of the Prosecutor General's Office of the Republic of Lithuania, has been warned about criminal liability under Article 235 of the Criminal Code of the Republic of Lithuania for making false or deliberately misleading translation.*