## DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, DC. This office has responsibility for extradition requests, and I am charged with the extradition case of Nerijus Tautvydas. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Lithuania are found in the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Lithuania, signed on 23 October 2001, (the "2001 Treaty"), and the Protocol on the application of the Agreement on Extradition between the United States of American and the European Union to the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Lithuania, with Annex, signed 15 June 2005 (the "Protocol"). The Annex to the Protocol (the "Annex") reflects the integrated text of the provisions of the 2001 Treaty and the U.S.-EU Extradition Agreement. A copy of the Protocol with Annex is attached to this declaration.

3. In accordance with Article 8(1) of the Annex, the Embassy of the Republic of Lithuania has submitted Diplomatic Note No. SN45-2, dated 17 January 2023, formally requesting the extradition of Nerijus Tautvydas.

4. In accordance with Article 19 of the Annex, the United States provides legal representation in the U.S. courts for Lithuania in its extradition requests, and Lithuania provides legal representation in its courts for extradition requests made by the United States.

5. The offenses for which extradition is sought are covered by Article 2 of the Annex.

6. In accordance with Article 9 of the Annex, documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State are admissible in extradition proceedings without further certification,

authentication or other legalization. Therefore, such documents satisfy the authentication requirements without the need for certification by the U.S. Embassy in Vilnius. Lithuania, in submitting documents in the instant case that bear the certificate or seal of the Ministry of Justice, has complied with the Annex with respect to authentication.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Santa Fe, New Mexico on January 18th, 2023.


Tom Heinemann

Attachments:

1. Copy of Note

2. Copy of Protocol with Annex



# LIETUVOS RESPUBLIKOS AMBASADA JUNGTINĖSE AMERIKOS VALSTIJOSE IR JUNGTINĖMS MEKSIKOS VALSTIJOMS EMBASSY OF THE REPUBLIC OF LITHUANIA TO THE UNITED STATES OF AMERICA AND TO THE UNITED MEXICAN STATES

No. SN45-2

The Embassy of the Republic of Lithuania presents its compliments to the Department of State of the United States of America and, referring to the Extradition Treaty between the Republic of Lithuania and the United States of America, has the honor to forward the documents regarding the extradition of the Lithuanian national **Mr. Nerijus TAUTVYDAS, born on 6 June 1984.**

Please find enclosed a cover letter of the request for Extradition from the Ministry of Justice of the Republic of Lithuania with a set of extradition request documents for the abovementioned Lithuanian national.

The Embassy of the Republic of Lithuania avails itself of this opportunity to renew to the Department of State of the United States of America the assurances of its highest consideration.

E N C L O S U R E S. Cover letter and a set of documents.



January 17, 2023

UNITED STATES DEPARTMENT OF STATE
Office of the Legal Adviser
Washington, D.C.

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 10-201.14

---

# EXTRADITION

**Protocol to the Treaty of October 23, 2001**

**Between the**

**UNITED STATES OF AMERICA**

**and LITHUANIA**

Signed at Brussels June 15, 2005

*with*

Annex



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# LITHUANIA

## Extradition

*Protocol to the treaty of October 23, 2001.*
*Signed at Brussels June 15, 2005;*
*Transmitted by the President of the United States of America*
*   to the Senate September 28, 2006 (Treaty Doc. 109-14,*
*   109th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*   July 29, 2008 (Senate Executive Report No. 110-12,*
*   110th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*   September 23, 2008;*
*Ratified by the President December 11, 2008;*
*Exchange of Instruments of Ratification*
*   at Washington March 9, 2009;*
*Entered into force February 1, 2010.*
*With annex.*

**Protocol on the application of the Agreement on Extradition between the
United States of America and the European Union to the Extradition Treaty
between the Government of the United States of America and the Government of
the Republic of Lithuania**

1.      As contemplated by Article 3(2) of the Agreement on Extradition between the
United States of America and the European Union signed 25 June 2003 (hereafter "the
U.S.-EU Extradition Agreement"), the Governments of the United States of America
and the Republic of Lithuania acknowledge that, in accordance with the provisions of
this Protocol, the U.S.-EU Extradition Agreement is applied in relation to the bilateral
Extradition Treaty between the Government of the United States of America and the
Government of the Republic of Lithuania signed 23 October 2001 (hereafter "the 2001
Extradition Treaty") under the following terms:

(a)     Article 5(1) of the U.S.-EU Extradition Agreement as set forth in Article 8(1) of
the Annex to this Protocol shall govern the mode of transmission of the extradition
request and supporting documents;

(b)     Article 5(2) of the U.S.-EU Extradition Agreement as set forth in Article 9 of the
Annex to this Protocol shall govern the requirements concerning certification,
authentication or legalization of the extradition request and supporting documents;

(c)     Article 7(1) of the U.S.-EU Extradition Agreement as set forth in Article 11(4)
of the Annex to this Protocol shall provide an alternative method for transmission of the
request for extradition and supporting documents following provisional arrest;

(d)     Article 8 of the U.S.-EU Extradition Agreement as set forth in Article 8 *bis* of
the Annex to this Protocol shall govern the channel to be used for submitting
supplementary information;

(e)     Article 10 of the U.S.-EU Extradition Agreement as set forth in Article 14 of the
Annex to this Protocol shall govern the decision on requests made by several States for
the extradition or surrender of the same person;

(f)     Article 13 of the U.S.-EU Extradition Agreement as set forth in Article 7 of the
Annex to this Protocol shall govern extradition with respect to conduct punishable by
death in the Requesting State; and

(g)     Article 14 of the U.S.-EU Extradition Agreement as set forth in Article 8 *ter* of
the Annex to this Protocol shall govern consultations where the Requesting State
contemplates the submission of particularly sensitive information in support of a request
for extradition.

2.      The Annex reflects the integrated text of the provisions of the 2001 Extradition
Treaty and the U.S.-EU Extradition Agreement that shall apply upon entry into force of
this Protocol.

3.      In accordance with Article 16 of the U.S.-EU Extradition Agreement, this
Protocol shall apply to offenses committed before as well as after it enters into force.

1

4.  This Protocol shall not apply to requests for extradition made prior to its entry into force.

5.  (a)  This Protocol shall be subject to the completion by the United States of America and the Republic of Lithuania of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Republic of Lithuania shall thereupon exchange instruments indicating that such measures have been completed. This Protocol shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

(b)  In the event of termination of the U.S.-EU Extradition Agreement, this Protocol shall be terminated and the 2001 Extradition Treaty shall be applied. The Governments of the United States of America and the Republic of Lithuania nevertheless may agree to continue to apply some or all of the provisions of this Protocol.


IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Protocol.

DONE at Brussels, in duplicate, this 15 day of June, 2005, in the English and Lithuanian languages, both texts being equally authentic.


FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF THE
REPUBLIC OF LITHUANIA:

2

ANNEX

EXTRADITION TREATY
BETWEEN
THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND
THE GOVERNMENT OF THE REPUBLIC OF LITHUANIA

TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Obligation to Extradite |
| Article 2 | Extraditable Offenses |
| Article 3 | Nationality |
| Article 4 | Political and Military Offenses |
| Article 5 | Prior Prosecution |
| Article 6 | Lapse of Time |
| Article 7 | Capital Punishment |
| Article 8 | Extradition Procedures and Required Documents |
| Article 8 *bis* | Supplemental Information |
| Article 8 *ter* | Sensitive Information in a Request |
| Article 9 | Admissibility of Documents |
| Article 10 | Translation |
| Article 11 | Provisional Arrest |
| Article 12 | Decision and Surrender |
| Article 13 | Temporary and Deferred Surrender |
| Article 14 | Requests for Extradition or Surrender Made by Several States |
| Article 15 | Seizure and Surrender of Property |
| Article 16 | Rule of Speciality |
| Article 17 | Consent to Waiver of Extradition Proceedings |
| Article 18 | Transit |
| Article 19 | Representation and Expenses |
| Article 20 | Consultation |
| Article 21 | Termination |

3

## Article 1
### Obligation to Extradite

The Parties agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State have charged with or convicted of an extraditable offense.

## Article 2
### Extraditable Offenses

1.    An offense shall be an extraditable offense if it is punishable under the laws in both States by deprivation of liberty for a period of more than one year or by a more severe penalty.

2.    An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of any offense described in paragraph 1.

3.    For the purposes of this Article, an offense shall be an extraditable offense:

    (a) whether or not the laws in the Requesting and Requested States place the offense within the same category of offenses or describe the offense by the same terminology; or

    (b) whether or not the offense in one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

4.    Extradition shall be granted for an extraditable offense regardless of where the act or acts constituting the offense were committed.

5.    If extradition has been granted for an extraditable offense it shall also be granted for any other offense specified in the request even if the latter offense in punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met.

## Article 3
### Nationality

Extradition shall not be refused based on the nationality of the person sought.

## Article 4
### Political and Military Offenses

1.    Extradition shall not be granted if the offense for which extradition is requested is a political offense.

4

2.   For the purposes of this Treaty, the following offenses shall not be considered political offenses:

    (a) a murder or other violent crime against a Head of State of the Requesting or Requested State, or of a member of the Head of State's family;

    (b) an offense for which both the Requesting and Requested States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution;

    (c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm;

    (d) an offense involving kidnaping, abduction, or any form of unlawful detention, including the taking of a hostage;

    (e) placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and

    (f) a conspiracy or attempt to commit any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses.

3.   Notwithstanding the terms of paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4.   The executive authority of the Requested State may refuse extradition for offenses under military law that are not offenses under ordinary criminal law.

Article 5
Prior Prosecution

1.   Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested. Conviction or acquittal also means, under Lithuanian law, an agreed resolution approved by a court with final and binding effect.

2.   Extradition shall not be precluded by the fact that the competent authorities of the Requested State have decided either:

    (a) not to prosecute the person sought for the acts for which extradition is requested;

    (b) to discontinue any criminal proceedings which have been instituted against the person sought for those acts; or

    (c) to investigate the person sought for the same acts.

5

### Article 6
### Lapse of Time

The decision by the Requested State whether to grant the request for extradition shall be made without regard to the law of either the Requesting State or the Requested State concerning lapse of time.

### Article 7
### Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.

### Article 8
### Extradition Procedures and Required Documents

1.  Requests for extradition and supporting documents shall be transmitted through the diplomatic channel, which shall include transmission as provided for in Article 11(4).

2.  All requests shall include:

    (a) documents, statements, or other types of information which describe the identity and probable location of the person sought;

    (b) information describing the facts of the offense and the procedural history of the case;

    (c) a statement of the relevant text of the provisions of the laws describing the essential elements of the offense for which extradition is requested;

    (d) a statement of the relevant text of the provisions of law prescribing punishment for the offense;

    (e) a statement of the provisions of law describing any time limit on the prosecution; and

    (f) the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

6

3.   A request for extradition of a person who is sought for prosecution also shall include:

>    (a) a copy of the warrant or order of arrest issued by a judge, court, or other authority competent for this purpose;

>    (b) a copy of the charging document; and

>    (c) such information as would provide a reasonable basis to believe that the person sought committed the offense for which extradition is sought.

4.   A request for extradition relating to a person who has been convicted of the offense for which extradition is sought also shall include:

>    (a) a copy of the judgment of conviction, or, if a copy is not available, a statement by a judicial authority that the person has been convicted;

>    (b) information establishing that the person sought is the person to whom the finding of guilt refers;

>    (c) a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

>    (d) in the case of a person who has been convicted in absentia, the documents required by paragraph 3.

Art. 8 *bis*
Supplemental Information

1.   The Requested State may require the Requesting State to furnish additional information within such reasonable length of time as it specifies, if it considers that the information furnished in support of the request for extradition is not sufficient to fulfill the requirements of this Treaty.

2.   Such supplementary information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of the Republic of Lithuania.

Article 8 *ter*
Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

7

Article 9
Admissibility of Documents

Documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization. "Ministry of Justice" shall, for the United States of America, mean the United States Department of Justice; and, for the Republic of Lithuania, the Ministry of Justice of the Republic of Lithuania.

Article 10
Translation

All documents submitted by the Requesting State shall be translated into the language of the Requested State.

Article 11
Provisional Arrest

1.      In case of urgency, the Requesting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Office of the Public Prosecutor of the Republic of Lithuania. The facilities of the International Criminal Police Organization (Interpol) also may be used to transmit such a request.

2.      The application for provisional arrest shall contain:

   (a)  a description of the person sought;

   (b)  the location of the person sought, if known;

   (c)  a brief statement of the facts of the case, including, if possible, the time and location of the offense;

   (d)  a description of the law(s) violated;

   (e)  a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

   (f)  a statement that the documents supporting the extradition request for the person sought will follow within the time specified in this treaty.

3.      The Requesting State shall be notified without delay of the disposition of its request for provisional arrest and the reasons for any inability to proceed with the request.

4.      A person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the request for

8

extradition required in Article 8. For this purpose, receipt of the request for extradition by the Embassy of the Requested State in the Requesting State shall constitute receipt by the executive authority of the Requested State.

5.      The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

## Article 12
### Decision and Surrender

1.      The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2.      If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3.      If the request for extradition is granted, the authorities of the Requesting and Requested States shall agree on the time and place for the surrender of the person sought.

4.      If the person sought is not removed from the territory of the Requested State within the time period prescribed by the law of that State, that person may be discharged from custody, and the Requested State, in its discretion, may subsequently refuse extradition for the same offense.

## Article 13
### Temporary and Deferred Surrender

1.      If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the Requesting and Requested States.

2.      The Requested State may postpone the extradition proceedings against a person who is being prosecuted or who is serving a sentence in that State. The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

## Article 14
### Requests for Extradition or Surrender Made by Several States

1.      If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same

9

offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

2.      If the Republic of Lithuania receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3.      In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)     whether the requests were made pursuant to a treaty;
(b)     the places where each of the offenses was committed;
(c)     the respective interests of the Requesting States;
(d)     the seriousness of the offenses;
(e)     the nationality of the victim;
(f)     the possibility of any subsequent extradition between the Requesting States; and
(g)     the chronological order in which the requests were received from the Requesting States.


Article 15
Seizure and Surrender of Property

1.      To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all items, including articles, documents, and evidence, that are connected with the offense in respect of which extradition is granted.  The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.      The Requested State may condition the surrender of the items upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable.  The Requested State may also defer the surrender of such items if they are needed as evidence in the Requested State.

3.      The rights of third parties in such items shall be duly respected in accordance with the laws of the Requested State.


Article 16
Rule of Speciality

1.      A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

(a) any offense for which extradition was granted, or a differently denominated offense based on the same facts as the offense for which extradition was granted, provided such offense is extraditable, or is a lesser included offense;

(b) any offense committed after the extradition of the person; or

10

(c)  any offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment.  For the purpose of this subparagraph:

(i)  the Requested State may require the submission of the documentation called for in Article 8; and

(ii)  the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.        A person extradited under this Treaty may not be extradited to a third State or extradited or surrendered to an international tribunal for any offense committed prior to extradition unless the Requested State consents.

3.        Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a)  that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b)  that person does not leave the territory of the Requesting State within 10 days of the day on which that person is free to leave.

Article 17
Consent to Waiver of Extradition Proceedings

If the person sought consents in writing to be surrendered to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings.

Article 18
Transit

1.        Either State may authorize transportation through its territory of a person surrendered to the other State by a third State.  A request for transit shall be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Lithuania.  The facilities of the International Criminal Police Organization (Interpol) may also be used to transmit such a request to the above-mentioned authorities.  The request for transit shall contain a description of the person being transported and a brief statement of the facts of the case.  A person in transit may be detained in custody during the period of transit.

2.        Authorization is not required when air transportation is used by one State and no landing is scheduled on the territory of the other State.  If an unscheduled landing does occur, the State in which the unscheduled landing occurs may require a request for

11

transit pursuant to paragraph 1, and it may detain the person until the request for transit is received and the transit is effected, as long as the request is received within 48 hours of the unscheduled landing.

Article 19
Representation and Expenses

1.   The Requested State shall advise, assist, appear in court on behalf of, and represent the interests of the Requesting State in any proceedings arising out of a request for extradition.

2.   The Requesting State shall pay all the expenses related to the translation of extradition documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State in connection with the extradition proceedings.

3.   Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons under this Treaty.

Article 20
Consultation

The United States Department of Justice and the Office of the Public Prosecutor and the Ministry of Justice of the Republic of Lithuania may consult with each other in connection with the processing of individual cases and in furtherance of efficient implementation of this Treaty.

Article 21
Termination

        Either State may terminate this Treaty at any time by giving written notice to the other State, and the termination shall be effective six months after the date of such notice.

12

**Protokolas dėl Susitarimo tarp Europos Sąjungos ir Jungtinių Amerikos Valstijų dėl ekstradicijos taikymo Jungtinių Amerikos Valstijų Vyriausybės ir Lietuvos Respublikos Vyriausybės ekstradicijos sutarčiai**

1.  Kaip numatyta 2003 m. birželio 25 d. pasirašyto Susitarimo tarp Europos Sąjungos ir Jungtinių Amerikos Valstijų dėl ekstradicijos (toliau – ES ir JAV ekstradicijos susitarimas) 3 straipsnio 2 dalyje, Jungtinių Amerikos Valstijų ir Lietuvos Respublikos vyriausybės pripažįsta, kad pagal šio Protokolo nuostatas ES ir JAV ekstradicijos susitarimas yra taikomas 2001 m. spalio 23 d. pasirašytai dvišalei Jungtinių Amerikos Valstijų Vyriausybės ir Lietuvos Respublikos Vyriausybės ekstradicijos sutarčiai (toliau – 2001 m. ekstradicijos sutartis) šiomis sąlygomis:

a)  ES ir JAV ekstradicijos susitarimo 5 straipsnio 1 dalis, kuri yra išdėstyta šio Protokolo priedo 8 straipsnio 1 dalyje, reglamentuoja ekstradicijos prašymo ir patvirtinamųjų dokumentų perdavimo būdą;

b)  ES ir JAV ekstradicijos susitarimo 5 straipsnio 2 dalis, kuri yra išdėstyta šio Protokolo priedo 9 straipsnyje, reglamentuoja ekstradicijos prašymo ir patvirtinamųjų dokumentų patvirtinimo, autentifikavimo ar legalizavimo reikalavimus;

c)  ES ir JAV ekstradicijos susitarimo 7 straipsnio 1 dalis, kuri yra išdėstyta šio Protokolo priedo 11 straipsnio 4 dalyje, nustato alternatyvų ekstradicijos prašymo ir patvirtinamųjų dokumentų perdavimo po laikino suėmimo būdą;

d)  ES ir JAV ekstradicijos susitarimo 8 straipsnis, kuris yra išdėstytas šio Protokolo priedo 8 *bis* straipsnyje, reglamentuoja naudotiną papildomos informacijos perdavimo kanalą;

e)  ES ir JAV ekstradicijos susitarimo 10 straipsnis, kuris yra išdėstytas šio Protokolo priedo 14 straipsnyje, reglamentuoja sprendimą dėl kelių valstybių pateiktų prašymų išduoti ar perduoti tą patį asmenį;

f)  ES ir JAV ekstradicijos susitarimo 13 straipsnis, kuris yra išdėstytas šio Protokolo priedo 7 straipsnyje, reglamentuoja ekstradiciją dėl nusikaltimų, už kuriuos prašančiojoje valstybėje baudžiama mirties bausme;

g)  ES ir JAV ekstradicijos susitarimo 14 straipsnis, kuris yra išdėstytas šio Protokolo priedo 8 *ter* straipsnyje, reglamentuoja konsultacijas tais atvejais, kai prašančioji valstybė numato ypač slaptos informacijos perdavimą ekstradicijos prašymui paremti.

2.  Priedą sudaro 2001 m. ekstradicijos sutarties ir ES ir JAV ekstradicijos susitarimo nuostatų integruotas tekstas, kuris taikomas šiam Protokolui įsigaliojus.

3.  Pagal ES ir JAV ekstradicijos susitarimo 16 straipsnį šis Protokolas taikomas iki ir po jo įsigaliojimo padarytiems nusikaltimams.

1

4. Šis Protokolas netaikomas iki jo įsigaliojimo pateiktiems ekstradicijos prašymams.

5. a) Kad šis Protokolas įsigaliotų, Jungtinės Amerikos Valstijos ir Lietuvos Respublika turi atlikti atitinkamas taikytinas vidaus procedūras. Jas atlikus, Jungtinių Amerikos Valstijų ir Lietuvos Respublikos vyriausybės pasikeičia dokumentais, patvirtinančiais, kad jos atliko šiuo tikslu reikalingas vidaus procedūras. Šis Protokolas įsigalioja ES ir JAV ekstradicijos susitarimo įsigaliojimo dieną.

b) Nutraukus ES ir JAV ekstradicijos susitarimą, šio Protokolo galiojimas nutraukiamas ir taikoma 2001 m. ekstradicijos sutartis. Nepaisant to, Jungtinių Amerikos Valstijų ir Lietuvos Respublikos vyriausybės gali susitarti ir toliau taikyti kai kurias arba visas šio Protokolo nuostatas.

Tai patvirtindami, toliau nurodyti atitinkamų Vyriausybių tinkamai įgalioti asmenys pasirašė šį Protokolą.

Sudaryta 2005 m. birželio 15 d. dviem egzemplioriais anglų ir lietuvių kalbomis. Abu tekstai yra autentiški.

JUNGTINIŲ AMERIKOS VALSTIJŲ          LIETUVOS RESPUBLIKOS
VYRIAUSYBĖS VARDU                    VYRIAUSYBĖS VARDU

2

# PRIEDAS

### JUNGTINIŲ AMERIKOS VALSTIJŲ VYRIAUSYBĖS
### IR
### LIETUVOS RESPUBLIKOS VYRIAUSYBĖS
### EKSTRADICIJOS SUTARTIS

## TURINYS

| | |
|---|---|
| 1 straipsnis | Pareiga išduoti |
| 2 straipsnis | Nusikaltimai, dėl kurių išduodama |
| 3 straipsnis | Pilietybė |
| 4 straipsnis | Politiniai ir karo teisės nusikaltimai |
| 5 straipsnis | Ankstesnis teisminis persekiojimas |
| 6 straipsnis | Senatis |
| 7 straipsnis | Mirties bausmė |
| 8 straipsnis | Ekstradicijos tvarka ir reikalingi dokumentai |
| 8 *bis* straipsnis | Papildoma informacija |
| 8 *ter* straipsnis | Prašyme pateikta slapta informacija |
| 9 straipsnis | Dokumentų priimtinumas |
| 10 straipsnis | Vertimas |
| 11 straipsnis | Laikinas suėmimas |
| 12 straipsnis | Sprendimas ir perdavimas |
| 13 straipsnis | Laikinas perdavimas ir perdavimo atidėjimas |
| 14 straipsnis | Kelių valstybių pateikti prašymai išduoti ar perduoti |
| 15 straipsnis | Turto areštas ir perdavimas |
| 16 straipsnis | Specialioji taisyklė |
| 17 straipsnis | Sutikimas atsisakyti ekstradicijos procedūrų |
| 18 straipsnis | Tranzitas |
| 19 straipsnis | Atstovavimas ir išlaidos |
| 20 straipsnis | Konsultacijos |
| 21 straipsnis | Nutraukimas |

3

1 straipsnis
Pareiga išduoti

Šalys susitaria pagal šios Sutarties nuostatas viena kitai išduoti asmenis, kuriems prašančiosios valstybės institucijos yra pateikusios kaltinimus arba kuriuos jos yra nuteisusios už nusikaltimą, dėl kurio išduodama.

2 straipsnis
Nusikaltimai, dėl kurių išduodama

1. Nusikaltimas yra laikomas nusikaltimu, dėl kurio išduodama, jeigu už jį pagal abiejų valstybių įstatymus yra baudžiama didesne kaip vienerių metų laisvės atėmimo arba griežtesne bausme.

2. Nusikaltimas taip pat yra laikomas nusikaltimu, dėl kurio išduodama, jeigu jį sudaro pasikėsinimas padaryti arba bendrininkavimas arba dalyvavimas darant bet kurį 1 dalyje apibūdintą nusikaltimą.

3. Pagal šį straipsnį nusikaltimas yra laikomas nusikaltimu, dėl kurio išduodama:

    a) nepaisant to, ar prašančiojoje valstybėje ir prašomojoje valstybėje tas nusikaltimas yra priskiriamas tai pačiai nusikaltimų kategorijai, arba nepaisant to, ar nusikaltimas apibūdinamas tomis pačiomis sąvokomis; arba

    b) nepaisant to, ar nusikaltimas yra toks, dėl kurio pagal Jungtinių Valstijų federalinius įstatymus reikia įrodyti, jog buvo transportuojama arba persiunčiama paštu iš vienos valstijos į kitą, arba imamasi kitų priemonių, darančių įtaką valstijų tarpusavio arba užsienio prekybai, kadangi šios priemonės taikomos tik jurisdikcijai Jungtinių Valstijų federaliniame teisme nustatyti.

4. Dėl nusikaltimo, dėl kurio išduodama, prašymas išduoti patenkinamas nepaisant to, kur buvo padaryta nusikaltimą sudaranti veika arba veikos.

5. Išduodant dėl nusikaltimo, dėl kurio išduodama, išduodama ir dėl bet kurio kito prašyme nurodyto nusikaltimo, net jei už tą nusikaltimą baudžiama vienerių metų laisvės atėmimu arba mažesne bausme, su sąlyga, kad yra patenkinami visi kiti ekstradicijos reikalavimai.

3 straipsnis
Pilietybė

Išduoti neatsisakoma dėl prašomo išduoti asmens pilietybės.

4

### 4 straipsnis
### Politiniai nusikaltimai ir nusikaltimai pagal karo teisę

1. Neišduodama, jei nusikaltimas, dėl kurio prašoma išduoti, yra politinis nusikaltimas.

2. Pagal šią Sutartį politiniais nusikaltimais nelaikomi šie nusikaltimai:

   a) prašančiosios valstybės arba prašomosios valstybės vadovo arba valstybės vadovo šeimos nario nužudymas arba kitas smurtinis nusikaltimas šiems asmenims;

   b) nusikaltimas, dėl kurio ir prašančioji, ir prašomoji valstybė pagal daugiašalį tarptautinį susitarimą yra įsipareigojusi išduoti prašomą išduoti asmenį arba perduoti bylą savo kompetentingoms įstaigoms sprendimui dėl teisminio persekiojimo priimti;

   c) nužudymas, nužudymas dėl neatsargumo, tyčinis kūno sužalojimas arba sunkus kūno sužalojimas;

   d) nusikaltimas, kuris apima pagrobimą dėl išpirkos, pagrobimą arba bet kurią neteisėto laisvės atėmimo formą, įskaitant ir įkaito paėmimą;

   e) padėjimas arba naudojimas sprogstamojo, padegamojo arba griaunamojo įtaiso, kuris gali sukelti pavojų gyvybei, padaryti sunkų kūno sužalojimą arba padaryti didelę turtinę žalą; ir

   f) bendrininkavimas padarant ar pasikėsinimas padaryti kurį nors iš pirmiau minėtų nusikaltimų arba padėjimas asmeniui, kuris padaro ar kėsinasi padaryti tokius nusikaltimus, arba tokio asmens kurstymas.

3. Nepaisant šio straipsnio 2 dalies sąlygų, neišduodama, jeigu prašomosios valstybės vykdomosios valdžios institucija nustato, kad prašymas buvo politiškai motyvuotas.

4. Prašomosios valstybės vykdomosios valdžios institucija gali atsisakyti išduoti dėl nusikaltimų pagal karo teisę, kurie nėra nusikaltimai pagal bendrąją baudžiamąją teisę.

### 5 straipsnis
### Ankstesnis teisminis persekiojimas

1. Neišduodama, kai prašomas išduoti asmuo prašomojoje valstybėje buvo nuteistas arba išteisintas už nusikaltimą, dėl kurio prašoma išduoti. Pagal Lietuvos įstatymus nuteisimas arba išteisinimas taip pat reiškia teismo patvirtintą susitarimą, kuris yra galutinis ir privalomas.

2. Išduoti netrukdo tai, kad prašomosios valstybės kompetentingos įstaigos yra priėmusios sprendimą:

5

NOTE: It is noted that the title for Article 4 on this page is different from the Article 4 title listed in the Table of Contents of this Lithuanian text.

a) nepersekioti prašomo išduoti asmens už veikas, dėl kurių prašoma išduoti; arba

b) nutraukti baudžiamąsias bylas, iškeltas prašomam išduoti asmeniui už šias veikas; arba

c) tirti asmens, kurį prašoma išduoti, tas pačias padarytas veikas.

6 straipsnis
Senatis

Prašomosios valstybės sprendimas, ar patenkinti ekstradicijos prašymą, priimamas, neatsižvelgiant nei į prašančiosios, nei į prašomosios valstybės įstatymus dėl senaties.

7 straipsnis
Mirties bausmė

Kai už nusikaltimą, dėl kurio prašoma išduoti, yra baudžiama mirties bausme pagal prašančiosios valstybės įstatymus ir nėra baudžiama mirties bausme pagal prašomosios valstybės įstatymus, prašomoji valstybė gali išduoti su sąlyga, kad mirties bausmė prašomam išduoti asmeniui nebus skiriama, arba, jei dėl procesinių priežasčių prašančioji valstybė negali laikytis tokios sąlygos, su sąlyga, kad, jei mirties bausmė jau buvo paskirta, ji nebus vykdoma. Jei prašančioji valstybė sutinka su ekstradicija šiame straipsnyje išdėstytomis sąlygomis, ji tų sąlygų laikosi. Jei prašančioji valstybė nesutinka su šiomis sąlygomis, ekstradicijos prašymas gali būti atmestas.

8 straipsnis
Ekstradicijos tvarka ir reikalingi dokumentai

1. Ekstradicijos prašymai ir patvirtinamieji dokumentai perduodami diplomatiniu kanalu, kuris apima ir 11 straipsnio 4 dalyje nustatytą perdavimą.

2. Visuose prašymuose pateikiami:

a) dokumentai, pažymos arba kitokio pobūdžio informacija, kuri apibūdina prašomo išduoti asmens tapatybę ir galimą buvimo vietą;

b) informacija, apibūdinanti nusikaltimo faktus ir procesinę bylos istoriją;

c) įstatymų nuostatų, apibūdinančių esminius nusikaltimo, už kurį prašoma išduoti, sudėties elementus, atitinkamas tekstas;

d) įstatymų nuostatų, nustatančių bausmę už tą nusikaltimą, atitinkamas tekstas; ir

e) įstatymų nuostatų, numatančių baudžiamojo persekiojimo terminus, tekstas; ir

6

f) dokumentai, pažymos arba kitokia atitinkamai šio straipsnio 3 arba 4 dalyse nurodyta informacija.

3. Ekstradicijos prašyme išduoti asmenį teisminiam persekiojimui taip pat pateikiama:

a) teisėjo, teismo arba kitos kompetentingos institucijos išduoto suėmimo orderio arba nutarties suimti kopija;

b) dokumento, kuriuo pateikti kaltinimai, kopija; ir

c) tokia informacija, kuri leistų pagrįstai tikėti, kad prašomas išduoti asmuo padarė nusikaltimą, dėl kurio prašoma išduoti.

4. Prašyme išduoti asmenį, kuris yra nuteistas už nusikaltimą, dėl kurio prašoma išduoti, taip pat pateikiama:

a) apkaltinamojo nuosprendžio kopija arba, jei tokios kopijos negalima gauti, teismo institucijos pažyma, kurioje nurodoma, kad tas asmuo yra nuteistas;

b) informacija, patvirtinanti, kad prašomas išduoti asmuo yra tas asmuo, kurio kaltė yra pripažinta;

c) nuosprendžio, kuriuo paskirta bausmė, kopija, jei prašomam išduoti asmeniui paskirta bausmė, ir pažyma, patvirtinanti, kokia dalimi nuosprendis įvykdytas; ir

d) tuo atveju, jei asmuo yra nuteistas jam nedalyvaujant, pagal 3 dalį reikalingi dokumentai.

**8 *bis* straipsnis**
**Papildoma infromacija**

1. Prašomoji valstybė, jei ji mano, kad ekstradicijos prašymą patvirtinančios informacijos pateikta nepakankamai, kad būtų laikomasi taikomos ekstradicijos sutarties reikalavimų, gali prašyti prašančiosios valstybės per nurodytą pagrįstą laiką pateikti papildomos informacijos.

2. Tokios papildomos informacijos gali tiesiogiai prašyti ir ją pateikti Jungtinių Valstijų teisingumo departamentas ir Lietuvos Respublikos teisingumo ministerija.

**8 *ter* straipsnis**
**Prašyme pateikta slapta informacija**

Jei prašančioji valstybė, patvirtindama savo ekstradicijos prašymą, ketina pateikti ypač slaptą informaciją, ji gali konsultuotis su prašomąja valstybe, kad nustatytų, kokiu mastu tą informaciją prašomoji valstybė gali saugoti. Jei prašomoji valstybė negali informacijos apsaugoti taip, kaip prašo prašančioji valstybė, prašančioji valstybė sprendžia, ar tą informaciją vis tiek reikia perduoti.

7

9 straipsnis
Dokumentų priimtinumas

Dokumentai, turintys prašančiosios valstybės Teisingumo ministerijos arba už užsienio reikalus atsakingos ministerijos ar departamento tvirtinimo žymą arba antspaudą, yra priimtini ekstradicijos procesiniams veiksmams prašomojoje valstybėje be papildomo patvirtinimo, autentiškumo patvirtinimo ar kitokio legalizavimo. „Teisingumo ministerija" – Lietuvos Respublikoje tai Lietuvos Respublikos teisingumo ministerija, o Jungtinėse Amerikos Valstijose tai Jungtinių Amerikos Valstijų teisingumo departamentas.

10 straipsnis
Vertimas

Visi prašančiosios valstybės pateikiami dokumentai yra išverčiami į prašomosios valstybės kalbą.

11 straipsnis
Laikinas suėmimas

1. Ypatingos skubos atveju prašančioji valstybė, kol bus pateiktas ekstradicijos prašymas, gali prašyti laikinai suimti prašomą išduoti asmenį. Prašymas laikinai suimti gali būti perduodamas diplomatiniais kanalais arba tiesiogiai Lietuvos Respublikos generalinės prokuratūros – Jungtinių Valstijų teisingumo departamentui ir Jungtinių Valstijų teisingumo departamento – Lietuvos Respublikos generalinei prokuratūrai. Tokiam prašymui perduoti taip pat gali būti naudojamasi Tarptautinės kriminalinės policijos organizacijos (Interpolo) galimybėmis.

2. Prašyme laikinai suimti pateikiama:

    a) prašomo išduoti asmens aprašymas;

    b) prašomo išduoti asmens buvimo vieta, jei žinoma;

    c) trumpas bylos faktų išdėstymas, įskaitant, jei įmanoma, nusikaltimo padarymo laiką ir vietą;

    d) pažeisto (-ų) įstatymo (-ų) apibūdinimas;

    e) pažyma apie tai, kad yra orderis suimti arba yra nustatytas kaltumas, arba yra apkaltinamasis nuosprendis prašomo išduoti asmens atžvilgiu; ir

    f) pažyma apie tai, kad ekstradicijos prašymo pateisinamieji dokumentai bus pateikti per šioje Sutartyje nustatytą laiką.

3. Prašančiajai valstybei nedelsiant pranešama apie sprendimą dėl jos prašymo laikinai suimti ir apie priežastis, dėl kurių negalima patenkinti prašymo.

8

4. Jeigu prašomosios valstybės vykdomosios valdžios institucija negauna 8 straipsnyje nurodyto ekstradicijos prašymo, laikinai suimtas asmuo gali būti paleistas praėjus šešiasdešimčiai (60) dienų nuo laikino suėmimo pagal šią Sutartį dienos. Ekstradicijos prašymas, gautas prašomosios valstybės ambasadoje prašančiojoje valstybėje, reiškia, kad prašymas yra gautas prašomosios valstybės valdžios institucijoje.

5. Tai, kad prašomas išduoti asmuo buvo paleistas pagal šio straipsnio 4 dalį, netrukdo suimti ir išduoti tą asmenį, jei ekstradicijos prašymas ir reikalingi dokumentai yra pateikiami vėliau.

12 straipsnis<br>Sprendimas ir perdavimas

1. Prašomoji valstybė nedelsdama praneša prašančiajai valstybei apie savo sprendimą dėl ekstradicijos prašymo.

2. Jei atsisakoma patenkinti ekstradicijos prašymą arba jo dalį, prašomoji valstybė paaiškina atsisakymo priežastis. Prašomoji valstybė pateikia atitinkamų teismo sprendimų kopijas, jei to prašoma.

3. Jei ekstradicijos prašymas patenkinamas, prašančiosios valstybės ir prašomosio valstybės valdžios institucijos susitaria dėl prašomo išduoti asmens perdavimo laiko ir vietos.

4. Jei prašančioji valstybė nepasiima prašomo išduoti asmens iš prašomosios valstybės teritorijos per pastarosios valstybės įstatymuose nustatytą terminą, tas asmuo gali būti paleistas, ir prašomoji valstybė savo nuožiūra vėliau gali atsisakyti išduoti dėl to paties nusikaltimo.

13 straipsnis<br>Laikinas perdavimas ir perdavimo atidėjimas

1. Jei sutinkama išduoti asmenį, kuriam iškelta byla arba kuris atlieka bausmę prašomojoje valstybėje, prašomoji valstybė gali laikinai perduoti prašomą išduoti asmenį prašančiajai valstybei dėl baudžiamojo persekiojimo. Taip perduotas asmuo prašančiojoje valstybėje yra laikomas suimtas ir, baigus procesinius veiksmus to asmens atžvilgiu, grąžinamas prašomajai valstybei laikantis prašančiosios valstybės ir prašomosios valstybės tarpusavio susitarimu nustatytų sąlygų.

2. Prašomoji valstybė gali atidėti asmens, kurio atžvilgiu vyksta teisminis persekiojamas arba kuris toje valstybėje atlieka bausmę, ekstradicijos procesą. Atidėjimas gali tęstis tol, kol prašomo išduoti asmens persekiojimas bus baigtas arba kol toks asmuo bus atlikęs skirtą bausmę.

9

### 14 straipsnis
#### Kelių valstybių pateikti prašymai išduoti arba perduoti

1. Jei prašomoji valstybė gauna prašančiosios valstybės ir kurios nors kitos valstybės arba valstybių prašymus išduoti tą patį asmenį dėl to paties arba skirtingų nusikaltimų, prašomosios valstybės vykdomosios valdžios institucija nusprendžia, kuriai valstybei ji perduos tą asmenį, jeigu apskritai perduos.

2. Jei Lietuvos Respublika gauna Jungtinių Amerikos Valstijų prašymą išduoti ir prašymą perduoti pagal Europos arešto orderį tą patį asmenį dėl to paties arba skirtingų nusikaltimų, jos kompetentinga valdžios institucija nusprendžia, kuriai valstybei ji perduos tą asmenį, jeigu apskritai perduos.

3. Priimdama sprendimą pagal šio straipsnio 1 ir 2 dalis, prašomoji valstybė atsižvelgia į visus svarbius veiksnius, įskaitant toliau išvardytuosius, tačiau jais neapsiribojant:

    a) tai, ar tie prašymai buvo pateikti pagal kokią nors sutartį;
    b) vietas, kuriose buvo padarytas kiekvienas iš nusikaltimų;
    c) atitinkamus prašančiųjų valstybių interesus;
    d) nusikaltimų sunkumą;
    e) nukentėjusiojo pilietybę;
    f) bet kokio paskesnio išdavimo tarp prašančiųjų valstybių galimybę; ir
    g) chronologinę tvarką, kuria tie prašymai buvo gauti iš prašančiųjų valstybių.

### 15 straipsnis
#### Turto areštas ir perdavimas

1. Prašomoji valstybė, kiek leidžia jos įstatymai, gali areštuoti ir perduoti prašančiajai valstybei visus daiktus, įskaitant dokumentus ir įrodymus, kurie yra susiję su nusikaltimu, dėl kurio sutinkama išduoti. Šiame straipsnyje minėti daiktai gali būti perduodami net ir tuo atveju, jei ekstradicija negali būti įvykdyta dėl prašomo išduoti asmens mirties, dingimo arba pabėgimo.

2. Prašomoji valstybė gali nustatyti sąlygą, kad daiktai bus perduodami prašančiajai valstybei pakankamai užtikrinus, kad tas turtas kuo greičiau bus grąžintas prašomajai valstybei. Prašomoji valstybė taip pat gali atidėti tokių daiktų perdavimą, jei jie yra reikalingi kaip įrodymai prašomojoje valstybėje.

3. Trečiųjų šalių teisės į tokius daiktus yra deramai saugomos vadovaujantis prašomosios valstybės įstatymais.

### 16 straipsnis
#### Specialioji taisyklė

1. Pagal šią Sutartį išduotas asmuo negali būti sulaikomas, teisiamas arba baudžiamas prašančiojoje valstybėje, išskyrus už:

a) nusikaltimą, dėl kurio buvo išduotas, arba už kitaip kvalifikuotą nusikaltimą, pagrįstą tais pačiais faktais kaip ir nusikaltimas, dėl kurio buvo išduotas, su sąlyga, kad tai yra nusikaltimas, dėl kurio išduodama, arba ne toks sunkus panašios sudėties nusikaltimas;

b) nusikaltimą, padarytą po asmens išdavimo, arba

c) nusikaltimą, už kurį prašomosios valstybės vykdomosios valdžios institucija sutinka, kad tas asmuo būtų sulaikytas, teisiamas arba baudžiamas. Pagal šios straipsnio dalies šį punktą:

i) prašomoji valstybė gali reikalauti pateikti 8 straipsnyje nurodytus dokumentus; ir

ii) kol prašymas bus nagrinėjamas, išduotas asmuo gali būti prašančiosios valstybės sulaikytas 90 dienų arba ilgesniam laikui, kurį gali sankcionuoti prašomoji valstybė.

2. Pagal šią Sutartį išduotas asmuo negali būti išduodamas trečiajai valstybei arba išduodamas ar perduodamas tarptautiniam tribunolui dėl nusikaltimo, padaryto iki išdavimo, nebent prašomoji valstybė su tuo sutinka.

3. Šio straipsnio 1 ir 2 dalys netrukdo išduotą asmenį sulaikyti, teisti ar nubausti arba išduoti tą asmenį trečiajai valstybei, jeigu:

a) tas asmuo po išdavimo išvyksta iš prašančiosios valstybės teritorijos ir savanoriškai į ją sugrįžta; arba

b) tas asmuo neišvyksta iš prašančiosios valstybės teritorijos per 10 dienų nuo tos dienos, kai gali laisvai išvykti.

17 straipsnis
Sutikimas atsisakyti ekstradicijos procedūrų

Jei prašomas išduoti asmuo raštu sutinka būti perduotas prašančiajai valstybei, prašomoji valstybė gali kuo greičiau tą asmenį perduoti be tolesnių procedūrų.

18 straipsnis
Tranzitas

1. Kiekviena iš Valstybių gali leisti vežti per savo teritoriją asmenį, trečiosios valstybės perduodamą kitai valstybei. Tranzito prašymas perduodamas diplomatiniais kanalais arba tiesiogiai Lietuvos Respublikos teisingumo ministerijos - Jungtinių Valstijų teisingumo departamentui ir Jungtinių Valstijų teisingumo departamento - Lietuvos Respublikos teisingumo ministerijai. Tokiam prašymui perduoti pirmiau minėtoms institucijoms taip pat gali būti naudojamasi Tarptautinės kriminalinės policijos organizacijos (Interpolo) galimybėmis. Tranzito prašyme pateikiamas

11

vežamo asmens aprašymas ir trumpas bylos faktų išdėstymas. Tranzito metu vežamo asmens laisvė gali būti suvaržoma.

2. Leidimo nereikia, kai viena valstybė naudojasi oro transportu ir kitos valstybės teritorijoje nusileidimas nėra numatomas. Nenumatyto nusileidimo atveju ta valstybė, kurios teritorijoje įvyksta nenumatytas nusileidimas, gali prašyti pateikti tranzito prašymą pagal šio straipsnio 1 dalį ir gali sulaikyti tą asmenį, kol bus gautas tranzito prašymas; tranzitas tęsiamas, jei prašymas gaunamas per 48 valandas po nenumatyto nusileidimo.

19 straipsnis
Atstovavimas ir išlaidos

1. Prašomoji valstybė konsultuoja, padeda, atstovauja teisme ir atstovauja prašančiosios valstybės interesams visuose iš ekstradicijos prašymo kylančiuose procesuose.

2. Prašančioji valstybė apmoka visas išlaidas, susijusias su ekstradicijos dokumentų vertimu ir perduodamo asmens vežimu. Prašomoji valstybė apmoka visas kitas toje valstybėje su ekstradicijos procesu susijusias išlaidas.

3. Nė viena iš valstybių nepateikia kitai valstybei piniginių pretenzijų dėl asmenų suėmimo, sulaikymo, apklausos arba perdavimo pagal šią Sutartį.

20 straipsnis
Konsultacijos

Lietuvos Respublikos generalinė prokuratūra bei Teisingumo ministerija ir Jungtinių Valstijų teisingumo departamentas gali konsultuotis nagrinėdami atskirus atvejus ir siekdami veiksmingai įgyvendinti šią Sutartį.

21 straipsnis
Nutraukimas

Bet kuri valstybė, pateikdama rašytinį pranešimą kitai valstybei, gali bet kuriuo metu nutraukti šią Sutartį. Nutraukimas įsigalioja praėjus šešiems mėnesiams nuo tokio pranešimo dienos.